JEAN-PAUL CIARDULLO, CA Bar No. 284170
    jciardullo@foley.com
ASHLEY M. KOLEY, CA Bar No. 334723
    akoley@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

JONATHAN MOSKIN (*Pro Hac Vice*)
NY Bar No. 1949031
    jmoskin@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016
TELEPHONE:  212.682.7474
FACSIMILE:   212.687.2329

*Attorneys for Defendant*
*ZURU, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC; JAZWARES, LLC; KELLY AMUSEMENT HOLDINGS, LLC; and JAZPLUS, LLC<br><br>                    *Plaintiffs*,<br><br>    v.<br><br>ZURU, LLC,<br><br>                    *Defendant*. | Case No. 2:23-cv-09255 MCS(AGRx)<br><br>**ZURU, LLC's NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Hon. Mark C. Scarsi<br><br>Date:        May 6, 2024<br>Time:       9:00 AM<br>Court:      First Street, 7C |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Monday, May 6, 2024, at 9:00 AM before the Honorable Mark C. Scarsi at the First Street Courthouse, 350 W. 1st Street, Courtroom 7C, 7th floor, Los Angeles, California 90012, Defendant, Zuru, LLC ("Zuru") will, and hereby does respectfully move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The motion is made on the grounds that Plaintiffs have failed to plausibly articulate protectable trade dress.

This Motion is based on this Notice of Motion and Motion, Memorandum of Points and Authorities, the accompanying Declaration of Jean-Paul Ciardullo, the Request for Judicial Notice and exhibits attached thereto, the accompanying Proposed Order, and all pleadings, papers, and records on file in this action, and such matters of which this Court may take judicial notice, and upon such further oral argument and documentary evidence as may be presented at the time of hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on March 25, 2024, as well as prior conferences and correspondence on this matter in connection with Zuru's Original Motion to Dismiss (Dkt. 23).

Dated: April 2, 2024                    Foley & Lardner LLP

                                        */s/ Jean-Paul Ciardullo*
                                        Jean-Paul Ciardullo

                                        *Attorneys for Defendant
                                        ZURU, LLC*

4887-0007-3393.4

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

      A.    Plaintiffs and Squishmallows ............................................... 2

      B.    Zuru and Snackles ................................................................. 8

III.  APPLICABLE LAW ........................................................................ 9

      A.    Rule 12(b)(6) ......................................................................... 9

      B.    Trade Dress ......................................................................... 10

IV.   PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED A SINGLE TRADE
      DRESS ENCOMPASSING THEIR LARGE AND VARIED LINEUP ............... 13

      A.    Having Deliberately Chosen To Build A Brand Around A Wide
            Diversity Of Distinctly Different Cartoon Characters, Plaintiffs
            Cannot Avail Themselves Of A Unitary "Trade Dress" ............... 13

      B.    The FAC Doubles Down On The Same Trade Dress Definition That
            The Court Already Rejected As "Too Broad And Ambiguous" .......... 14

            1.    "Substantially Egg/Bell Shaped Plush Toys…" ................. 15

            2.    "Simplified Kawaii faces…" ....................................... 16

            3.    "Embroidered Facial Features" ................................... 18

            4.    "Distinctive Contrasting and Non-monochrome Coloring" ...... 18

            5.    "Short-pile velvety velour-like…marshmallow feel" .......... 19

            6.    There Is No Whole Greater Than The Sum Of Its Parts Here ...... 20

      C.    Plaintiffs Deliberately Omit Squishmallows From Their FAC ......... 21

      D.    The "Impossible To Register" Litmus Test ........................... 22

      E.    This Court's Past Rulings On Squishmallows Trade Dress ............ 23

V.    CONCLUSION ................................................................................. 24

4887-0007-3393.4

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abagninin v. AMVAC Chem. Corp.*,
    545 F.3d 733 (9th Cir. 2008) ..................................................................25

*Apple Inc. v. Samsung Elecs. Co.*,
    768 F. Supp. 2d 1040 (N.D. Cal. 2011) ....................................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................9

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*,
    457 F.3d 1062 (9th Cir. 2006) ..................................................................12

*Crafty Prods. v. Michaels Cos.*,
    389 F. Supp. 3d 876 (S.D. Cal. 2019)......................................................11

*Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*,
    No. CV 15-769 PSG (SSx), 2015 WL 12731929 (C.D. Cal. May 8, 2015).................10

*Goscicki v. Custom Brass & Copper Specialties, Inc.*,
    229 F. Supp. 2d 743 (E.D. Mich. 2002).....................................................13

*Greenberg v. Johnston*,
    No. CV-14-046505-MWF (VBKx), 2014 WL 12586252 (C.D. Cal. Oct. 22, 2014) ..10

*In re Gilead Scis. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ..................................................................10

*Interactive Health LLC v. King Kong United States, Inc.*,
    No. CV 06-1902-VBF(PLAx), 2008 WL 11337393 (C.D. Cal. Mar. 6, 2008) ..........11

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995).........................................................................20

*Kellytoy Worldwide, Inc. v. TY, Inc.*,
    No. 20 C 748, 2020 WL 5026255 (N.D. Ill. Aug. 25, 2020)...................6, 12

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
    113 F.3d 373 (2d Cir. 1997)................................................................13, 21

*Leatherman Tool Grp., Inc. v. Cooper Indus.*,
    199 F.3d 1009 (9th Cir. 1999) ..................................................................20

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
    292 F. Supp. 2d 535 (S.D.N.Y. 2003) ......................................................11

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) ....................................................................9

*Mike Vaughn Custom Sports, Inc. v. Piku*,
    15 F. Supp. 3d 735 (E.D. Mich. 2014)......................................................21

*Paramount Farms Int'l LLC v. Keenan Farms Inc.*,
    No. 2:12-cv-01463-SVW-E, 2012 WL 5974169 (C.D. Cal. Nov. 28, 2012)...............12

iv

4887-0007-3393.4

*R.F.M.A.S., Inc. v. So*,
    619 F. Supp. 2d 39 (S.D.N.Y. 2009) ........................................................................ 14
*Rose Art Indus. v. Swanson*,
    235 F.3d 165 (3d Cir. 2000) ................................................................................. 11
*Sara Designs, Inc. v. A Classic Time Watch Co.*,
    234 F. Supp. 3d 548 (S.D.N.Y. 2017) ................................................................... 17
*Shelbyco Inc. v. Western Trimming Corp.*,
    No. 2:97-CV-196C, 1997 WL 377982 (D. Utah. May 12, 1997) ........................... 17
*Sleep Sci. Partners v. Lieberman*,
    No. 09-04200 CW, 2010 WL 1881770 (N.D. Cal. May 10, 2010) ........................... 10
*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................................. 10
*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
    532 U.S. 23 (2001) ................................................................................................. 12
*Walker & Zanger, Inc. v. Paragon, Indus.*,
    549 F. Supp. 2d 1168 (N.D. Cal. 2007) ............................................................ 10, 17
*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*,
    916 F.2d 76 (2d Cir. 1990) ................................................................................ 13, 20
*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
    529 U.S. 205 (2000) ............................................................................................... 12
*Yurman Design, Inc. v. PAJ, Inc.*,
    262 F.3d 101 (2d Cir. 2001) .................................................................................. 11

**Statutes**
15 U.S.C. § 1127 .......................................................................................................... 10

**Regulations**
37 C.F.R. § 2.52 ........................................................................................................... 22

**Rules**
California Rule of Professional Conduct 3.3(a)(2) ...................................................... 28
Fed. R. Civ. P. 12(b)(6) ......................................................................................... passim

**Other Authorities**
1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:3
    (4th ed. 2014) ....................................................................................................... 10
1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:5.50
    (5th ed. 2020) ....................................................................................................... 11
1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition §8:5.50
    (5th ed. 2020) ......................................................................................................... 2
Trademark Manual of Examining Procedure, §1202.02(c) – (c)(i) ............................. 22

v

## I.    **INTRODUCTION**

On March 5, 2024, the Court granted Defendant Zuru, LLC's ("Zuru") Original Motion to Dismiss regarding Plaintiffs' trade dress claims, finding that Plaintiffs' trade dress definition was "too broad and ambiguous to form the basis of a plausible claim for trade dress infringement and therefore does not satisfy the requirements of Rule 8." (Dkt. 32, p.5.) The Court granted leave to amend but cautioned that "a subsequent pleading containing another ill-defined trade dress description may result in a final dismissal of the trade dress claims." (*Id*., p.7.) Zuru now seeks dismissal with prejudice of Plaintiffs' First Amended Complaint (Dkt. 34, "FAC") on the grounds that it fails to cure the deficiencies of the Original Complaint.

Plaintiffs' "new" trade dress definition contains nothing new at all, once again relying on the same purported trade dress elements that the Court already rejected. What Plaintiffs are overreachingly attempting to do here is wield trade dress law as a kind of "uber-copyright" encompassing thousands of distinctly different-looking toy cartoon characters, and in so doing obtain a sweeping monopoly over an abstract idea of a vague kind of "style." And it is a style that Plaintiffs did not even invent (Kawaii is a broad pre-existing category that long pre-dates Squishmallows), and that Plaintiffs cannot even coherently articulate, using wordy commentary that is riddled with hedges and internal inconsistencies. Plaintiffs' FAC essentially just repeats and emphasizes the same purported design elements as the Original Complaint, while improperly cherry-picking examples of Squishmallows that Plaintiffs say conform to their definition, and omitting all the Squishmallows that do not.

Tellingly, this will be Plaintiffs' most recent of numerous different attempts in litigation to define a single trade dress covering all Squishmallows, evidencing the impropriety and futility of this maneuvering. As observed in the McCarthy treatise, "[w]hen it is claimed that the trade dress is inherent in an entire series or line of products, the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is common to all items in the series or line." 1 J. Thomas

1

McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §8:5.50 (5th ed. 2020). Zuru has invoked an "impossible to register" argument as a litmus test for this challenge: because the Squishmallows characters lack common features across the entire lineup, it would be impossible to register a single trade dress covering all of them. Plaintiffs must appreciate this, which is why they have not sought to obtain federal registration, despite the professed importance of the purported trade dress. Plaintiffs seek to claim at common law what the Trademark Office would refuse them. More than that, Plaintiffs are improperly trying to ensnare with trade dress law a sweeping market monopoly that no other form of intellectual property would allow.

In sum, under Fed. R. Civ. P. 12(b)(6), the Court should dismiss the trade dress claims of the FAC (Counts I, II, IV, and V), and such dismissal should be with prejudice in view of Plaintiffs' failure to address the defects of the Original Complaint.

## II.  **BACKGROUND**

### A.  **Plaintiffs and Squishmallows**

According to Plaintiffs, Squishmallows were introduced in 2016. (FAC, ¶1.) Although the Complaint shows pictures of some Squishmallows, the Squishmallows product line in fact consists of <u>thousands</u>[1] of distinctly different-looking characters, assuming a wide variety of different physical configurations. Examples of these can be found in **Exhibit A** to the concurrent Request for Judicial Notice, which contains images of Squishmallows from Plaintiffs' own pleadings in other lawsuits. Further images of Squishmallows from Amazon.com, Walmart.com, and Target.com are included at Exhibits

---

[1] Materials online suggest that the Squishmallows character count is in the thousands. Zuru suggested this in its Original Motion to Dismiss, and Plaintiffs did not contest it. As discussed in Section IV.C, having claimed trade dress in their entire product lineup, and having already been called out on not fairly representing that lineup, Plaintiffs should have included a compendium of all their Squishmallows with the FAC, but decided not to share that information.

MOTION TO DISMISS

C-E to that Request.[2] Samples of images from Exhibit A are shown below:



---

[2] The Court declined to take judicial notice of these materials in ruling on Zuru's original Motion to Dismiss on the grounds that it would not be necessary to consider the materials to decide that motion. Zuru presents them again here in the event the Court does wish to consider them in deciding the present Motion.

MOTION TO DISMISS

4887-0007-3393.4

Plaintiffs have even turned Squishmallows into stuffed animal slippers, pet beds, and stackable pillows, as shown below.[3]



Indeed, it is clear that Plaintiffs' made a deliberate marketing decision to build their brand around vastly divergent product appearances, choosing to have thousands of different-looking Squishmallow characters rather than a discrete lineup of just a few very similar-looking ones. The very thing that drives sales of these toys is the fact that no two look alike: consumers would not want to collect them otherwise. The entire point is for Squishmallows to all be discrete individual characters with their own unique appearances and back-stories, rather than different versions of the same character design. It also appears that Plaintiffs have adopted a marketing tactic of trying to make the full extent of their lineup unknowable, wanting consumers to believe that there are so many different Squishmallow characters out there that no one person could hope to collect all of them. The Jazwares website itself only lists a small percentage of the products, and appears to be in a state of constant flux. Plaintiffs do not even want to disclose their full lineup in this litigation, or else Plaintiffs would have attached a compendium to the FAC.

---

[3] These images were collected from the Jazwares website (https://shop.jazwares.com/pages/squishmallows) (Item 4 in Zuru's Request for Judicial Notice), and from Walmart.com (*id.*, Exhibit D).

MOTION TO DISMISS

Squishmallows are sold under a prominent stylized logo reading "*Original Squishmallows*," that is displayed on product hangtags, store displays, and websites (shown below).[4] It is apparent from this branding that it is the name "Squishmallows" (and accompanying logo design) that is ultimately what is used to distinguish the products in the marketplace. Notably, Plaintiffs do not accuse Zuru of infringing those trademarks.




Although Plaintiffs' present Complaint purports to assert trade dress rights, there is no public record available at the U.S. Trademark Office website of any attempt by Plaintiffs to formally register any trade dress in the Squishmallows, and Plaintiffs otherwise confirmed no such applications are pending. (Ciardullo Dec., ¶3.) The fact that Plaintiffs have not sought registration deprives the designs of any presumption of validity, and places a heavy burden of proof on Plaintiffs to establish such rights. Indeed, as discussed *infra*,

---

[4] The image of the Squishmallows bin is from the Complaint, p.30. The other images were obtained from the Jazwares website and are properly the subject of judicial notice. See concurrently filed Request for Judicial Notice, Item 4.

5

MOTION TO DISMISS

Zuru does not believe that Plaintiffs could satisfy Trademark Office requirements for visually depicting their trade dress because there is no consistency across the product line, and hence no way to define the trade dress across the line.

In fact, Plaintiffs have struggled to enforce their purported Squishmallows intellectual property in past litigation, including in this District. In *Kellytoy Worldwide, Inc. et al v. TY, Inc. et al.*, No. 20-cv-00748 (N.D. Ill. Jan. 31, 2020) ("Ty Case"), Plaintiffs had sued Ty over stuffed toys depicted below (Dkt. 1-9):



The Illinois court denied Plaintiffs' Preliminary Injunction Motion, stating that Plaintiffs had only a "modest likelihood of showing that the Squishmallows trade dress is valid," and that its overall chance of success the case was "weak." *Kellytoy Worldwide, Inc. v. TY, Inc.*, No. 20 C 748, 2020 WL 5026255, at *9-10 (N.D. Ill. Aug. 25, 2020). The Ty Case was later dismissed, with Plaintiffs allowing Ty to continue to sell the accused products, amounting to an abandonment of rights in products of that appearance. Below is an image from Ty's current website:[5]

---

[5] The Court may take judicial notice of the products that Ty continues to sell on its website at shop.ty.com. *See* concurrent Request for Judicial Notice, Exhibit F.

4887-0007-3393.4                                                                           MOTION TO DISMISS



Similarly, Plaintiffs had sued toy company Dan-Dee in this District in 2019. *Kellytoy USA, Inc. et al v. Dan-Dee International, Ltd. et al*., 2:18-cv-05399-JAK ("Dan-Dee Case"), accusing Dan-Dee's plush toys of infringing Plaintiffs' alleged trade dress and copyrights. Dan-Dee moved to dismiss the complaint under Rule 12(b)(6) arguing (as Zuru now argues in this Motion) that Plaintiffs had failed to adequately define their purported trade dress in the Squishmallows. The Court granted Dan-Dee's motion, ruling that "in light of the substantial differences among the designs of the products in the Squishmallows line, the images included in the FAC do not provide the level of clarity about the nature and scope of the claimed trade dress as is required by the caselaw." (Dan-Dee Case, Dkt. 39, "Dan-Dee Order," copy attached as Ciardullo Ex. 1.)

Plaintiffs amended their complaint, but Dan-Dee moved to dismiss again on the same grounds. (Dan-Dee Case, Dkt. 57.) The case was then dismissed before the Court could rule on the second motion. (*Id*., Dkt. 74.) An online search shows that Dan-Dee is apparently still selling the product shown here - another abandonment of rights.[6] In all, Plaintiffs have tried their hand at asserting trade dress claims covering all Squishmallows on numerous different occasions, and have invoked many different iterations of their trade dress definition, as reflected in the summary



---

[6] The Court may take judicial notice of the products that Dan-Dee continues to sell. See concurrent Request for Judicial Notice, Exhibit G.

7

attached as Exhibit B to Zuru's Motion for Judicial Notice.

### B.    Zuru and Snackles

Zuru, LLC is the United States arm of the ZURU Group, a collection of family-owned toy and consumer products companies founded in Cambridge, New Zealand in 2004. The ZURU Group is one of the fastest growing toy brands in the world and is known for its creativity and new-age manufacturing techniques. The ZURU Group has successfully built its own global brands such as Bunch O Balloons™, X-Shot™, Robo Alive™, Mayka™, Fidget Cube™, Tangle™, ZURU Smashers™, 5 Surprise™, and Metal Machines™. The toy industry has recognized these and other Zuru brands with numerous awards and honors. The ZURU Group also has partnerships with entertainment properties, including Nickelodeon, Disney, Universal Studios, and DreamWorks. The ZURU Group now employs hundreds of staff, has numerous offices worldwide, produces hundreds of thousands of toys a day, and supplies most major retailers in more than a hundred countries.

As the Complaint notes, Zuru announced the release of the accused Snackles around June 2023. (FAC, ¶3.) As is evident from the Complaint, Snackles are a co-branding effort with several major snack brands like Hershey's® and Pringles®, and Zuru has long-standing licensing arrangements with these brands.[7] In contrast to the Squishmallows, Snackles have prominent noses and limbs projecting forwardly from the bodies of the toys and embracing large plush versions of famous branded snacks, which are paired thematically with the toys that are holding them. The essence of the Snackles brand – from its very name to its overall appearance – is centered on famous snack foods.

---

[7] In fact, Zuru is known among consumers for its co-branding with well-known food brands, such as in its popular Mini Brands™ lineup: https://zurutoys.com/brands/mini-brands/foodie-mini-brands.

8

Snackles are sold under a prominent stylized logo reading "*ZURU SNACKLES*," that is clearly displayed on product hangtags, store displays, and websites (and which concededly does not infringe):[8]




### III.  APPLICABLE LAW

#### A.  Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A Rule 12(b)(6) motion may be granted when the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept

---

[8] The image of the bin is from Plaintiffs' Complaint, p.30; the other image is from Zuru's online listings. *See* concurrent Request for Judicial Notice, Item 7.

MOTION TO DISMISS

4887-0007-3393.4

as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## B. Trade Dress

The Lanham Act provides for the protection of trademarks and trade dress used to identify and distinguish a producer's goods from those manufactured or sold by others and to indicate the source of the goods. *See* 15 U.S.C. § 1127.

In an action for purported infringement of unregistered trade dress, not only is it the plaintiff's burden to plead non-functionality and secondary meaning as to the claimed trade dress elements, but the plaintiff must also adequately define those trade dress elements. *Greenberg v. Johnston*, No. CV-14-046505-MWF (VBKx), 2014 WL 12586252, at *2 (C.D. Cal. Oct. 22, 2014); *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *3 (C.D. Cal. May 8, 2015) ("A plaintiff should clearly articulate its claimed trade dress to give a defendant sufficient notice."). Without an adequate definition, the defendant is not on proper notice of what does or does not infringe, or what elements of the design are purported to be the subject of the validity and infringement analysis in the case. *Sleep Sci. Partners v. Lieberman*, No. 09-04200 CW, 2010 WL 1881770, at *3 (N.D. Cal. May 10, 2010). This ambiguity can lead to gamesmanship, with the plaintiff modifying its definition and characterization of the trade dress to suit its needs over the course of the litigation. *See* 1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:3 (4th ed. 2014) ("there is no reason why the plaintiff cannot define a list of elements…Only then can the court and the parties coherently define exactly what the trade dress consists of and determine whether that trade dress is valid and if what the accused is doing is an infringement."). On a broader level, the motivation for requiring a clear definition is that "trade dress claims raise a potent risk that relief will impermissibly afford a level of 'protection that would hamper efforts to market competitive goods.'" *Walker & Zanger, Inc. v. Paragon, Indus.*, 549 F. Supp. 2d 1168, 1175-76 (N.D. Cal. 2007) (citations omitted).

The plaintiff's burden increases where trade dress is claimed in a diverse line-up of products. 1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:5.50 (5th ed. 2020) ("[w]hen it is claimed that the trade dress is inherent in an entire series or line of products, the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is common to all items in the series or line."); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116-17 (2d Cir. 2001) ("a plaintiff seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress"); *Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 542 (S.D.N.Y. 2003) (When a plaintiff seeks trade dress protection in a line of products, it must prove that "the trade dress signifies an overall look which is 'consistent' throughout the line.").

In *Rose Art Indus. v. Swanson*, 235 F.3d 165, 173 (3d Cir. 2000), the court explained that when trade dress is claimed in a line of products, those products must all have a "consistent overall look" "[b]ecause of the broad reach that protection of trade dress for a series or line of products would embrace…" Although the Ninth Circuit has not specifically addressed the "consistent overall look" test in as many words, district courts in this Circuit have been guided by it because it is self-evident and axiomatic that a claimed trade dress across a product line must have a consistent look in order to evoke a single brand. *Interactive Health LLC v. King Kong United States, Inc*., No. CV 06-1902-VBF(PLAx), 2008 WL 11337393, at *2 (C.D. Cal. Mar. 6, 2008) ("when a plaintiff seeks protection for an entire line of products, the plaintiff must demonstrate the trade dress signifies an overall look that is consistent throughout the entire line.") (citing *Yurman* and other cases); *Apple Inc. v. Samsung Elecs. Co*., 768 F. Supp. 2d 1040, 1048 (N.D. Cal. 2011) ("Although the Ninth Circuit does not appear to have addressed the issue, some circuits have held that where a plaintiff seeks trade dress protection in a line of products, the plaintiff must establish that the line of products has a consistent overall look."); *Crafty Prods. v. Michaels Cos*., 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019) ("To grant such far-reaching, undefined trade dress protection [across a product line not having a consistent look] would unfairly

MOTION TO DISMISS

allow inventors to claim any broad design and would leave no room for competition."); *Paramount Farms Int'l LLC v. Keenan Farms Inc*., No. 2:12-cv-01463-SVW-E, 2012 WL 5974169, at *2-3 (C.D. Cal. Nov. 28, 2012) (distinguishing trade dress in a single product from a line of products in view of *Rose Art*).

In the case of product configuration trade dress, the plaintiff must also plead that the claimed trade dress elements comprise a distinctive aesthetic that, unaided by any unclaimed brand identifiers, would in itself convey a single brand source to most relevant consumers. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000). Evidence of past sales and publicity are only relevant if driven by the trade dress features that are claimed. *Kellytoy Worldwide, Inc. v. TY, Inc*., No. 20 C 748, 2020 WL 5026255, at *3 (N.D. Ill. Aug. 25, 2020) ("popularity and engagement with a product do not necessarily suggest a connection between the product and its source.")

With respect to functionality, product features are presumed functional until proven otherwise by the party seeking trade dress protection. *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29-30 (2001). The Ninth Circuit test for functionality proceeds in two steps. The Court first inquires whether the product feature is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.,* 457 F.3d 1062, 1067, 1072 (9th Cir. 2006). Generally speaking, the first step looks to utilitarian functionality, *i.e*., whether or to what extent the product's appearance is driven by concerns over its ability to perform certain practical functions, and its ease of manufacture. *Id*.

If the product features are not deemed to have utilitarian function on the first step, the Court proceeds to a second step of inquiring "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Au-Tomotive Gold,* 457 F.3d at 1072. This second step generally equates to an assessment of aesthetic functionality, which looks to whether a product feature has become a "stock" element that consumers generally desire and do not associate with a particular brand, such as a heart-shaped box of chocolates. *Id*.; *Goscicki v. Custom Brass & Copper Specialties,*

12

*Inc.*, 229 F. Supp. 2d 743, 752 (E.D. Mich. 2002) (heart-shaped box).

## IV.    PLAINTIFFS HAVE NOT PLAUSIBLY ALLEGED A SINGLE TRADE DRESS ENCOMPASSING THEIR LARGE AND VARIED LINEUP

### A.    Having Deliberately Chosen To Build A Brand Around A Wide Diversity Of Distinctly Different Cartoon Characters, Plaintiffs Cannot Avail Themselves Of A Unitary "Trade Dress"

The moment that Plaintiffs made the marketing decision to have Squishmallows comprise thousands of distinctly different-looking cartoon characters with different structural variations they forfeited the ability to use trade dress law to encompass the entire lineup. Squishmallows are not like Coca Cola bottles that all have the same basic appearance. Instead, like Pokemons, the entire point of the brand is to have all of the individual characters be different-looking from each other (and come with their own unique origin stories) so as to motivate consumers to want to collect tens or hundreds of them. A multiplicity of distinctly different cartoon characters cannot be said to be protected jointly as a unitary "trade dress," acting a sort of impermissible "uber-copyright." *See, e.g., Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co*., 916 F.2d 76, 81 (2d Cir. 1990) (finding that the plaintiff sought trade dress protection "not for a precise expression of a decorative style, but for basic elements of a style that is part of the public domain").

As shown in the cases cited in Section III.B, and as articulated in *Landscape Forms, Inc. v. Columbia Cascade Co*., 113 F.3d 373, 380 (2d Cir. 1997):

> a trade dress plaintiff seeking to protect a series or line of products faces the particularly difficult challenge of showing that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress. [] Furthermore, a claim of trade dress covering an array of items is likely to be broader than one for an individual product's design. Accordingly, when protection is sought for an entire line of products, our concern for protecting competition is acute.

As further explained in *R.F.M.A.S., Inc. v. So*, 619 F. Supp. 2d 39, 77 (S.D.N.Y.

13

MOTION TO DISMISS

2009), where trade dress is claimed in a product line, "[t]he elements specified as the trade dress must be present in every item in that product line." *See also Nat'l Lighting Co., Inc.,* 601 F. Supp. 2d at 562) (dismissing under Rule 12(b)(6) where "plaintiff was unable to identify which of the twelve listed design elements are consistent throughout the entire product line or how specifically the claimed trade dress incorporates those common elements"). Here, because the Squishmallows lineup lacks consistent features across all the characters, it cannot be protected as a unitary trade dress.

**B.    The FAC Doubles Down On The Same Trade Dress Definition That The Court Already Rejected As "Too Broad And Ambiguous"**

Below is a redline of the FAC trade dress definition against the definition from the Original Complaint, showing that they are essentially identical to the recitation of elements that this Court has said are "too broad and ambiguous." (Dkt. 32, p.5.) Notably, this is also the same articulation used to define the scope of the injunction that Plaintiffs hope the Court will impose (FAC, Prayer for Relief, Section (a)).

> (1) substantially egg/bell/<u>oval</u> shaped plush toys depicting various similarly shaped <u>abstract/</u>fanciful renditions of animals/characters;
>
> (2) simplified ~~Asian style~~ Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys;
>
> (3) embroidered facial features, such as eyes, nostrils, and/or mouths;
>
> (4) distinctive contrasting and non-monochrome coloring; and
>
> (5) short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel.

Adding the words "oval" and "abstract," and removing the word "Asian style" do not cure Plaintiffs' failure to identify a cognizable trade dress. For the same reasons the Court already found, Plaintiffs have failed to adequately define any cognizable trade dress

that meaningfully encompasses their enormous and highly varied product line-up. Plaintiffs' vague definition is akin to a car company with a diverse lineup of cars trying to claim rights to non-distinctive and unprotectable elements that are common to all their cars, like "sleek styling," "rounded headlights," and "soft seats." Taken literally, Plaintiffs' Claimed Elements reach far beyond the specific individual toy designs highlighted in their FAC, and would even sweep up designs Plaintiffs concede do not infringe. As reflected in the FAC's Prayer for Relief (which ties back to the Claimed Elements) what Plaintiffs are really seeking via their lawsuit is an overbroad injunction that would impermissibly block Zuru from participating in an entire product category of round, multi-colored, plush animal toys with cartoonish faces. There is no basis in trade dress law for such a sweeping monopoly, nor any plausible basis under *Iqbal/Twombly* to find that Plaintiffs have properly defined protectable trade dress with sufficient specificity and narrowness. *See Nat'l Lighting,* 601 F. Supp. 2d at 562 ("Judicial reluctance to extend trade dress protection to entire product lines is also motivated by this fear of enabling monopolistic behavior").

The FAC attempts to prop up the Claimed Elements with explanations of what the original designers of Squishmallows "intended" when they started creating the products in 2016. But such purported original intent is beside the point: the actual reality of Squishmallows is that they now comprise thousands of distinctly different-looking cartoon characters. Nothing the FAC says changes that, and if anything the FAC only muddies the waters further with its inconsistencies.

### 1. "Substantially Egg/Bell/Oval Shaped Plush Toys…"

As an initial matter, Plaintiffs' term "substantially egg/bell/oval shaped" does not act as a valid limiter of scope because many of Plaintiffs' Squishmallows are in fact circular, like the ones here. It is unclear if



MOTION TO DISMISS

Plaintiffs added the word "oval" to their definition to try to capture these, but if such near-circles were considered ovals, then Plaintiffs' definition has now overbroadly devolved into anything "round" at this point. Secondly, Plaintiffs cannot lay claim to "fanciful renditions of animals/characters," as that describes virtually any stuffed toy animal. The term "fanciful" is undefined and conclusory. Third, the motif of a stuffed animal/character with an egg shape is a stock aesthetically functional feature dating back to Russian Nesting Dolls that is universally used to convey a smaller "head" atop a larger "body." As with heart-shaped boxes of chocolate, no one company could monopolize such a common aesthetic. Fourth, it is apparent that a chief motivation for a "substantially egg shape" in the context of these toys is so they can double as rounded pillows, also able to stand on one end so that the animal/character is oriented head up, which are all utilitarian functional considerations.

### 2.    "Simplified Kawaii faces…"

The Oxford English Dictionary defines "Kawaii" with sweeping breadth as "[c]ute, esp. in a manner considered characteristic of Japanese popular culture; charming, darling; ostentatiously adorable." (*See* www.oed.com.) It is not plausible that Plaintiffs could claim rights in the Kawaii style, as this is an aesthetic that originated from Japan that pre-dates Squishmallows. (*See, e.g*., Hello Kitty.) Plaintiffs cannot simply appropriate as their own an entire preexisting style: Plaintiffs can no more claim distinctiveness as to Kawaii than they could to Anime.

Even if "Kawaii" were sufficiently defined in itself, the absence of any consistent look across the Squishmallows lineup undercuts the descriptor as-applied. To the extent that Plaintiffs are essentially just claiming simple geometric shapes – like "rounded" "eyes" – those are not distinctive or protectable, and do not even apply to all of Plaintiffs' products. *Shelbyco Inc. v. Western Trimming Corp*., No. 2:97-CV-196C, 1997 WL 377982, at *4 (D. Utah. May 12, 1997) ("[T]he only consistent feature in [plaintiff's] trade dress is the display of commonplace, ordinary shapes in various colors."). Here, as in *Walker &*

*Zanger, Inc. v. Paragon, Indus.*, 549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007), Plaintiffs have resorted to "empty generalities." *See also Sara Designs, Inc. v. A Classic Time Watch Co.,* 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (high level descriptions like "gradient chain" were inadequate).

The FAC's attempt to define "Kawaii" only makes things more confusing. The FAC says that Kawaii is "a cute, lovable, or innocent look through use of simplified shapes and soft lines" (FAC, ¶31), but this does not describe anything concrete. Page 12 includes a chart showing ten different facial images, but the FAC hedges by saying that these are only "*for example*," begging the question of what other unstated "cute, lovable, or innocent look[s]" Plaintiffs intend to be swept in with their definition. Even the ten examples are not uniform in appearance, representing a buffet of options. Furthermore, these ten pictures are just a re-statement of content from the Original Complaint which already included pictures of Squishmallows with similar faces: it was incumbent on the FAC to demonstrate that there was a single facial appearance common to all the Squishmallows, and the FAC fails to do that. Indeed, many Squishmallows have different facial configurations than those shown on Page 12 of the FAC, such as the examples below.[9]



---

[9] Zuru seeks judicial notice of these examples of Squishmallows from Walmart.com in its accompanying Motion for Judicial Notice (Exhibit D).

17



Paragraph 32 of the FAC then confuses things by saying that Kawaii is actually something else, exemplified by a bunny toy, and that Plaintiffs are not employing Kawaii. But no matter which way one looks at it, the reality is unchanged from the Original Complaint: the thousands of Squishmallows all differ widely from each other, and Plaintiffs cannot plausibly lay claim to a generalized "style" (Kawaii or otherwise) as its exclusive trade dress.

### 3.    "Embroidered Facial Features"

It is virtually axiomatic that the majority of stuffed animal toys have embroidered facial features. Not only is this feature wholly generic and non-distinctive, but it is also legally functional, as embroidery is one of the most common means to apply facial features to stuffed animals. The FAC now offers up the idea that Plaintiffs "disclaim[] the use of printing and sublimation printing for depicting facial features," but this does nothing to help because Plaintiffs do not deny that embroidery is otherwise commonplace and functional. Using the car analogy, Plaintiffs' concession is akin to disclaiming the use of fabric car seats, while still claiming leather car seats as their exclusive protected trade dress.

### 4.    "Distinctive Contrasting and Non-monochrome Coloring"

Read literally, the phrase means nothing more than that the toys are multi-colored. The adjective "distinctive" is just as ambiguous and conclusory, given that the phrase as a whole fails to explain what is distinctive about the color pattern. Having a stuffed animal be "multi-colored" is just a generic and aesthetically functional attribute that cannot be protectable.

The FAC's explanation for what is meant by "non-monochrome" and "contrasting"

MOTION TO DISMISS

is no explanation at all. Plaintiffs differentiate their coloration designs as "fun," "non-traditional," and "unique" (FAC ¶39), but these words do not mean anything, and they certainly are not unique to Plaintiffs' toys.

Furthermore, even among Squishmallows, many use the same color tones, such as those below (from Exhibit A):



Also, rather than being "non-traditional," many Squishmallows are exactly the colors you would expect them to be:



### 5.    "Short-pile velvety velour-like…marshmallow feel"

A substantial percentage of all stuffed animal toys could be described this way, so the phrase does not add anything to the overall definition. Soft texture and squeezability are utilitarian functional features that could not be protectable. Just as a car company could not claim a trade dress in "rubbery round tires," Plaintiff cannot enhance their definition of trade dress by adding plainly unprotectable features. *See, e.g., Wallace*, 916 F.2d at 81.

Moreover, a velvety marshmallow feel, as a trade dress, makes no sense when the other elements claimed by Plaintiffs relate solely to a visual appearance. One cannot

4887-0007-3393.4

perceive "marshmallow feel" unless one holds the product in their own hands, which creates a situation where Plaintiffs' purported trade dress could only exist when a customer is physically interacting with the product. This would indeed be a clever trick for expanding one's trade dress rights. Even if "marshmallow feel" were a non-functional protectable feature, if the product were not otherwise protectable based on visual elements alone, it should not be saved by a feature that only a sub-set of customers perceive.

### 6.    There Is No Whole Greater Than The Sum Of Its Parts Here

Plaintiffs will argue that even if the Claimed Elements are unprotectable in isolation, the combination of them defines a valid trade dress. This argument also fails because the FAC does not demonstrate how the combination of the Claimed Elements adds up to anything more than the sum of their parts. While it is true that sometimes unprotectable elements can be arranged in an aesthetically distinctive and non-functional way (like stacking building blocks into an artistic sculpture), the Ninth Circuit has also made clear that when the whole of trade dress is nothing more than assemblage of unprotectable elements combined in a predictable way, "it is semantic trickery to say that there is still some sort of separate 'overall appearance'" that is protectable. *Leatherman Tool Grp., Inc. v. Cooper Indus.*, 199 F.3d 1009, 1013 (9th Cir. 1999); *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("the fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that that dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea.").

When boiled down to their essence, all that the Claimed Elements define in combination is a soft, roundish stuffed animal toy with multiple colors and an embroidered cartoonish face. Taken together, these elements do not yield any protectable whole, but rather just broadly describe attributes of innumerable stuffed toy products that no one company could plausibly monopolize. *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997) ("If the law protected style at such a level of abstraction,

20

Braque might have prevented Picasso from selling cubist paintings"). The FAC's narrow disclaimer of "glass eyes" and "sublimation printing" does effectively nothing to constrain the overreach of the trade dress definition.

Nor do the various photographs supplied in the Complaint assist the Claimed Elements because "courts cannot be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional." *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 747 (E.D. Mich. 2014) (dismissing claims to trade dress in an entire product line up of hockey gear). Here, Plaintiffs' Complaint does not adequately convey the true scope and diversity of the Squishmallows product line, and even as among the pictures in the FAC, it is apparent that there is no distinctive and protectable feature of the toys that is consistent across the whole line.

One of the several negative consequences of the overbreadth of Plaintiffs' definition is that it makes it impossible to differentiate between stuffed animals that would be deemed infringing and those that would not be. Indeed, the Claimed Elements on their face extend to the products sold by Dan-Dee and Ty that Plaintiffs had previously accused of infringement before withdrawing their claims and dismissing with prejudice. Those dismissals would bar future infringement claims against those toys under principles of res judicata. Despite this, Plaintiffs persist in asserting a trade dress definition that encompasses those non-infringing toys. Such a definition is overreaching and cannot fairly put Zuru on notice of the parameters of Plaintiffs' claimed rights. It is further notable that despite the forgoing argument featuring prominently in Zuru's Original Motion to Dismiss (Dkt. 23 at 6-7, 19), the FAC does nothing to address it, failing to explain how the Ty and Dan-Dee products are not the same as what the FAC claims as Plaintiffs' trade dress.

### C.    Plaintiffs Deliberately Omit Squishmallows From Their FAC

Because Plaintiffs are expressly seeking trade dress protection as to their entire Squishmallows lineup, it would have been appropriate for Plaintiffs to attach a compendium of all the Squishmallows to their pleading rather than forcing Zuru to try to rely on an incomplete patchwork of judicial notice documents for such important basic

21

facts that are already in Plaintiffs' possession. Faced with the grant of Zuru's Original Motion to Dismiss, Plaintiffs had a clear opportunity to assist the Court by including a full compendium of Squishmallows with their FAC, but chose not to do so. The FAC exploits this information deficit by cherry-picking examples of Squishmallows that Plaintiffs claim meet their trade dress definition, and excluding Squishmallows that do not. Plaintiffs apparently do not want to disclose publicly what all their Squishmallows actually look like, but having made that decision, Plaintiff should not be surprised at their purported trade dress definition – which is supposed to cover all of the Squishmallows – being found inadequate.

### D. The "Impossible To Register" Litmus Test

Returning to the fact that Plaintiffs appear to have deliberately avoided attempting to obtain any federal registration for the purported Squishmallows trade dress, this can serve as a litmus test for the sufficiency of the trade dress definition. The Trademark Office requires that applicants supply a drawing or image of the claimed trade dress that adequately and specifically puts the public on notice of the design that is claimed. *See* 37 C.F.R. §2.52; Trademark Manual of Examining Procedure ("TMEP") §1202.02(c) – (c)(i). In the case of products that are part of a varied line-up, a single unifying feature may be claimed in solid lines, with variable features shown in dashed lines. *Id*. For example, a car company might seek trade dress protection in the design of a particular front grill used on many different cars, showing it in solid lines and the rest of the car in dashed lines.

In the case of Squishmallows, Plaintiffs would be unable to craft any drawing based on their Claimed Elements that could satisfy Trademark Office requirements. Because there are no common identifying features among all the Squishmallows characters, any attempt to represent them visually would devolve into a collection of amorphous dashed lines. Some Squishmallows are animals, some are not. Some have round eyes, some have slits. Some have mouths, some do not. Some have pronounced appendages, some do not. Some have "bellies," some do not. Some have large ears, some do not. Some wear clothes, some do not. Some have noses, some do not. Some have eyes on top of their heads, some

22

do not. They have no consistent colors or color patterns. Because of this utter lack of consistency, Plaintiffs would have no way to submit a coherent drawing of the Claimed Elements trade dress that could possibly satisfy regulatory requirements for providing notice to the public of the claimed rights. Even if one deemed the round perimeter shape to be consistent across the lineup, that would not help Plaintiffs: they could hardly register trade dress rights in a circle.

If a claimed trade dress is so abstract and so varied across a product line that it could not be feasibly depicted in a federal registration, it must be rejected.

### E.    This Court's Past Rulings On Squishmallows Trade Dress

In its March 5 Order, the Court already commented on the past Squishmallows trade dress rulings in this District, and declined to follow the *Hugfun* case.[10] (Dkt. 32, p.5.) Zuru seeks no different conclusion here, but refers back to Judge Kronstadt's September 23, 2019 ruling in the *Dan-Dee* Case because it remains just as relevant to the analysis of the FAC as it was to the Original Complaint.

Plaintiff's trade dress definition in *Dan-Dee* was as follows:

> (1) substantially bell-shaped plush toys embodying fanciful renditions of animals/characters, (2) embroidered anime-inspired minimalist, whimsical facial features, (3) a velvety velour-like textured exterior, and (4) stuffing with a light 'marshmallow,' memory foam-like texture.

(Dan-Dee Order, Ciardullo Ex. 1, p.2.)

This Court ruled that these elements are functionally the same as the listing of the

---

[10] Zuru had observed in its Original Motion to Dismiss that despite Judge Kronstadt's ruling in the Dan-Dee case having issued only a few weeks prior, Plaintiffs' former counsel failed to advise the *Hugfun* court of that decision in violation of California Rule of Professional Conduct 3.3(a)(2). Zuru also observed that the *Hugfun* court did not seem to appreciate the sheer numerosity and variety of Squishmallows, nor did the court grapple with the different legal standard applicable to defining trade dress in a large lineup of products. In general, the *Hugfun* defendants did not present all the arguments and authority that Zuru now does.

23

Claimed Elements in the Original Complaint (Dkt. 32, p.5), which in turn now remain essential identical to the Claimed Elements of the FAC. Although the FAC adds further editorial commentary, Zuru contends that the definition supplied in the FAC is also functionally the same as the articulation in *Dan-Dee* for reasons explained in Section IV.B, *supra*, and hence that the same logic that compelled dismissal of the *Dan-Dee* trade dress claims should still apply here as well.

Specifically, in dismissing the trade dress claims in *Dan-Dee*, the Court ruled: "This general description offers little insight into the scope or nature of Kellytoy's claim. [] It is also too broad to form the basis of a plausible claim for trade dress infringement. …in light of the substantial differences among the designs of the products in the Squishmallows line, the images included in the FAC do not provide the level of clarity about the nature and scope of the claimed trade dress as is required by the caselaw. The images do not sufficiently show or explain what about the design of the Squishmallows is claimed as the basis for trade dress protection. Accordingly, the cause of action for federal trademark infringement is not pleaded sufficiently." (Dan-Dee Order, Ciardullo Ex. 1, p.9.)

This same reasoning applies to the present FAC. Plaintiffs have taken the same Claimed Elements and added commentary that does not actually say anything more.

## V.    **CONCLUSION**

The FAC has recycled the same attempted definition of the trade dress that the Court already rejected in its March 5, 2024 Order. More than that, it is by now apparent that Plaintiffs are improperly trying to wield a vague and overbroad definition of the trade dress to try to capture a general style of toy, rather than any specific embodiment of that abstract idea. Having already been afforded an opportunity for amendment, Plaintiffs' trade dress claims should now be dismissed with prejudice. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

4887-0007-3393.4

DATED:  April 2, 2024                **FOLEY & LARDNER LLP**

/s/ Jean-Paul Ciardullo
Jean-Paul Ciardullo
Jonathan E. Moskin
Ashley Koley

Attorneys for Defendant
ZURU, LLC

## WORD COUNT CERTIFICATION

I hereby certify that, according to Microsoft Word's Word Count function, the foregoing Memorandum is less than 7,000 words.

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo

MOTION TO DISMISS

4887-0007-3393.4