UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 2:23-cv-09255-MCS-AGR | Date | June 27, 2024 |
|---|---|---|---|
| Title | *Kelly Toys Holdings, LLC, et al. v. Zuru, LLC* | | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s): Attorney(s) Present for Defendant(s):

None Present None Present

**Proceedings:** (IN CHAMBERS) ORDER ON MOTION TO DISMISS (ECF NO. 35)

Defendant Zuru, LLC, moves to dismiss Counts I, II, IV, and V of the First Amended Complaint of Plaintiffs Kelly Toys Holdings, LLC, Jazwares, LLC, Kelly Amusement Holdings, LLC, and Jazplus, LLC (collectively, "Kelly Toys"). (FAC, ECF No. 34; Mot., ECF No. 35.) Plaintiffs opposed the motion, (Opp'n, ECF No. 36), and Defendant replied, (Reply, ECF No. 38).

Defendant also filed a request for judicial notice of documents filed in support of its motion to dismiss. (RJN, ECF No. 35-2.) Plaintiffs opposed the request, (RJN Opp'n, ECF No. 37), and Defendant replied, (RJN Reply, ECF No. 39).

The Court deems these matters appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

/ / /

/ / /

I.  BACKGROUND

According to their pleading, Plaintiffs assert that they are among the world's leading manufacturers and distributors of high-quality plush toys. (FAC ¶ 1.) In 2016, Kelly Toys released their Squishmallows line. (*Id*.) The Squishmallows line features products with various designs that share common features. (*Id.* ¶ 46.) Though each design is unique, Plaintiffs aver at least some of their Squishmallows share a distinctive trade dress. (*Id.* ¶¶ 45–46.) Plaintiffs describe the alleged Squishmallows trade dress as:

> substantially egg/bell/oval shaped plush toys depicting various similarly shaped abstract/fanciful renditions of animals/characters; simplified Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys; embroidered facial features, such as eyes, nostrils, and/or mouths; distinctive contrasting and non-monochrome coloring; and short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel.[1]

(*Id.* ¶ 65.)

Plaintiffs also include several photos depicting the trade dress. According to Plaintiffs, most of the Squishmallows' designs are the subject of United States copyright registrations or pending applications therefor. (*Id.* ¶ 21.)

Plaintiffs allege that in 2023, Zuru released plush toys known as "Snackles" that have the "*same* distinctive trade dress" as Squishmallows. (*Id.* ¶ 65.) Plaintiffs allege Zuru has been trying to create confusion in the marketplace "to trick customers looking for Squishmallows to buy Snackles instead." (*Id.* ¶ 4.) Zuru's actions, they aver, have already caused significant harm by forcing them to spend

---

[1] Unlike in the original complaint, Plaintiffs do not explicitly state their proposed trade dress. (*See* Compl. ¶ 24, ECF No. 1.) After reviewing the individual elements of Plaintiffs' proposed trade dress, (FAC ¶¶ 26–45), the Court surmises paragraph 65 of the FAC provides an accurate recitation of the trade dress.

"more time and resources to compete with Snackles products that employ Squishmallows' own trade dress and copyrights." (*Id.* ¶ 6.) Plaintiffs aver Zuru's acts are "willfully infringing" the trade dress and are "likewise willfully infringing on [Kelly Toys Holdings, LLC's] copyrights by selling its Snackles products that copy constituent elements of those copyrights." (*Id.* ¶ 7.)

Plaintiffs bring five claims against Defendant: (1) trade dress infringement under the Lanham Act, (2) common law trade dress infringement, (3) copyright infringement under the Copyright Act, (4) common law unfair competition, and (5) California statutory unfair competition. (*Id.* ¶¶ 83–124.) Defendant moves to dismiss all claims except Plaintiffs' claim for copyright infringement under the Copyright Act. (Mot. 2.)

## II. REQUEST FOR JUDICIAL NOTICE

Defendant requests that the Court take judicial notice of, or deem incorporated by reference, several documents and photographs filed in support of its motion to dismiss. (RJN 4–7.) The Court denies Defendant's request because consideration of the documents and photographs is unnecessary for the resolution of this motion. *Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445, 454 (9th Cir. 2016). Thus, Defendant's request for judicial notice is **DENIED.**

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los*

*Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

## IV.   DISCUSSION

### A.   Trade Dress

"Trade dress refers generally to the total image, design, and appearance of a product and 'may include features such as size, shape, color, color combinations, texture or graphics.'" *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001) (quoting *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993)). "To prove trade dress infringement, a plaintiff must demonstrate that (1) the trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1145 (9th Cir. 2009) (citing *Disc Golf Ass'n, Inc. v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir. 1998)). In an action for purported infringement of an unregistered trade dress, a plaintiff must "adequately define the trade dress for which it claims protection. *Greenberg v. Johnston*, No. CV-14-04605-MWF (VBKx), 2014 WL 12586252, at *2 (C.D. Cal. Oct. 22, 2014).

Defendant raises two challenges to Plaintiff's trade dress description—first, that several of the individual elements are functional, (Mot. 16, 18–20); and second, that the trade dress description fails to adequately define the trade dress, (*id.* at 14–15; *see generally id.* 15–21). The Court addresses both challenges.

#### 1.   Nonfunctionality

"[F]or a product's design to be protected under trademark law, the design must be nonfunctional." *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 864 (9th Cir. 2020). There are two types of trade dress "functionality"—"'utilitarian functionality,' which is based on how well the product works, and 'aesthetic functionality,' which is based on how good the product looks." *Id.* at 865. "If the claimed trade dress has either type of functionality, it is unprotectable." *Id.*

"A claimed trade dress has utilitarian functionality if it is essential to the use or purpose of a product or affects its cost or quality." *Id.* To determine whether a claimed trade dress has utilitarian functionality, courts apply the four-factor test from

*Disc Golf Association, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002 (9th Cir. 1998). *Blumenthal Distrib.*, 963 F.3d at 865. These factors are: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Disc Golf*, 158 F.3d at 1006. "No one factor is dispositive; all should be weighed collectively." *Id.*

"A claimed trade dress has aesthetic functionality if it serves 'an aesthetic purpose wholly independent of any source identifying function,' such that the trade dress's protection under trademark law 'would impose a significant non-reputation-related competitive disadvantage' on its owner's competitors." *Blumenthal Distrib.*, 963 F.3d at 865 (quoting *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1129, 1131 (9th Cir. 2016)). "[T]he inquiry is whether, if one seller were given exclusive rights to use the claimed trade dress, other sellers would be forced to use alternative designs that make their products more costly to sell, or for which consumers' willingness to pay would be lower for reasons having nothing to do with the reputation of any source." *Id.*

Defendant challenges four of the five stated elements of Plaintiff's proposed trade dress on the grounds that they could be considered functional. (Mot. 16, 18–20.) Plaintiffs appear to counter that it pleads nonfunctionality because the pleading describes the overall look of the trade dress. (Opp'n 15–16.) Here, the Court must examine the trade dress "as a whole," not the sufficiency of each "individual constituent part[] on its own." *Clicks Billiards, Inc.*, 251 F.3d at 1259. And "[t]he fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress *as a whole* is functional; rather, functional elements that are separately unprotectable can be protected together as part of a trade dress." *Id.* (internal quotation marks omitted). While Plaintiffs are correct "that functionality is a question of fact, not of law, that is generally not suitable to disposition on a motion to dismiss," they still have an "obligation to adequately plead non-functionality in order to state a claim for trade dress infringement." *Deckers Outdoor Corp. v. Fortune Dynamic, Inc.*, No. CV 15-769 PSG (SSx), 2015 WL 12731929, at *5 (C.D. Cal. May 8, 2015) (emphasis removed).

Here, Plaintiffs allege the trade dress is nonfunctional because it does "not have utilitarian functionality, as evidenced and underscored by" several factors and that the trade dress "does not have aesthetic functionality, as protection of the specific combination of these aesthetic features would not impose a non-reputation-

related competitive disadvantage against competitors." Plaintiffs offer numerous facts to support these assertions. (FAC ¶¶ 47–48.) Thus, Plaintiffs have adequately pleaded facts at this stage to support its allegation that the trade dress, as a whole, is nonfunctional.

2. <u>Trade Dress Description</u>

Defendant argues Plaintiffs' description of the trade dress "fail[s] to adequately define any cognizable trade dress that meaningfully encompasses their enormous and highly varied product line-up." (Mot. 14–15.) Defendant notes that the new allegations in Plaintiffs' FAC "attempt[] to prop up the Claimed Elements [of the purported trade dress] with explanations of what the original designers of Squishmallows 'intended' when they started creating the products in 2016," but that the added verbiage still does not establish a cognizable trade dress. (Mot. 15; *see id.* at 15–21.) Plaintiffs respond that they have adequately pleaded a trade dress claim such that Defendant is on notice of the parameters of their claimed rights. (Opp'n 9–12.) Plaintiffs aver they have sufficiently pleaded the elements of the Trade Dress, included pictures of the relevant products and infringing products, and added nearly ten pages of detail explaining what the Trade Dress means. (*Id.* at 10.) As the Court previously held, "the mere presence of pictures and a written list is not *per se* sufficient [to meet Rule 8 on a trade dress claim]," and that each complaint "must be evaluated on a case by case basis." (Order 5, ECF No. 32 (quoting Order Re Defs.' Mot. to Dismiss 9, *Kellytoy USA, Inc. et al. v. Dan-Dee Int'l, Ltd.*, 2:18-cv-05399-JAK-AGR (C.D. Cal. Feb. 7, 2019) (Kronstadt, J.), ECF No. 39).)

The Court previously found Plaintiffs' trade dress description "general" and "[did] not provide sufficient specificity as to the nature and scope of Plaintiffs' claim." (*Id.*) Specifically, it found Plaintiffs' description and the accompanying images did not "provide the level of clarity about the nature and scope of the claimed trade dress" and granted Kelly Toys leave to amend, warning that "a subsequent pleading containing another ill-defined trade dress description may result in a final dismissal of the trade dress claims." (*Id.* at 5, 7 (internal quotation marks omitted).) Here, Plaintiffs provided a trade dress description that is nearly identical to that described in their original complaint. (*Compare* Compl. ¶ 24, ECF No. 1, *with* FAC ¶ 65.) Aside from adding the words "oval" and "abstract" and removing the words "Asian style," Plaintiffs have not materially modified the trade dress description previously found deficient. (Order 5.)

However, Plaintiffs added roughly 10 pages of descriptors to their amended complaint elaborating on the individual elements that compose the proposed trade dress. (FAC ¶¶ 26–44.) For instance, the first element of Plaintiffs' proposed trade dress is "substantially egg/bell/oval shaped plush toys depicting various similarly shaped abstract/fanciful renditions of animals/characters." (FAC ¶ 65.) In describing this element, Plaintiffs aver that Squishmallows sporting the identified trade dress "uses an egg/bell/oval shape, rather than a full-figure or shapes like squares, sphered [sic], and triangles" and that "even when the Squishmallows have arms or legs, the limbs are not proportional to what a consumer would expect in a toy that is meant to look like a real animal or character." (*Id.* ¶ 27.) Plaintiff's new allegations assert that Squishmallows products all share a particular abstracted shape. (*Id.* ¶¶ 27–28.) By way of another example, Plaintiffs aver their trade dress includes a "simplified Kawaii faces" element. (FAC ¶ 65.) In the FAC, Plaintiffs define this as "simple features [that] create a cute, lovable, or innocent look through use of simplified shapes and soft lines" and "simplified shapes and marks with stylized artworks." (*Id.* ¶¶ 31–32.) Plaintiffs aver the language added to describe all five of their elements "explain what *each* element of Plaintiffs' trade dress means." (Opp'n 2.)

The Court must "focus *not* on the individual elements [of a proposed trade dress], but rather on the overall visual impression that the combination and arrangement of those elements create" in assessing the viability of Plaintiffs' proposed trade dress. *Clicks Billiards, Inc.*, 251 F.3d at 1259. In reviewing the overall impression created by the five elements proposed by Plaintiffs, and the descriptors of each element, the Court finds the trade dress description is sufficient to survive a Rule 12(b)(6) motion.

Notwithstanding the adequacy of Plaintiffs' amended trade dress description and its accompanying descriptors, Plaintiffs now aver that they "seek only protection for" products that are covered by their proposed trade dress description and "*not* designs for every Squishmallows-branded product ever sold." (Opp'n 8.) However, Plaintiffs do not attempt to identify which of their products fall within their proposed description, except by vaguely asserting the description applies to the products who meet the elements described and not to the others. (*Id.*) The Court shares Defendant's concern that Plaintiffs' ambiguity to this end "fails to put Zuru on notice under Rule 8, and improperly creates a moving target for any assessment of infringement or validity going forward." (Reply 1.) Plaintiff's failure to identify which of its products are protected by the proposed trade dress warrants dismissal of Plaintiff's trade dress claims. *See Mosaic Brands, Inc. v. Ridge Wallet LLC*, No. 2:20-cv-04556-AB (JCx), 2020 U.S. Dist. LEXIS 219857, at *16–17 (C.D. Cal. Oct. 29, 2020) (dismissing

claim where plaintiff sought to protect trade dress pertaining to underspecified domain of products).

Plaintiffs' first, second, fourth and fifth claims are premised on purported trade dress infringement. (FAC ¶¶ 83–106, 115–24.) Because the Court finds Plaintiffs' trade dress description fails to identify a finite domain of products to which it applies, the Court **GRANTS** Defendant's motion to dismiss the first, second, fourth, and fifth causes of action.

### B.     Leave to Amend

"Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The Court previously granted Plaintiffs leave to amend, but "warn[ed] that a subsequent pleading containing another ill-defined trade dress description may result in a final dismissal of these claims." (Order 7 (quoting *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).)

Plaintiffs suggest that, if granted leave to amend, they would "narrow the list of Squishmallows that practice" the purported trade dress. (Opp'n 20.) The Court grants Plaintiffs leave to amend the first, second, fourth, and fifth causes of action for this purpose.

### V.     CONCLUSION

Defendant's motion is granted. Plaintiffs' first, second, fourth, and fifth causes of action are dismissed. Plaintiffs may file an amended complaint within 14 days of this Order if they can do so consistent with this Order and Federal Rule of Civil Procedure 11(b). Failure to file a timely amended complaint will waive the right to do so. Leave to add new defendants or claims must be sought by a separate, properly noticed motion. Any amended complaint must be accompanied by a redline version showing any additions, deletions, and changes. (Initial Standing Order § 10(a), ECF No.19.)

**IT IS SO ORDERED.**