JEAN-PAUL CIARDULLO, CA Bar No. 284170
 jciardullo@foley.com
ASHLEY M. KOLEY, CA Bar No. 334723
 akoley@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE:  213.972.4500
FACSIMILE:  213.486.0065

[ADDITIONAL COUNSEL ON SIGNATURE PAGE]

*ATTORNEYS FOR DEFENDANT ZURU, LLC*

**HUESTON HENNIGAN LLP**
Moez M. Kaba, State Bar No. 257456
mkaba@hueston.com
Sourabh Mishra, State Bar No. 305185
smishra@hueston.com
523 West 6th Street, Suite 400
Los Angeles, CA 90014
Telephone:  (213) 788-4340
Facsimile:  (888) 866-4825

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC; JAZWARES, LLC; KELLY AMUSEMENT HOLDINGS, LLC; and JAZPLUS, LLC<br><br>          *Plaintiffs,*<br><br>     v.<br><br>ZURU, LLC,<br><br>          *Defendant.* | Case No. 2:23-cv-09255-SRM-AGR<br><br>**ZURU, LLC'S MOTION FOR SUMMARY JUDGMENT; PARTIES' JOINT BRIEF RE ZURU'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hon. Serena R. Murillo<br><br>Date:      October 8, 2025<br>Time:     1:30 PM<br>Court:    First Street Courthouse |

**REDACTED PUBLIC VERSION OF DOCUMENT
FILED PURSUANT TO COURT ORDER AT DKT. 172.
ACCOMPANYING APPENDICES AND EXHIBITS PREVIOUSLY ON FILE.**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Thursday, October 8, 2025, at 1:30 PM before the Honorable Serena R. Murillo at the Courthouse at 350 W 1st Street in Los Angeles, California, Defendant Zuru, LLC ("Zuru") will and hereby does move for summary judgment as to the validity of the trade dress asserted by Plaintiffs, as well as other topics set forth herein.

This Motion is based on the Joint Brief below, Joint Appendix of Facts, Joint Appendix of Evidence, and accompanying Declarations and Exhibits, as well as such matters of which this Court may take judicial notice, and upon such further oral argument and documentary evidence as may be presented at the time of hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 and this Court's Standing Order on Summary Judgment Motions which took place by stipulation on June 16, 2025, as well as other discussions between counsel on the matters herein.

Dated: 9/3/2025

Foley & Lardner LLP

/s/ Jean-Paul Ciardullo
Jean-Paul Ciardullo

*Attorneys for Defendant*
*ZURU, LLC*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ............................................................................................. 1

    A. ZURU'S INTRODUCTION ................................................................. 1

    B. PLAINTIFFS' INTRODUCTION ........................................................ 3

II. STATEMENT OF FACTS ............................................................................. 5

    A. ZURU'S STATEMENT OF FACTS .................................................... 5

        1. Squishmallows Entered A Pre-Existing Product Category Of Round Kawaii Plush Toys, Mimicking Existing Designs ................... 6

        2. Zuru's Snackles Were Based On Prior Successful Zuru Products ............................................................................................. 7

        3. Plaintiffs' Multiple Attempts To Define The Asserted Trade Dress ..................................................................................... 7

    B. PLAINTIFFS' STATEMENT OF FACTS ........................................... 9

        1. Plaintiffs' Squishmallows Have Achieved Historic Success ............... 9

        2. Zuru Copied the "Exact Likeness" of the Trade Dress in its Snackles ...................................................................................... 11

        3. Zuru's Copying Has Resulted in Substantial Consumer Confusion ...................................................................................... 12

III. ZURU'S ARGUMENTS ON TRADE DRESS CLAIMS ................................... 13

    A. Zuru Argument # 1: The Alleged Trade Dress Is Invalid Because Plaintiffs Impermissibly Claim Rights In An Abstract Style ........................ 13

        1. *Applicable Law:* Trade Dress Rights Cannot Apply To An Abstract Design Concept ................................................................. 14

        2. The Alleged Trade Dress Is Invalid Because It Is A Vague Abstract Style .............................................................................. 17

        3. The Alleged Trade Dress Is Invalid Because It Would Be Impossible To Register ................................................................. 19

        4. The Alleged Trade Dress Is Invalid Because Plaintiffs Cannot Show Infringement From Any Given Product Pairing ....................... 20

        5. The Alleged Trade Dress Is Invalid Because Plaintiffs' Own Witnesses Cannot Define It ............................................................. 20

    B. Zuru Argument # 2: Plaintiffs' Alleged Trade Dress Is Invalid Because It Lacks Secondary Meaning And Is Functional .......................... 22

i

1.    *Applicable Law:* Plaintiffs' Burden To Prove Secondary Meaning And Non-Functionality For Claimed Unregistered Trade Dress ................................................................22

2.    The Alleged Trade Dress' Generalized Design Concepts Are Not Protectable..........................................................23

3.    The Alleged Trade Dress Is Not From A S████████se ████████████████████████████████ ..........26

C.    Zuru Argument # 3: There Is No Evidence That All Snackles Infringe.......28

D.    Zuru Argument # 4: There Is No Evidence That Snackles Capsules Confuse Consumers ....................................................29

IV.    PLAINTIFFS' ARGUMENTS ON TRADE DRESS CLAIMS............................29

A.    There Are Triable Issues of Fact on Plaintiffs' Trade Dress Claims...........29

1.    There Are Disputes of Material Fact on Nonfunctionality.................30

2.    There Are Disputes of Material Fact on Secondary Meaning...........32

3.    There Are Disputes of Material Fact on Likelihood of Confusion ....................................................36

4.    Zuru's "Invalidity" Arguments Are Irrelevant and Incorrect............38

V.    COPYRIGHT CLAIMS ......................................................43

A.    Zuru Argument # 5: The Seven Accused Snackles Characters Do Not Infringe Kelly Toys' Copyrights................................43

B.    Plaintiffs' Response: There Are Triable Issues of Fact On Copyright.........46

VI.    DISMISSAL OF KELLY AMUSEMENT AND JAZPLUS.................................49

A.    Zuru Argument #6: Kelly Amusement & Jazplus Should Be Dismissed .....................................................49

B.    Plaintiffs' Response: Summary Judgment Is Inappropriate.........................50

VII.    CONCLUSION....................................................................50

A.    Zuru's Conclusion ............................................................50

B.    Plaintiffs' Conclusion.......................................................50

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aliotti v. R. Dakin & Co.*,
831 F.2d 898 (9th Cir. 1987) ...................................................................................44, 46

*Alpi Int'l, Ltd. v. Anga Supply, LLC*,
118 F. Supp. 3d 1172 (N.D. Cal. 2015) ..................................................................44, 47

*AMF, Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir. 1979) ...................................................................................29, 36

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
68 F. Supp. 3d 1170 (C.D. Cal. 2014) .............................................................................5

*Am., Inc. v. Skechers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018) ..........................................................................33, 34, 36

*Apple Inc. v. Samsung Elecs. Co.*,
768 F. Supp. 2d 1040 (N.D. Cal. 2011) .........................................................................16

*Apple Inc. v. Samsung Elecs. Co.*,
786 F.3d 983 (Fed. Cir. 2015)........................................................................................14

*Aurora World*,
2011 WL 13176413 (test for "stock" features).....................................................47, 48, 49

*Au-Tomotive Gold v. Volkswagen of Am.*,
457 F.3d 1062 (9th Cir. 2006) ......................................................................................31

*Berkic v. Crichton*,
761 F.2d 1289 (9th Cir. 1985) ......................................................................................44

*Black & Decker Corp. v. Positec USA Inc.*,
2015 WL 4183775 (N.D. Ill. July 10, 2015).................................................................42

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
963 F.3d 859 (9th Cir. 2020) ................................................................................passim

*Boston Athletic Ass'n v. Sullivan*,
867 F.2d 22 (1st Cir. 1989).............................................................................................5

*Cal. Scents v. Surco Prods.*,
28 F. App'x 659 (9th Cir. 2002) ...............................................................................30, 36

iii

*Cardinal Motors, Inc. v. HH Sports Prot. USA, Inc.,*
  2021 WL 1758881 (S.D.N.Y. May 4, 2021) ........................................................passim

*Century 21 Real Estate Corp. v. Sandlin,*
  846 F.2d 1175 (9th Cir. 1988) .........................................................................36

*China Cent. TV v. Create New Tech. (HK) Ltd.,*
  2015 U.S. Dist. LEXIS 189052 (C.D. Cal. Dec. 7, 2015) .................................3

*Clicks Billiards, Inc. v. Sixshooters, Inc.,*
  251 F.3d 1252 (9th Cir. 2001) .....................................................................passim

*Coach, Inc. v. Jay,*
  2015 WL 12681378 (C.D. Cal. June 25, 2015) ...............................................40

*Crafty Prods. v. Michaels Cos.,*
  389 F. Supp. 3d 876 (S.D. Cal. 2019).......................................................passim

*Crafty Prods., Inc. v. Michaels Cos., Inc.,*
  424 F. Supp. 3d 983 (S.D. Cal. 2019)......................................................13, 43

*Cybergun, S.A. v. Jag Precision,*
  2014 U.S. Dist. LEXIS 176278 (D. Nev. Dec. 19, 2014)................................27

*Duraco Products,*
  40 F.3d (3d Cir. 1994).....................................................................................26

*E & J Gallo v. Proximo Spirits, Inc.,*
  2012 WL 947187 (E.D. Cal. Mar. 20, 2012) .................................................13

*Echlin v. PeaceHealth,*
  887 F.3d 967 (9th Cir. 2018) ....................................................................29, 37

*Exxon Corp. v. Tex. Motor Exchange,*
  628 F.2d 500 (5th Cir. 1980) ..........................................................................13

*EZ-Pedo,Inc. v. Mayclin Dental Studio, Inc.,*
  284 F. Supp. 3d 1065 (E.D. Cal. 2018) ......................................14, 38, 39, 40

*Fierce, Inc. v. Franklin Covey Co.,*
  2019 U.S. Dist. LEXIS 57678 (W.D. Wash. Apr. 2, 2019).............................17

*FreecycleSunnyvale v. Freecycle Network,*
  626 F.3d 509 (9th Cir. 2010) ..........................................................................28

iv

*Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*,
    826 F.2d 837 (9th Cir. 1987) ...................................................................................4

*Funky Films, Inc. v. Time Warner Entm't Co., L.P.*,
    462 F.3d 1072 (9th Cir. 2006) ...............................................................................48

*Galindo v. Stoody Co.*,
    793 F.2d 1502 (9th Cir. 1986) ...............................................................................37

*Goscicki v. Custom Brass & Copper Specialties, Inc.*,
    229 F. Supp. 2d 743 (E.D. Mich. 2002)..................................................................23

*GoTo.com, Inc. v. Walt Disney Co.*,
    202 F.3d 1199 (9th Cir. 2000) ..........................................................................34, 36

*Grondin v. Fanatics, Inc.*,
    2023 U.S. Dist. LEXIS 4538 (E.D. Pa. Jan. 10, 2023)..........................................44

*Grondin v. Fanatics, Inc.*,
    2023 WL 144284 (E.D. Pa. Jan. 10, 2023)............................................................47

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    2014 U.S. Dist. LEXIS 156675 (C.D. Cal. Nov. 5, 2014)......................................15

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
    2014 WL 6892141 (C.D. Cal. Nov. 5, 2014)..............................................39, 40, 43

*Inc. v. Old Navy, Inc.*,
    1999 U.S. Dist. LEXIS 3975 (N.D. Cal. Mar. 29, 1999).......................................21

*Indonesian Imports, Inc. v. B. H. Smith*,
    1999 WL 183629 (N.D. Cal. Mar. 30, 1999)..............................................18, 21, 42

*Ingrid & Isabel, LLC v. Baby Be Mine, LLC*,
    70 F. Supp. 3d 1105 (N.D. Cal. 2014) .....................................................................4

*Interactive Health LLC v. King Kong United States, Inc.*,
    2008 WL 11337393 (C.D. Cal. Mar. 6, 2008).............................................16, 39, 40, 41

*Int'l Leisure Prods. v. Funboy LLC*,
    747 F. App'x 23 (2d Cir. 2018) ..................................................................15, 17, 35

*James Burrough v. Sign of Beefeater*,
    540 F.2d 266 (7th Cir. 1976) .................................................................................13

v

*Jason Scott Collection v. Trendily Furniture*,
68 F.4th 1203 (9th Cir. 2023) ...................................................................................33, 36

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
58 F.3d 27 (2d Cir. 1995)...................................................................................14, 18, 25

*Karoun Dairies, Inc. v. Los Altos Food Prods.*,
107 F. App'x 785 (9th Cir. 2004).................................................................................28, 37

*Kelly Toys Holdings v. Build-A-Bear Workshop*,
2024 WL 3469028 (C.D. Cal. July 15, 2024).................................................5, 40, 41, 43

*L.A. Printex Indus., Inc. v. Aeropostale, Inc.*,
676 F.3d 841 (9th Cir. 2012) .......................................................................................49

*Landscape Forms, Inc. v. Columbia Cascade Co.*,
113 F.3d 373 (2d Cir. 1997).................................................................................passim

*Leatherman Tool Grp., Inc. v. Cooper Indus.*,
199 F.3d 1009 (9th Cir. 1999) ...............................................................................25, 32

*LEGO A/S v. ZURU Inc.*,
2019 WL 4643718 (D. Conn. July 8, 2019) ...............................................................42

*LEGO A/S v. Zuru, Inc.*,
2019 WL 13158030 (D. Conn. Nov. 20, 2019) ...........................................................11

*Lisa Frank v. Impact Int'l.*,
799 F. Supp. 980 (D. Ariz. 1992) .........................................................................30, 37

*Lisa Frank v. Orb Factory, Ltd.*,
2017 WL 6000477 (D. AZ Sep. 21, 2017) .........................................................31, 34, 35, 42

*Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*,
292 F. Supp. 2d 535 (S.D.N.Y. 2003) .........................................................................43

*Maier Brewing Co. v. Fleischmann Distilling Corp.*,
390 F.2d 117 (9th Cir. 1968) .......................................................................................50

*Mattel, Inc. v. MGA Ent., Inc.*,
616 F.3d 904 (9th Cir. 2010) .......................................................................................47

*Mercado Latino, Inc. v. Indio Prods., Inc.*,
2017 WL 1356315 (C.D. Cal. Apr. 11, 2017) .............................................................34

vi

*Mike Vaughn Custom Sports, Inc. v. Piku*,
15 F. Supp. 3d 735 (E.D. Mich. 2014)................................................................18

*Millennium Lab'ys, Inc. v. Ameritox, Ltd.*,
817 F.3d 1123 (9th Cir. 2016) ....................................................................3, 40

*Moldex-Metric, Inc. v. McKeon Prods., Inc.*,
891 F.3d 878 (9th Cir. 2018) ......................................................................3, 32

*Morgan Creek Prods. v. Capital Cities/ABC, Inc.*,
1991 WL 352619 (C.D. Cal. Oct. 28, 1991)......................................................35

*Moroccanoil v. Marc Anthony Cosmetics, Inc.*,
57 F. Supp. 3d 1203 (C.D. Cal. 2014) ...............................................37, 41, 42

*Mosaic Brands, Inc. v. Ridge Wallet LLC*,
55 F.4th 1354 (Fed. Cir. 2022) ..........................................................................23

*MSP Corp. v. Westech Instruments, Inc.*,
500 F. Supp. 2d 1198 (D. Minn. 2007)...............................................................27

*MultiCraft Imports v. Mariposa USA*,
2018 WL 11352041 (C.D. Cal. Jan. 19, 2018)....................................................37

*Nat'l Lighting Co. v. Bridge Metal Indus.*,
601 F. Supp. 2d 556 (S.D.N.Y. 2009) ...............................................................16

*Nova Wines v. Adler Fels Winery*,
467 F. Supp. 2d 965 (N.D. Cal. 2006) ...............................................................36

*P&P Imports v. Johnson Enters.*,
46 F.4th 953 (9th Cir. 2022) .............................................................3, 29, 33, 34

*Paramount Farms Int'l LLC v. Keenan Farms Inc.*,
2012 WL 5974169 (C.D. Cal. Nov. 28, 2012) ...................................16, 41, 43

*Pasillas v. McDonald's Corp.*,
927 F.2d 440 (9th Cir. 1991) .............................................................................47

*Pom Wonderful LLC v. Hubbard*,
775 F.3d (9th Cir. 2014) ....................................................................................36

*Pretty in Plastic, Inc. v. Bunn*,
793 F. App'x 593 (9th Cir. 2020)...............................................................44, 47

vii

*Renna v. Cty. of Union*,
  88 F. Supp. 3d 310 (D.N.J. 2014) ................................................................................19, 42

*Roblox Corp. v. WowWee Grp. Ltd.*,
  2024 WL 4051751 (N.D. Cal. Sept. 3, 2024) ........................................................41

*Romex Textiles, Inc. v. HK Worldwide, LLC*,
  2019 WL 3935099 (C.D. Cal. Aug. 20, 2019) ......................................................47, 49

*Rose Art Indus. v. Swanson*,
  235 F.3d 165 (3d Cir. 2000)................................................................................16

*Sara Designs, Inc. v. A Classic Time Watch Co.*,
  234 F. Supp. 3d 548 (S.D.N.Y. 2017) ......................................................................24

*Satava v. Lowry*,
  323 F.3d 805 (9th Cir. 2003) ...............................................................................44

*Shelbyco Inc. v. Western Trimming Corp.*,
  1997 WL 377982 (D. Utah. May 12, 1997)...............................................................24

*Sheldon v. Metro–Goldwyn Pictures Corp.*,
  81 F.2d 49 (2d Cir. 1936)...................................................................................49

*Sound & Color, LLC v. Smith,*
  2025 WL 1232639 (9th Cir. Apr. 29, 2025) ......................................................47, 48

*Sw. MFG. LLC v. Wilmar LLC*,
  2024 WL 3718371 (C.D. Cal. July 16, 2024).............................................................32

*Swirsky v. Carey,*
  376 F.3d 841 (9th Cir. 2004) ...............................................................................48

*Tangle, Inc. v. Aritzia, Inc.*,
  125 F.4th 991 (9th Cir. 2025) ...............................................................................47

*ToneBros. v. Sysco Corp,*
  4:90-CV-60011, 1992 U.S. Dist. LEXIS 10867 (S.D. Iowa Mar. 17, 1992) ..............27

*Treat, Inc. v. Dessert Beauty,*
  2006 U.S. Dist. LEXIS 74476 (D. Or. May 5, 2006) ...........................................14, 15

*Treat, Inc. v. Dessert Beauty,*
  2006 WL 2812770 (D. Or. May 5, 2006) ........................................................39, 40

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
   505 U.S. 763 (1992) .................................................................................. 19

*Walker & Zanger, Inc. v. Paragon, Indus.*,
   549 F. Supp. 2d 1168 (N.D. Cal. 2007) ............................................... 24, 26

*Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*,
   916 F.2d 76 (2d Cir. 1990) .................................................................. 15, 22

*Wal-Mart Stores v. Samara Bros.*,
   529 U.S. 205 (2000) ...................................................................... 14, 23, 34

*Wasco Prods. v. Southwall Techs., Inc.*,
   435 F.3d 989 (9th Cir. 2006) ............................................................... 29, 37

**Rules**

Fed. R. Civ. P. 15(b) ....................................................................................... 37

Fed. R. Civ. P. 56(a) ....................................................................................... 46

Fed. R. Civ. P. 65 ........................................................................................... 18

**Regulations**

37 C.F.R. §2.52 .......................................................................................... 19, 20

**Other Authorities**

1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:5.50
   (5th ed. 2020) ........................................................................................ 2, 15

McCarthy on Trademarks and Unfair Competition § 7:74 ............................... 31

McCarthy on Trademarks and Unfair Competition § 18:79 (5th ed.) ............... 35

# I.    INTRODUCTION

## A.    ZURU'S INTRODUCTION

Zuru seeks summary judgment that Plaintiffs' overbroad trade dress definition is legally invalid, and that Zuru therefore cannot be liable for trade dress infringement. It is a bedrock principle of intellectual property law that one cannot claim rights in a general design concept, but rather only in a specific embodiment of that concept. That is why no single comic book company can lay claim to all muscled superheroes wearing tights and capes. Here, faced with a lineup of *thousands* of differently-configured Squishmallows characters, Plaintiffs have impermissibly tried to claim a single overarching trade dress in the general style concept of a round Kawaii plush toy,[1] rather than in any one specific product configuration. The scope of Plaintiffs' proposed trade dress rights—which include garden-variety elements such as "substantially egg/bell/oval shaped" with "embroidered facial features" and "distinctive contrasting and non-monochrome coloring"—are so basic, that according to Plaintiffs, the *same* single trade dress is embodied in all the plush toys below, and over 2,300 more:



As the wildly different appearances exemplify (with more examples at Zuru Appendix 3)[2], Plaintiffs' articulation is invalid based on the sheer overbreadth of its scope: to allow rights in such an over-generalized concept to the exclusion of all other plush toy sellers would be deeply anti-competitive. "If the law protected style at such a level of abstraction, Braque might have prevented Picasso from selling cubist paintings."

---

[1] Kawaii is a Japanese word simply meaning "cute." The Kawaii style is ubiquitous in the toy industry, having been popularized in the U.S. long before Squishmallows, including by Hello Kitty. While Plaintiffs' definition includes certain other aspects such as "non-monochrome," Zuru considers these non-distinctive for this class of toys, and will refer to the basic design concept as "round Kawaii plush" as a convenient shorthand.

[2] Zuru has included several Appendices of product images ("Zuru Appx.").

1

4901-0657-9287.1

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997).

The vagueness of Plaintiffs' trade dress definition has not only made their claims a moving target in litigation (even Plaintiffs' own witnesses and experts cannot keep it straight), but, more importantly, it threatens an overbroad injunction that would impermissibly preclude Zuru from participating in an entire market category. This is despite the fact that Plaintiffs did not even originate the claimed trade dress concept (Squishmallows mimic popular pre-existing toys); and that Plaintiffs have no exclusivity over the claimed design (round Kawaii plush toys are ubiquitous). While Plaintiffs might command some recognition for the *name* "Squishmallows," Zuru's accused products – which are always conspicuously labeled as "Zuru Snackles" – are as easy to distinguish from Squishmallows as a Toyota from a Ford.

Plaintiffs' trade dress claims in this case are unprecedented. Trade dress cases usually concern the appearance of a single product. Product *lineup* cases are rarer, often involving a lineup of just a few products. This is for good reason: as Prof. McCarthy observes in his seminal treatise, "[w]hen it is claimed that the trade dress is inherent in an entire series or line of products, the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is common to all items in the series or line." 1 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:5.50 (5th ed. 2020) ("MCCARTHY"). Zuru is unaware of any precedent for a trade dress plaintiff claiming a single trade dress across a lineup of *thousands* of differently-configured products. Yet Plaintiffs do so here.

This matters. If *all* 2,350 Squishmallows possessed the same asserted trade dress, Plaintiffs should be able to prove infringement by comparing *any* of the 2,350 to *any* of the 50+ Snackles (as opposed to a few cherry-picked favorites). Such a comparison reveals that of the 130,000+ possible pairings, the product lines are decidedly dissimilar except for the fact that they are all round Kawaii plush toys—*i.e.*, an unprotectable style.

Even if Plaintiffs articulated a properly conscribed trade dress definition (they did not), the Court still should enter summary judgment for Zuru because Plaintiffs cannot

2

4901-0657-9287.1

meet their two threshold burdens of proving non-functionality and secondary meaning. Also, Zuru seeks summary judgment of non-infringement of the trade dress; Zuru's non-infringement of copyright as to the seven so-accused Snackles characters because there is no similarity between the Parties' designs after filtering out utilitarian and stock elements; and certain other discrete matters. Summary judgment on the Lanham Act and copyright claims also compels dismissal of the state law claims. *China Cent. TV v. Create New Tech. (HK) Ltd.*, 2015 U.S. Dist. LEXIS 189052, at *34 (C.D. Cal. Dec. 7, 2015).

## B.   PLAINTIFFS' INTRODUCTION

The evidence uncovered in this case demonstrates that Zuru deliberately copied Plaintiffs' Squishmallows trade dress in hopes of sneaking sales from confused Squishmallows consumers, and that their efforts undeniably worked—resulting in numerous consumers mistaking Zuru's Snackles for Squishmallows. Despite this record, including overwhelming and undisputed evidence that Zuru intentionally copied Squishmallows, Zuru moves for summary judgment. But as the Ninth Circuit has "warn[ed]," district courts should "disfavor deciding [trade dress] cases in summary judgments because the ultimate issue is so inherently factual." *Clicks Billiards, Inc. v. Sixshooters, Inc.,* 251 F.3d 1252, 1267 (9th Cir. 2001) (cleaned up). Indeed, the Ninth Circuit has consistently reversed grants of summary judgment to defendants on trade dress claims where the record was less favorable to plaintiffs than here. *Id.* (reversing grant of summary judgment on trade dress claims to defendant); *Millennium Lab'ys, Inc. v. Ameritox, Ltd.*, 817 F.3d 1123, 1131 (9th Cir. 2016) (same); *P&P Imports v. Johnson Enters.*, 46 F.4th 953, 964 (9th Cir. 2022) (same); *Moldex-Metric, Inc. v. McKeon Prods., Inc.*, 891 F.3d 878, 886-87 (9th Cir. 2018) (same). Courts thus deny defendants' summary judgment motion based on obvious similarities between the parties' products, such as:

3

4901-0657-9287.1



(JAF 230.) *See, e.g.*, *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1138 (N.D. Cal. 2014) ("actual similarity of [products] . . . create[s] triable issues of fact"). This Court should follow the Ninth Circuit's directive and deny summary judgment.

In addition to sidestepping these obvious similarities, Zuru's motion fails to address, much less explain, the significant evidence of intentional copying. Zuru omits reference to its *own employees' pitch* that Zuru designed its infringing Snackles to capture the "exact likeness" of Squishmallows. (JAF 123.) Nor does Zuru discuss the document revealing that its designers *used Squishmallows* as "insp[iration]" for its Snackles designs:

(JAF 124.) Such evidence of intentional copying often suffices, *on its own*, to require trial on secondary meaning and confusion, two elements on which Zuru seeks summary judgment. *E.g.*, *Clicks Billiards*, 251 F.3d at 1264 ("deliberate copying may suffice to support an inference of secondary meaning"); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 846 (9th Cir. 1987) (citing case for the holding: "courts almost unanimously presume a likelihood of confusion based on a showing of intentional copying").

Moreover, Zuru does not even identify (let alone analyze) the relevant standards for

4

4901-0657-9287.1

each challenged element at summary judgment. For example, the Ninth Circuit's functionality test examines four factors to determine where the trade dress is nonfunctional. *Clicks Billiards*, 251 F.3d at 1260. Zuru does not detail these factors. And record evidence shows factual disputes on *each factor*. For example, the evidence demonstrates that competitor toy companies—including Zuru—have a multitude of "alternative designs" for plush toys, which is sufficient to "clear the summary judgment hurdle." *Id.*; JAF 91.

Instead, Zuru focuses its brief dissecting Plaintiffs' written description of the trade dress, which is *not* one of the elements of trade dress infringement the Ninth Circuit considers on summary judgment. *See Clicks Billiards*, 251 F.3d at 1258 (identifying only nonfunctionality, secondary meaning, and confusion). And Judge Scarsi in this case (and Judge Staton in a related case) have *already held* that Plaintiffs' written description is sufficient. (ECF 41 (finding the "trade dress description" to be "sufficient"); *Kelly Toys Holdings v. Build-A-Bear Workshop*, 2024 WL 3469028, at *5 (C.D. Cal. July 15, 2024) ("trade dress" was "adequately described").) Any further questions about the scope or validity of the trade dress are fact issues for trial. *See Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 68 F. Supp. 3d 1170, 1177 (C.D. Cal. 2014) (rejecting argument that the "written description" was too "generic" and "overbroad" because "the question of whether Plaintiff's trade dress is generic based on industry commonality is one for a jury").

"It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts." *Boston Athletic Ass'n v. Sullivan*, 867 F.2d 22, 30 (1st Cir. 1989) (cleaned up). That is precisely what Zuru does here: misstating the law and facts in an attempt to avoid summary judgment, while enjoying the fruits of the confusion its copycat product has created in the marketplace. "Viewing the evidence in the light most favorable to [Plaintiffs] and drawing all reasonable inferences in [their] favor"—as this Court must—summary judgment should be denied. *Clicks Billiards*, 251 F.3d at 1257.

## II.    STATEMENT OF FACTS

### A.    ZURU'S STATEMENT OF FACTS

5

4901-0657-9287.1

### 1.    Squishmallows Entered A Pre-Existing Product Category Of Round Kawaii Plush Toys, Mimicking Existing Designs

To hear Plaintiffs' telling, they invented round Kawaii plush toys when Kellytoy released the first five Squishmallows in 2017. However, as explained by Zuru's toy design expert, Deborah Ryan, not only have these toys been around for decades (JAF 1,2), but Squishmallows mimicked popular pre-existing designs (Ryan Report, Joint Exhibit ["JE"] 1, ¶53; Rosenblum Report, JE 3, ¶75), and round Kawaii plush are now ubiquitous in the market (JAF 3, 51). Likewise, the concept of a collectible toy lineup of numerous characters has been around for decades, from Beanie Babies, to My Little Ponies, to Care Bears. (JAF 4.) Kellytoy's business model in fact was based on trend-following, as its own history of product releases demonstrates. (JAF 5.)

Squishmallows began in 2017 as a collection of five animal characters that Plaintiffs call their "Core Squishmallows" (Zuru Appx. 1), including Plaintiffs' admitted "brand icon" – a character called Cam the Cat. (JAF 6.)



PUSHEEEN CAT    SUMMIKOGURASHI CAT    CAM THE CAT

Plaintiffs contend that Cam the Cat is simply a mashup of several pre-existing round Kawaii plush toys including Pusheen and Summikogurashi. (Rosenblum Report, JE 3, ¶75.) The Core Squishmallows are simple egg shapes with ears and no limbs or other projections (Zuru Appx. 1), *i.e.*, markedly different than



Snackles, which have, among other things, prominent appendages, projecting snouts, and are holding large branded food items, as shown in these examples (Zuru Appx. 2, JAF 88.) To this day, the Core Squishmallows – especially Cam the Cat – dominate Plaintiffs' marketing. (JAF 7.) Other than generally being round Kawaii plush, there is no single consistent structure or embodiment across the lineup, and even the basic egg shape is not present in all of them, with some being more like M&Ms, and others having an irregular

6

4901-0657-9287.1

animal shape. (JAF 30-33; Zuru Appx. 3.) This presented a problem for Plaintiffs, who did not register any Squishmallow trade dress with the PTO. (JAF 14-15.)

Plaintiffs nonetheless have filed a plethora of lawsuits claiming *unregistered* common law rights in a single overarching trade dress, all of which were resolved before any final determination on the merits. (JAF 10.) Plaintiffs twice settled lawsuits ███ ████████████████████████████████████████████████████ (which Snackles has too). (JAF 11-13.)

**2.     Zuru's Snackles Were Based On Prior Successful Zuru Products**

Zuru is one of the largest toy companies in the world and has sold many successful and innovative products over the past two decades. These include: (1) "Mini Brands," which are miniature licensed versions of popular snack foods and other brands sold inside surprise capsules; (2) "5 Surprise," another surprise capsule product; and (3) "Rainbocorns," which are round plush toys similar to Snackles that are sold inside surprise capsules. (JAF 16.) Around 2021, Zuru's design team in New Zealand noted a popular toy trend in TikTok videos from Japan involving the unpacking of plush toys, and decided to introduce a new plush toy product that would expand out of a surprise capsule. (JAF 17.) They also decided to leverage their snack food licenses to make it a snack-based brand, giving it the name "Snackles." (*Id.*) Zuru was aware of Squishmallows, but considered those various character designs to be generic and similar to others already in the market. (JAF 18.) Snackles launched in mid-2023 with a collection of a dozen characters called "Series 1." (JAF 19.) Some of these were sold as 5-inch plush toys concealed within spherical surprise capsules, as had been originally intended. (JAF 20-21.) However, retailers ultimately refused to sell the larger Snackles inside plastic capsules, believing large capsules would be too cumbersome. (JAF 22.)

**3.     Plaintiffs' Multiple Attempts To Define The Asserted Trade Dress**

Plaintiffs filed their original Complaint in November 2023. (Dkt. 1.) Not long thereafter, Zuru began phasing out the Series 1 Snackles characters and replacing them with Series 2, which has expanded now to over 50 characters. (JAF 23.) However,

7

Plaintiffs' Third Amended Complaint ("TAC") filed on August 5, 2024 still exclusively focuses on several Series 1 Snackles. Confusingly, Plaintiffs' pleadings also refer to Zuru Coco Squishies plush toys, but Plaintiffs later clarified that they do *not* contend that Coco Squishies infringe Plaintiffs' asserted trade dress. (JAF 24, images at Zuru Appx. 7.)

Plaintiffs allege a single trade dress in the combination of the following elements:

(1) substantially egg/bell/oval shaped plush toys depicting various similarly shaped abstract/fanciful renditions of animals/characters;

(2) simplified Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys;

(3) embroidered facial features, such as eyes, nostrils, and/or mouths;

(4) distinctive contrasting and non-monochrome coloring; and

(5) short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel.

(JAF 26.) Judge Scarsi granted Zuru's motion to dismiss the original Complaint, finding that "[t]here are substantial differences among the various designs of the Squishmallows, and neither the description nor the images in the complaint provide the level of clarity about the nature and scope of the claimed trade dress." (Dkt. 32, p.5.) Plaintiffs amended not by modifying their trade dress definition,[3] but by adding factual allegations contending that each of the alleged trade dress elements was original and distinguishable from other toys in the market (a premise Zuru herein contests with the benefit of discovery). (Dkt. 34.)

Zuru moved to dismiss again (Dkt. 35), and Judge Scarsi found the First Amended Complaint's new written explanations "sufficient to survive a Rule 12(b)(6) motion," but dismissed the complaint for failure to explain which Squishmallows supposedly have the trade dress and which do not, given that Plaintiffs still refused to include anything more than a small sampling of product photos out of thousands of Squishmallows. (Dkt. 41, p.7.)

---

[3] Plaintiffs dropped the term "Asian style" and added the words "oval," and "abstract," none of which had any effect on the scope of what Plaintiffs claimed.

8

4901-0657-9287.1

Plaintiffs' Second Amended Complaint failed to address this defect, but the parties arrived at a stipulation whereby (1) Zuru expressly reserved the right to challenge the sufficiency of the trade dress description on summary judgment, and (2) Plaintiffs could file a Third Amended Complaint attaching an Appendix of images of all Squishmallows alleged to practice the trade dress, while indicating that, by exclusion, all other Squishmallows do not. (Dkt. 43.) Appendix A to this Third Amended Complaint had approximately *2,350* unique Squishmallows characters. Zuru has compiled examples of Squishmallows that Plaintiffs say do *not* embody the trade dress. (Zuru Appx. 4).

**B.    PLAINTIFFS' STATEMENT OF FACTS**

**1.    Plaintiffs' Squishmallows Have Achieved Historic Success**

a.    The Trade Dress Was Designed to be Unique and Source-Identifying

Squishmallows' designers deliberately chose a nontraditional visual style that diverged from the realistic, full-figure animal plush toys commonly available in the United States. (JAF 90.) Plush toys can be designed in numerous ways, and there is no single "necessary" look for a soft toy. (JAF 91.) Traditional stuffed animals often follow a classic "teddy-bear" style, with furry fabric and separate arms and legs. (JAF 92.)

In contrast to the typical design, Squishmallows' designers created an abstract, egg/bell/oval-shaped form coupled with simplified "Kawaii"-inspired facial features, including round eyes and stylized markings, to make a unique aesthetic. (JAF 178.) Designer Sunny Cho



. (JAF 179.)

(JAF 180.)                                                                              .

(JAF 182.) For example, an earlier oval-shaped prototype "actually stood up fine," and using a Squishmallows as a pillow was "not part of the design"—the signature egg-like

9

4901-0657-9287.1

silhouette was adopted for visual charm rather than utilitarian need. (JAF 183-184.)

Cho's purposeful design choices were made to ensure that the overall visual impression of Squishmallows would be immediately recognizable and different from others. (JAF 135, 185.) Though the Squishmallows aesthetic emphasizes simplicity, certain elements of the trade dress (such as embroidered eyes) can *increase* production costs compared to alternatives. (JAF 186.) Put simply, the goal was to create a "unique consistent look," so consumers knew it was a Squishmallow when they looked at it. (JAF 187.)

Plaintiffs have released a line of Squishmallows (JAF 189) bearing a common trade dress that is a combination of the following elements: **Element 1:** "[s]ubstantially egg/bell/oval shaped plush toys depicting various similarly shaped abstract/fanciful renditions of animals/characters"; **Element 2:** "simplified Kawaii faces with repeating and complementary rounded/oval shaped graphics depicting features on the characters themselves (such as eyes, snouts and bellies) and which conform to and support the overall egg/bell shape of the toys"; **Element 3:** "embroidered facial features, such as eyes, nostrils, and/or mouths"; **Element 4:** "distinctive contrasting and non-monochrome coloring"; and **Element 5:** "short-pile velvety velour-like textured exterior with a light and silky memory foam-like stuffing providing an extremely soft and squeezable marshmallow feel." (JAF 94 (the "Trade Dress").) Multiple surveys show that consumers viewing this trade dress associate it with one source: Squishmallows. (JAF 105.)

                    b.      Squishmallows Have Substantial Recognition in the Market

Launched in 2017, Squishmallows have become a global phenomenon. (JAF 95.) Consumers have purchased *hundreds of millions* of Squishmallows since the product's debut. (JAF 97.) By 2023, Squishmallows' annual sales exceeded half a billion dollars. (JAF 96, 98.) Squishmallows are sold in thousands of stores across the U.S., including major chains such as Walmart, Target, Costco, and Walgreens, and online at Amazon. (JAF 99, 109-10.) Squishmallows have earned numerous industry awards, including: a 2017 National Parenting Product Award; "Plush Toy of the Year" in 2020; multiple Toy of the Year honors from the Toy Association, including overall Toy of the Year in both 2022 and

10

4901-0657-9287.1

2023; License of the Year; and the consumer-voted People's Choice Award. (JAF 100.)

Squishmallows' cultural impact is further demonstrated by widespread media coverage: the brand has been featured in over 300 articles, including profiles in *The Washington Post* (which dubbed Squishmallows "the hottest toy on the market") and *The New York Times* ("Squishmallows Are Taking Over"). (JAF 101-02.) High-profile fans like Kim Kardashian and Lady Gaga have identified themselves as avid Squishmallows fans and collectors on social media. (JAF 103.) Squishmallows also achieved massive reach on social media—Squishmallows content has amassed over 11 billion video views on TikTok and more than a million posts on Instagram. (JAF 104.) These efforts have been bolstered by $9.7 million on direct advertising and promotions in the U.S. (JAF 111.)

### 2. Zuru Copied the "Exact Likeness" of the Trade Dress in its Snackles

#### a. Zuru Initially Sold Different-Looking Plush Products

Before Snackles, Zuru sold a line of plush toys called Coco Squishies in an initial attempt to participate in the plush trend without directly usurping Squishmallows' distinctive look. (JAF 112-13.) Coco Squishies bore some resemblance to Squishmallows' rounded aesthetic, but (unlike Snackles) did *not* replicate the Trade Dress, as it had a differing facial appearance (specifically the design choice for the eyes) (JAF 114):



  

Coco Squishies did not gain traction, and Zuru abandoned expansion. (JAF 115-17.)

#### b. Zuru Copies the Trade Dress to Make Snackles

Zuru has a documented history of infringing competitors' intellectual property. *See LEGO A/S v. Zuru, Inc.*, 2019 WL 13158030 (D. Conn. Nov. 20, 2019) (holding Zuru in contempt). On the heels of the failure of Coco Squishies, in 2023, Zuru made a deliberate decision to target Squishmallows by launching its Snackles plush line. (JAF 118-28, 130-

11

4901-0657-9287.1

34.) ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (JAF 121, 132.)

Zuru's development team then designed the Snackles to include the same essential visual and tactile elements as Squishmallows—rounded silhouettes, soft textures, embroidered kawaii faces, and colorful, themed characters. (JAF 126, 138.) ███████████ ████████████████████████████████████████████ (JAF 123.) A█████████████████████████ ████████████████████████████. (JAF 124.) ██████████████████████████████████████ ██████████████████████████████████████ (JAF 125.) ████████████████████████████ ████████████████████████████. (JAF 127-128.) ██████████████████████████████████ ████████████████████████████████████████████████████████████████████████████████

Zuru also copied Squishmallows' marketing, pricing, and sales strategies to drive consumer confusion. (JAF 148-56, 160.) ██████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████████████ ████████████████████████ (JAF 156.) Snackles and Squishmallows are also sold through many of the same retail stores and online channels, including Costco, Walmart, Target, and Amazon. (JAF 157.) In retail stores, ████████████████████████████████████████ ████████████████████████████████████████. (JAF 158-59.)

### 3.    Zuru's Copying Has Resulted in Substantial Consumer Confusion

Zuru accomplished what it set out to do: cause consumers to confuse Snackles with Squishmallows. (JAF 161-77.) One reviewer, believing she was buying a Squishmallow, exclaimed: "My grandkids love Squishmallows. My grandson is going to be so surprised when he sees this devil with the hot sauce." (JAF 163.) Another customer reported spotting

12

4901-0657-9287.1

Snackles and "literally had to check the tag to figure out whether they were [Squishmallows]" when she found Snackles "on a shelf right next to the squishs." (JAF 164.) A Squishmallows collector similarly observed that Zuru was "100% trying to trick ppl" with Snackles by copying the Squishmallows look and feel. (JAF 165.) Survey evidence confirms this: a likelihood-of-confusion survey found 27.4% of respondents confused Snackles' *Dragon* with a Squishmallow, and 19.2% confused a Snackles *Cow* with a Squishmallow (JAF 167) – well above the 15% threshold indicating a "high possibility of confusion." *Exxon Corp. v. Tex. Motor Exchange*, 628 F.2d 500, 507 (5th Cir. 1980); *James Burrough v. Sign of Beefeater*, 540 F.2d 266, 279 (7th Cir. 1976) (same).

The striking similarity between Snackles and Squishmallows was also recognized by retailers. (JAF 168.) A ███t buyer felt Snackles were "resembling Squishmallows." (JAF 169.) A █████ toy buyer informed Plaintiffs that █████ was buying fewer Squishmallows because it had started carrying Snackles, noting the similarities between the two products. (JAF 170.) Snackles directly displaced Squishmallows in retail space at █████, which translated into lost sales and diminished market share. (JAF 171-72.) When █████ stocked both brands side-by-side, Squishmallows sales slowed so significantly that ████████████████████████████████████████████████████████████ ████████████. (JAF 173.) ████████████████████████████████ ████████████████████████████████████████████████████████████ (JAF 174.)

### III.   ZURU'S ARGUMENTS ON TRADE DRESS CLAIMS

#### A.   Zuru Argument # 1: The Alleged Trade Dress Is Invalid Because Plaintiffs Impermissibly Claim Rights In An Abstract Style

"The Court's first inquiry is whether Plaintiffs have sufficiently alleged they have protectable trade dress. The Court must tackle this issue before it determines whether the trade dress is non-functional and distinctive." *Crafty Prods., Inc. v. Michaels Cos., Inc.*, 424 F. Supp. 3d 983, 991 (S.D. Cal. 2019); *see also E & J Gallo v. Proximo Spirits, Inc.*, 2012 WL 947187, at *8 (E.D. Cal. Mar. 20, 2012) ("plaintiffs bore the burden of defining the trade dress that was allegedly infringed").

13

Plaintiffs' trade dress claim fails because Plaintiffs claim rights in an unprotectable general style concept rather than any discrete embodiment of a toy, thereby failing to meet their legal burden to define a legally cognizable trade dress. *See Treat, Inc. v. Dessert Beauty*, 2006 U.S. Dist. LEXIS 74476, at *30 (D. Or. May 5, 2006) (collecting law for requirement that plaintiff define a specific embodiment of trade dress). For example, in granting summary judgment to a defendant, *EZ-Pedo, Inc. v. Mayclin Dental Studio, Inc.*, ruled that a proposed trade dress was invalid because it was too vaguely defined:

> Courts routinely refuse to advance such vaguely defined claims because without … a precise expression of the character and scope of the claimed trade dress…courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market. [] Courts will also be unable to shape narrowly-tailored relief if they do not know what distinctive combination of ingredients deserves protection.

284 F. Supp. 3d 1065, 1073-74 (E.D. Cal. 2018) (cleaned up; citations omitted).

Although Judge Scarsi previously found the Complaint "sufficient to survive a Rule 12(b)(6) motion," his ruling was made only under Rule 8, and in an evidentiary vacuum. (Dkt. 41, p.7.) Judge Scarsi never ruled on Plaintiffs' Appendix A of 2,350 Squishmallows, which was filed later. Summary judgment is now proper because discovery has shown that there is no consistent configuration across the thousands of Squishmallows in Appendix A, and the features that Plaintiffs allege to be aesthetic and distinctive are in fact functional and commonplace in a market that has long been flooded with round Kawaii plush toys.

### 1.    *Applicable Law:* Trade Dress Rights Cannot Apply To An Abstract Design Concept

Courts are skeptical of claimed trade dress rights in product configurations because overbroad rights could exclude fair market competition in perpetuity. *See Wal-Mart Stores v. Samara Bros.,* 529 U.S. 205, 213-14 (2000) (heightened scrutiny of validity of trade dress in product configurations); *Apple Inc. v. Samsung Elecs. Co.*, 786 F.3d 983, 1005 (Fed. Cir. 2015) (concerns over perpetual monopoly). It is blackletter law that trade dress cannot be wielded to monopolize generalized design concepts. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 32 (2d Cir. 1995) ("just as copyright law does not

14

4901-0657-9287.1

protect ideas but only their concrete expression, neither does trade dress law protect an idea, a concept, or a generalized type of appearance."); *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990) (rejecting trade dress protection "not for a precise expression of a decorative style, but for basic elements of a style that is part of the public domain").

To protect against a plaintiff claiming rights in an abstraction, the plaintiff bears the burden to prove that the claimed trade dress is definable both in pictures and in writing. For example, in *Treat, Inc. v. Dessert Beauty*, 2006 U.S. Dist. LEXIS 74476 (D. Or. May 5, 2006) the court ruled on summary judgment that the plaintiff's purported trade dress in a line of products was invalid, quoting Prof. McCarthy's treatise for the proposition that only after first defining a specific set of features "can the court and the parties coherently define exactly what the trade dress consists of and determine whether the trade dress is valid and if what the accused is doing is an infringement." *Id.* at *30 (quoting MCCARTHY at §8.3); s*ee also Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 U.S. Dist. LEXIS 156675, at *7-8 (C.D. Cal. Nov. 5, 2014) (same). Additionally, a "plaintiff should define its trade dress with objective identifiers instead of subjective descriptors." *Cardinal Motors, Inc. v. HH Sports Prot. USA, Inc.*, 2021 WL 1758881, at *3 (S.D.N.Y. May 4, 2021); *see also Int'l Leisure Prods. v. Funboy LLC*, 747 F. App'x 23, 25 (2d Cir. 2018) ("several of ILP's asserted trade dress elements contain subjective descriptors like a 'pleasing appearance' or an 'aesthetic proportion.' We have refused protection where, as here, a claimed trade dress lacked sufficiently objective identifiers.").

As Prof. McCarthy further explains, "[w]hen it is claimed that the trade dress is inherent in an entire series or line of products, the proponent faces the 'particularly difficult challenge' of proving the validity of a broadly defined trade dress which is common to all items in the series or line." MCCARTHY §8:5.50 . As articulated in *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2d Cir. 1997):

> a trade dress plaintiff seeking to protect a series or line of products faces the particularly difficult challenge of showing that the appearance of its several products is sufficiently distinct and unique to merit protection as a recognizable trade dress. [] Furthermore, a claim of trade dress covering an

15

array of items is likely to be broader than one for an individual product's design. Accordingly, when protection is sought for an entire line of products, our concern for protecting competition is acute.

*Id.* at 380 (emphasis added); *see also Nat'l Lighting Co. v. Bridge Metal Indus.*, 601 F. Supp. 2d 556, 561 (S.D.N.Y. 2009) ("Judicial reluctance to extend trade dress protection to entire product lines is also motivated by this fear of enabling monopolistic behavior.").

Courts thus recognize that when trade dress is claimed in a line of products, those products must all have a "consistent overall look" because of "the broad reach that protection of trade dress for a series or line of products would embrace." *Rose Art Indus. v. Swanson*, 235 F.3d 165, 173 (3d Cir. 2000). Although the Ninth Circuit has not yet specifically addressed the consistent look test in as many words, district courts in this Circuit have effectively adopted it. *See, e.g.*, *Crafty Prods. v. Michaels Cos.*, 389 F. Supp. 3d 876, 882 (S.D. Cal. 2019) ("To grant such far-reaching, undefined trade dress protection [across a product line not having a consistent look] would unfairly allow inventors to claim any broad design and would leave no room for competition."); *Interactive Health LLC v. King Kong United States, Inc.*, 2008 WL 11337393, at *2 (C.D. Cal. Mar. 6, 2008) (requiring consistent appearance across lineup); *Apple Inc. v. Samsung Elecs. Co.*, 768 F. Supp. 2d 1040, 1048 (N.D. Cal. 2011) ("Although the Ninth Circuit does not appear to have addressed the issue, some circuits have held that where a plaintiff seeks trade dress protection in a line of products, the plaintiff must establish that the line of products has a consistent overall look."); *Paramount Farms Int'l LLC v. Keenan Farms Inc.*, 2012 WL 5974169, at *2-3 (C.D. Cal. Nov. 28, 2012) (distinguishing trade dress in single product from line of products, citing *Rose Art*). This Court may comfortably apply that standard.

Here, the Court should be all the more skeptical of the validity of Plaintiffs' asserted trade dress based on its sheer scope: an unregistered trade dress that spans across *2,350* different products, many of which look nothing like each other. Zuru is not aware of any case where a court recognized as valid an omnibus unregistered trade dress for a single product line consisting of thousands of different products, such as what Plaintiffs claim here. This unprecedented breadth alone speaks to the invalidity of the trade dress.

16

4901-0657-9287.1

## 2.    The Alleged Trade Dress Is Invalid Because It Is A Vague Abstract Style

There can be no genuine dispute that the Squishmallows shown in Appendix A vary wildly in appearance and lack any consistent physical structure. (JAF 30-33.) Some Squishmallows are animals; some are not. Some are egg-shaped; some like M&Ms. Some have eyes on top of their heads; some do not. Some have big hair or manes; some do not. Some have fuzzy fur across their bodies; some do not. Some have a flattened side profile; others have bulbous tails. Some have round eyes; some have slits. Some have mouths; some do not. Some have horns or wings; some do not. Some have "bellies"; some do not. Some have large ears; some do not. Some wear clothes; some do not. Some have noses; some do not. The colors and embroidery patterns likewise vary to an extreme degree, lacking any coherent theme. And so on. This wide variation in configurations is apparent from Plaintiffs' Appendix A, and further exemplified visually in Zuru's Appx. 3. Because there is no consistent physical structure across Plaintiffs' lineup, there cannot be any single trade dress in the lineup. *See Crafty Prods*., 389 F. Supp. 3d at 882-83 (collecting cases).

Plaintiffs' purported written trade dress definition confirms there is no coherent dress claim here, and Plaintiffs have failed to meet their burden to prove a discrete and definable trade dress for this reason as well. <u>First</u>, Plaintiffs' descriptors like "abstract/fanciful" and "distinctive contrasting…coloring" are inherently abstract, meaningless, and subjective, and thus render the trade dress definition invalid. *Cardinal Motors,* 2021 WL 1758881, at *3; *Funboy*, 747 F. App'x at 25. The words "simplified Kawaii" literally means "simplified cute," and adds nothing to clarify what the trade dress is.[4] The Kawaii faces "conforming to and support the overall egg/bell shape of the toys" also is meaningless and vague. And describing a product line as consisting of

---

[4]    The Court may take judicial notice of dictionary definitions. https://dictionary.cambridge.org/us/dictionary/english/kawaii (defining "Kawaii" as "the Japanese culture or style of cuteness, the quality of being pleasant and attractive, often involving simple drawings of small people, animals, and things"). *Fierce, Inc. v. Franklin Covey Co.*, 2019 U.S. Dist. LEXIS 57678, at *8 (W.D. Wash. Apr. 2, 2019).

17

4901-0657-9287.1

"abstract/fanciful renditions of animals/characters," having "distinctive contrasting and non-monochrome coloring," or feeling "extremely soft" are hallmarks of rank subjectivity.

Second, the definition is facially inaccurate because, it does not apply to all products within the claimed product line. For example, (a) a significant percentage of Squishmallows are indeed monochrome (JAF 32), (b) many Squishmallows, rather than being "egg shaped," are shaped like circular M&Ms or have irregular three-dimensional animal shapes (JAF 31), and (c) the claimed Squishmallows have inconsistent hair pile thickness and body coverage, including those with higher pile "fur" and big hair (JAF 34). Zuru's toy design expert Deborah Ryan opined that she cannot understand how to build any particular toy from Plaintiffs' trade dress definition. (Ryan Report, JE 1, § VI.) As demonstrated visually in an example she gave, Plaintiffs' meaningless trade dress articulation is analogous to claiming trade dress in all compact cars with round headlights, sweeping in Volkswagen Beetles and Mini Coopers alike, despite distinctly different configurations. (*Id.*, ¶ 92; shown at Zuru Appx. 5.) Just as the written definition fails to aid Plaintiffs' product pictures in their Appendix A, neither do those 2,350 pictures rescue the written definition given that "courts cannot be expected to distill from a set of images those elements that are common to a line of products and both distinctive and non-functional." *Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 747 (E.D. Mich. 2014) (dismissing claim to trade dress in a product lineup).

Ultimately, Squishmallows are only similar to each other in the way that all Disney princesses or superheroes wearing tights might be considered similar to each other: they share a certain abstract style, but no more than that. A style concept cannot be trade dress. *Jeffrey Milstein,* 58 F.3d at 32; *Indonesian Imports, Inc. v. B. H. Smith*, 1999 WL 183629, at *6 (N.D. Cal. Mar. 30, 1999) (product line of bags "reflect a similar style and have some unifying features. A general style or theme, however, is unprotectable.").

Plaintiffs' fundamentally vague trade dress definition makes it impossible to understand where the boundary of infringement lies, and thus impossible for the Court to enter a coherent injunction in compliance with the requirements of Fed. R. Civ. P. 65,

18

4901-0657-9287.1

which would impermissibly allow Plaintiffs to essentially take whatever subjective and arbitrary infringement position they desire to suit their needs of the moment. As shown below, that is precisely what Plaintiffs have done here.

### 3. The Alleged Trade Dress Is Invalid Because It Would Be Impossible To Register

As a matter of law, a plaintiff cannot claim unregistered trade dress rights in subject matter that would be impossible to register at the PTO. *Renna v. Cty. of Union*, 88 F. Supp. 3d 310, 320 (D.N.J. 2014) ("unregistrable marks, not actionable as registered marks under Section 32, are not actionable under Section 43, either"); *see also Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) ("the general principles qualifying a mark for registration under §2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a).").

This test for invalidity is again satisfied here. It would be impossible for Plaintiffs to obtain a registration from the PTO for the trade dress asserted in this case. As explained by Zuru's trademark law expert, attorney Raffi Zerounian (who stands unrebutted by any plaintiff expert), the PTO requires that applicants supply a specific drawing or image that puts the public on notice of a *single* specific design that is claimed. (Zerounian Report, JE 4, § III.B.2; 37 C.F.R. §2.52; Trademark Manual of Examining Procedure ("TMEP") §1202.02(c) – (c)(i).) This reflects the fact that trade dress must ultimately derive from a single real-world embodiment. If someone has multiple different products with different configurations, those would each be separate trade dresses requiring separate registrations, each with their own individualized proof of secondary meaning and non-functionality. (*Id.*) For products that are part of a varied line-up, a single common physical structure may be claimed in solid lines, with variable features shown in dashed lines. (JAF 35.) For example, a car company might claim a front grill that is the same across multiple cars, showing the grill in solid lines and the rest of the car in dashed lines. Here, it would be impossible for Plaintiffs to register their defined trade dress (JAF 36-37), which is why they have avoided seeking registration. Plaintiffs allege a single trade dress covering 2,350 different

19

Squishmallows: there simply is no single drawing that Plaintiffs could possibly submit that would cover every one of those characters because there is no consistent physical structure common to them. (*Id.*) This is not a mere technical problem: the PTO's drawing requirements reflect a prohibition on monopolization of generalized style concepts.

### 4. The Alleged Trade Dress Is Invalid Because Plaintiffs Cannot Show Infringement From Any Given Product Pairing

Plaintiffs' failure to meet their burden of adequately defining a protectable trade dress is further demonstrated by the inability to demonstrate infringement. If all 2,350 Squishmallows in Appendix A to the Third Amended Complaint truly embodied the same trade dress, then one should be able to line up *any* Squishmallow against *any* accused Snackle and perceive infringement. However, this theory crumbles upon comparing at random any of the 130,000+ different possible pairings of Squishmallows and Snackles, and seeing that they look nothing alike, as in this example. (More at Zuru Appx. 6.)



from ZURU APPX. 6

Plaintiffs sought to avoid this obvious problem by cherry-picking a small number of comparisons of certain Series 1 Snackles characters with supposedly corresponding Squishmallows characters, *i.e.*, Plaintiffs' dragon against Zuru's dragon, Plaintiffs' unicorn against Zuru's unicorn, etc. (JAF 38.) But Plaintiffs claim no unique trade dress rights in those specific *characters*: only in a general concept of a round Kawaii plush. Because Plaintiffs claim that all 2,350 Squishmallows embody a *single* asserted trade dress, they must show that *each* of the 50+ accused products infringes that same trade dress in *each* of the 2,350 Squishmallows. Plaintiffs cannot and did not do this.

### 5. The Alleged Trade Dress Is Invalid Because Plaintiffs' Own Witnesses Cannot Define It

Plaintiffs' own corporate witnesses and experts were unable to consistently define the asserted trade dress (JAF 41-45, 89), further showing that it is pitched at an improper level of generality and that it is trying to claim rights in an unprotectable style or theme.

20

4901-0657-9287.1

*Indonesian Imps., Inc. v. Old Navy, Inc.*, 1999 U.S. Dist. LEXIS 3975, at *16 (N.D. Cal. Mar. 29, 1999) ("plaintiff's inability to explain to a court exactly which aspects of its product design(s) merit protection may indicate that its claim is pitched at an improper level of generality, *i.e.*, the claimant seeks protection for an unprotectable style, theme or idea.") (citing *Landscape Forms*, 113 F.3d at 381); *Indonesian Imports, Inc.*, 1999 WL 183629, at *5 n.6  (company president's inconsistent description of trade dress "relevant in that they highlight the difficulty [plaintiff] has had in precisely defining its trade dress").

In combination with **Zuru Appendix 3 and 4**, **Zuru Appendix 7** compares designs that Plaintiffs' witnesses say embody the trade dress and those they say do not. Two conclusions emerge: (1) Plaintiffs' delineations are inconsistent; and (2) given the appearance of products that Plaintiff say do not embody the trade dress, it is impossible that Zuru's Snackles could be deemed to possess the trade dress. Take for example this non-party cat plush: Plaintiffs' toy expert Kurt Karussi testified this does *not* embody the trade dress (JAF 50), but if that is true, how could Snackles? Discovery has revealed that Squishmallows' own internal design team – including Jonathan Kelly himself – , *i.e.*, not like Snackles which have prominent limbs, and are holding large objects. (JAF 41-42.) Indeed, the Jazwares design team ███████████████████████████ ███████████████████████████████████. (JAF 43.) Plaintiffs' witnesses struggled with this dissonance, and their distinctions between which products have the trade dress and which do not make no sense. (Examples at Zuru Appx. 7.) In the case of Plaintiffs' expert, Mark Keegan, he could not articulate what "Kawaii" meant, and described other trade dress elements in a non-specific manner. (JAF 45.)

Perhaps most striking is that Plaintiffs' own survey expert, Dr. Rene Befurt, took the position that there are actually *multiple* trade dresses at issue in the case, instead of only one as Plaintiffs have alleged. (JAF 46.) Specifically, he criticized Zuru's survey expert, Dr. Ronald Goodstein, for supposedly selecting the "wrong" Squishmallow to test for

21

4901-0657-9287.1

secondary meaning. This is nonsensical. Dr. Goodstein tested one of the Squishmallows – a bunny – that Plaintiffs expressly said embodies the same trade dress as all the others. (JAF 47.) This demonstrates that Plaintiffs' own expert is confused by the alleged trade dress definition. And for good reason: in trying to capture 2,350 Squishmallows, Plaintiffs' definition is incoherent, abstract, and pitched to an impermissible general idea.

Plaintiffs have also been inconsistent regarding whether a product can embody the trade dress if it possesses some, but not all, of the five claimed trade dress elements. On one hand, Plaintiffs admitted – and their witnesses testified – that Plaintiffs make no claim of ownership to anything less than the combination of all five claimed elements. (JAF 29.) However, Plaintiffs then shifted positions in criticizing the controls used by Zuru's two survey experts, which were round plush, but with facial features changed significantly. It is generally accepted that a control product in a survey should be as close as possible to the alleged trade dress without actually embodying it. (JAF 48.) Here, Zuru's experts properly based their controls on products that Plaintiffs themselves had admitted do not embody the trade dress, for example because they lack Kawaii faces. It is inconsistent for Plaintiffs to now criticize that choice, effectively taking the position that a toy with less than all the trade dress elements nonetheless comprises the trade dress. (JAF 29, 49.)

**B.    Zuru Argument # 2: Plaintiffs' Alleged Trade Dress Is Invalid Because It Lacks Secondary Meaning And Is Functional**

Plaintiffs' alleged trade dress is invalid because it is pitched at such a level of generality that it impermissibly claims generic functional features that are ineligible for trade dress protection. *See, e.g., Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co.*, 916 F.2d 76, 81 (2d Cir. 1990) (finding that the plaintiff sought trade dress protection "not for a precise expression of a decorative style, but for basic elements of a style that is part of the public domain").

**1.    *Applicable Law:* Plaintiffs' Burden To Prove Secondary Meaning And Non-Functionality For Claimed Unregistered Trade Dress**

In a case like this one where the plaintiff claims unregistered rights in a product

22

4901-0657-9287.1

configuration trade dress, the plaintiff has the burden to prove that the claimed trade dress has secondary meaning, *i.e.*, that it comprises a distinctive design aesthetic that, unaided by any labeling, would in itself convey a single brand source to relevant consumers. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 213 (2000). A party claiming unregistered trade dress rights in a product design must also separately prove that the design is legally non-functional, *i.e.*, that it is not dictated by useful utilitarian or stock design elements that no one company could fairly monopolize. *Blumenthal Distrib., Inc. v. Herman Miller, Inc.,* 963 F.3d 859, 865 (9th Cir. 2020). Secondary meaning and non-functionality are independent requirements: if the plaintiff fails to prove either, the claim fails. *Mosaic Brands, Inc. v. Ridge Wallet LLC*, 55 F.4th 1354, 1366 (Fed. Cir. 2022).

With respect to functionality, the Court first assesses whether the design has utilitarian functionality because a product whose structure is dictated by functional considerations is not protectable as trade dress. A product feature has utilitarian functionality if it is "essential to the use or purpose of the article or if it affects the cost or quality of the article." *Blumenthal,* 963 F.3d at 865 (citations omitted). This is assessed under the *Disc Golf* factors: "(1) whether the design yields a utilitarian advantage, (2) whether alternative designs are available, (3) whether advertising touts the utilitarian advantages of the design, and (4) whether the particular design results from a comparatively simple or inexpensive method of manufacture." *Id.* If a design is deemed to not have utilitarian functionality, the Court then proceeds to a second step of inquiring "whether protection of the feature as a trademark would impose a significant non-reputation-related competitive disadvantage." *Blumenthal,* 963 F.3d at 865. This concept is called "aesthetic functionality," and essentially looks to whether a product feature has become a "stock" design that consumers do not associate with a particular brand, such as a heart-shaped box of chocolates. *Id.*; *Goscicki v. Custom Brass & Copper Specialties, Inc.*, 229 F. Supp. 2d 743, 752 (E.D. Mich. 2002) (heart-shaped box).

**2.    The Alleged Trade Dress' Generalized Design Concepts Are Not**

23

4901-0657-9287.1

**Protectable**

Plaintiffs' trade dress claim fails because Plaintiffs have not met their burden to show secondary meaning and non-functionality. For all the reasons discussed in Zuru's Argument #1, *supra*, Plaintiffs have asserted their trade dress at such a high level of generality that it reduces to generic functional components. *See Shelbyco Inc. v. Western Trimming Corp.*, 1997 WL 377982, at *4 (D. Utah. May 12, 1997) (finding lack of secondary meaning in a product lineup where "the only consistent feature in [plaintiff's] trade dress is the display of commonplace, ordinary shapes in various colors"). As further explained in *Walker & Zanger, Inc. v. Paragon, Indus.*, 549 F. Supp. 2d 1168, 1176 (N.D. Cal. 2007), a plaintiff's claim of trade dress in a product lineup will fail if it is premised on "empty generalities" that amount to claiming a generic product design. *See also Sara Designs, Inc. v. A Classic Time Watch Co.,* 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017) (high-level descriptions of a product lineup fail to qualify as trade dress and cause the claim to fail for lack of secondary meaning). Likewise, functional elements of a product design are not protectable. *Blumenthal,* 963 F.3d at 865.

Here, there is no genuine issue of disputed fact as to the following points:

- *"Simplified Kawaii faces"*. Round Kawaii plush were popular and widely sold prior to Squishmallows, and today are ubiquitous in the U.S. market. (JAF 3.) "Kawaii" is itself a pre-existing commonplace style that cannot serve as a source identifier. (JAF 51.)

- *Egg/bell/oval-shape.* Key utilitarian functions of the alleged egg shape include that the wider base allows Squishmallows to generally stand upright, while also serving as rounded pillows. (JAF 52.) A key aesthetic function of the egg shape is that it is a stock design feature dating back to Russian Nesting Dolls that is universally used to convey a smaller "head" atop a larger "body." (JAF 53.) Plaintiffs have tried to argue that Zuru could have designed square-shaped toys instead, but these would not have had organic round shapes like animal heads and bodies. As with heart-shaped boxes of chocolate, no one

24

4901-0657-9287.1

company could monopolize such stock design concepts.

- *Embroidered facial features.* This is one of the most common and cost-effective ways to manufacture plush toys. (JAF 54.) Furthermore, using plastic or button eyes or noses increases costs, impairs the overall softness of the toy, and presents a choking hazard to young children. (JAF 55.)

- *"Distinctive contrasting" colors.* With respect to Squishmallows having multiple colors, this is just a generic aesthetically functional attribute that cannot be monopolized by any one company. (JAF 56.)

- *"Short-pile" fur.* This serves the utilitarian functions of reduced material costs relative to high pile fur, and also making the Kawaii facial features not be obscured. (JAF 57-58.)

- *"Extremely soft and squeezable."* Finally, soft texture and squeezability are purely utilitarian functional features inherent in a plush toy that cannot be protectable as trade dress. (JAF 59.)

In sum, at the level of generality that Plaintiffs have defined it, it is undisputed that all the purported trade dress elements are generic, incapable of acquiring secondary meaning, and are functional. Plaintiffs argue instead that it is the combination of all the five claimed elements – not any subset – that give rise to the trade dress. However, the Ninth Circuit has made clear that when the whole of trade dress is nothing more than assemblage of unprotectable elements combined in a predictable way, "it is semantic trickery to say that there is still some sort of separate 'overall appearance'" that is protectable. *Leatherman Tool Grp., Inc. v. Cooper Indus.*, 199 F.3d 1009, 1013 (9th Cir. 1999); *see also Jeffrey Milstein*, 58 F.3d at 32 ("the fact that a trade dress is composed exclusively of commonly used or functional elements might suggest that trade dress should be regarded as unprotectable or 'generic,' to avoid tying up a product or marketing idea").

As explained by Ms. Ryan, Zuru's toy design expert, there is no unexpected result or non-functional novelty resulting from combining the five claimed elements in the abstract. (Ryan Report, JE 1, § VII.B.) When boiled down to its essence, all that the

25

4901-0657-9287.1

combination of the claimed trade dress elements amounts to is a soft, roundish plush toy with multiple colors and an embroidered Kawaii (*i.e.*, cute) face, which broadly describes innumerable stuffed toy products, including ones that Plaintiffs have conceded are non-infringing (Zuru Appx. 4, 7). *See Landscape Forms,* 113 F.3d at 382.

Plaintiffs point to their high sales of Squishmallows as evidence of secondary meaning but this argument fails because Plaintiffs have not met their burden to prove that recognition of the claimed trade dress is the sales driver, as opposed to people looking for the name "Squishmallows" or simply wanting a pillowy plush toy. *See Duraco Products*, 40 F.3d at 1452 (3d Cir. 1994) (evidence of sales alone insufficient). Plaintiffs' survey expert, Dr. Rene Befurt, purported to run a secondary meaning survey, but in addition to being the subject of a forthcoming motion to strike, the survey only tested products having the same configuration as Cam the Cat (failing to demonstrate anything as to other configurations), and employed an improper control that was not even a stuffed animal. (JAF 60-61.) In any event, the genericness of the claimed trade dress trumps the findings of any such survey. *Walker*, 549 F. Supp. 2d at 1174 ("generic product designs are unprotectible even upon a showing of secondary meaning").

### 3. The Alleged Trade Dress Is Not From A Single Source Because Round Kawaii Plush Are Ubiquitous And ███████████

███████████████████

The ubiquity of round Kawaii plush toys (JAF 3) confirms that the asserted trade dress does not convey that the products are from a single source, and thus lack secondary meaning. This is confirmed by discovery: Exs. C and D to the Ryan and Lynn Reports (JE 1, 3) disclose examples of many similar non-party toys on the market, such as these shown here. Acknowledging that there is nothing distinctive about the look of their toys among this ocean of similar plush, Plaintiffs' key marketing campaign on Amazon instructs consumers that "*If it doesn't say Squishmallows^{TM} it is not an*



26

4901-0657-9287.1

*official product*" (JAF 62), conceding that it is the name that ultimately identifies the brand. That ad notably features the limbless silhouette of Cam the Cat as the backdrop, doubling down on a very specific Squishmallow body configuration that is much narrower than Plaintiffs' trade dress definition, and distinct from the body configuration of Snackles.

More than this, Plaintiffs ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

27

4901-0657-9287.1

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

## C.      Zuru Argument # 3: There Is No Evidence That All Snackles Infringe

As explained in Section III.A.4 above, to prevail on their unprecedented claim of ownership in a single trade dress cutting across 2,350 products, Plaintiffs had the burden to demonstrate that every Squishmallow in their Appendix A would be equally as confusingly similar to each and every of the 50+ Snackles. Put another way, Plaintiffs needed to demonstrate that even the least similar-looking pairing of a Squishmallow and a Snackle still would likely cause consumer confusion. Instead, the only analysis Plaintiffs present is as to a few cherry-picked pairings of what they contend are the most similar characters out of 130,000+ possible combinations that look nothing alike. (JAF 38; Zuru Appx. 6.) Plaintiffs' interrogatory responses merely list all the Snackles and contend that they all infringe without any particularized analysis. (JE 11 and 12, Rog 1.) Plaintiffs' Rule 30(b)(6) witness could not even say if he had seen all the Snackles before. (JAF 66.) While Plaintiffs conducted a purported likelihood of confusion survey, they only tested *two* Snackles, and did so by comparing them against the two corresponding Squishmallows that Plaintiffs believed were the most similar looking out of 2,350. (JAF 67.) Likewise, as shown in Section III.A.5 and Zuru Appx. 7, Plaintiffs' admissions demonstrate that Zuru's Snackles designs are even more different-looking than products that Plaintiffs say do not embody the trade dress. These admissions are dispositive. *See Karoun Dairies, Inc. v. Los Altos Food Prods.*, 107 F. App'x 785, 788 (9th Cir. 2004) (sufficiently dissimilar marks warrants summary judgment) (citing cases). Plaintiffs have not met their burden under *Sleekcraft*[5] to demonstrate infringement as to all 50+ Snackles.

---

[5] The Court looks to the *Sleekcraft* factors in assessing trademark infringement: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to

28

4901-0657-9287.1

*See Wasco Prods. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006); *Echlin v. PeaceHealth*, 887 F.3d 967, 977-78 (9th Cir. 2018).

**D.      Zuru Argument # 4: There Is No Evidence That Snackles Capsules Confuse Consumers**



Relatedly, Plaintiffs have failed to plead – much less prove – that the Snackles spherical capsule products infringe any alleged intellectual property rights. Many Snackles historically have been sold concealed within 5-inch spherical surprise capsules that say "ZURU SNACKLES" on the front with little pictures of Snackles on the side. (JAF 68-72, images in Zuru Appx. 2.)  Zuru's capsules are not referenced in any version of Plaintiffs' Complaints or interrogatory responses on infringement. (JAF 73.) All Plaintiffs offered was some conclusory *rebuttal* expert testimony (JAF 74) which is not sufficient given Plaintiffs' burden of proof.  These failures mean that the plaintiff should be barred from proceeding past summary judgment on a theory of infringement by Snackles capsules. *See Wasco*, 435 F.3d at 992 (9th Cir. 2006); *Echlin*, 887 F.3d at 977-78.

**IV.    PLAINTIFFS' ARGUMENTS ON TRADE DRESS CLAIMS**

**A.      There Are Triable Issues of Fact on Plaintiffs' Trade Dress Claims**

To survive summary judgment, Plaintiffs need only show triable disputes: "(1) that its claimed dress is <u>nonfunctional</u>; (2) that its claimed dress . . . has acquired <u>secondary meaning</u>; and (3) that [Snackles] creates a <u>likelihood of consumer confusion</u>." *Clicks Billiards*, 251 F.3d at 1258 (emphasis added). Each involves factual determinations reserved for the jury. *See id.* at 1265 (confusion "routinely submitted [to] jury"); *id.* at 1258 ("Functionality is a question of fact."); *P&P*, 46 F.4th at 961 (summary judgment on secondary meaning "generally disfavored"). Thus, in trade dress cases, the Ninth Circuit consistently reverses grants of summary judgment to the defendant. *Id.* (reversing summary

---

be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). As to factor 1, Zuru demonstrated in Section III that the claimed trade dress is not cognizable, and thus would have no strength as a trademark.

29

4901-0657-9287.1

judgment); *Cal. Scents v. Surco Prods.*, 28 F. App'x 659, 664 (9th Cir. 2002) (reversing summary judgment when plaintiff "provided sufficient evidence to raise a genuine issue of material fact for each of the three factors needed [for] a trade dress claim").

Plaintiffs' evidence establishes all three elements or, at the very least, creates genuine disputes of fact that must be resolved by a jury. And Zuru's attempts to distract the Court with misleading and irrelevant concerns about the trade dress description—which this Judge Scarsi already found to be "sufficient" (ECF 41)—are immaterial.

### 1.    There Are Disputes of Material Fact on Nonfunctionality

"Functionality is a question of fact." *Clicks Billiards*, 251 F.3d at 1258. To evaluate functionality, a factfinder must analyze "the trade dress as a whole" because "functional elements that are separately unprotectable can be protected together as part of a trade dress." *Id.* (cleaned up). Therefore, "it is critical [to] focus *not* on the individual elements, but rather on the overall visual impression that the combination and arrangement of those elements create." *Id.* at 1259. The Ninth Circuit's four functionality "factors," (*id.* at 1260), which Zuru does not address, each show that the Trade Dress is nonfunctional:

- **Utilitarian Advantage.** The Ninth Circuit first considers whether a product's "form follow[s] its utilitarian functions," such as with pocketknives and construction tools. *Blumenthal Distributing, Inc. v. Herman Miller, Inc.*, 963 F.3d 859, 867 (9th Cir. 2020) (cleaned up). Here, a jury could find that the *overall visual impression* of the *combined* elements of the Trade Dress—egg-shaped with nonproportional features; simplified Kawaii faces with embroidered features; distinctive coloring; and a textured exterior with memory foam stuffing creating a squeezable look and feel—do not serve a utilitarian purpose. *Id.*; *supra* II.A.1; UF 103 (overall impressions not functional); UF 178-89. *See Lisa Frank v. Impact Int'l.*, 799 F. Supp. 980, 987 (D. Ariz. 1992) ("pencil, a pen, or stickers" are "clearly functional," but "aesthetic elements and overall visual appearance" of toys were not). Plus, the Trade Dress is a result of "design," not functional, choices. (*supra* II.A.1). *Blumenthal*, 963 F.3d at 867 (cases finding utilitarian advantage involved "no evidence of any non-utilitarian design choices");

30

4901-0657-9287.1

*Clicks Billiards*, 251 F.3d at 1261 ("evidence of the arbitrariness" of "design decisions" creates jury question).

- **Alternative Designs.** Witnesses from both parties agree that there are numerous commercially-viable alternative designs, including many ways to make a plush toy that is "cute" to consumers (JAF 190-200). *Clicks Billiards*, 251 F.3d at 1260 ("availability of alternative designs" overcomes "summary judgment hurdle"). As evidenced by the many plush products (including Zuru's Coco Squishies) that do not infringe the Trade Dress (JAF 24, 91), Plaintiffs' exclusive use of the Trade Dress clearly would not "put competitors at a significant non-reputation-related disadvantage." *Au-Tomotive Gold v. Volkswagen of Am.*, 457 F.3d 1062, 1073 (9th Cir. 2006) ("aesthetic functionality has been limited to product features that serve an aesthetic purpose wholly independent of any source-identifying function," such as "coloring edges of cookbook pages" that "avoid[] color 'bleeding'"); *Lisa Frank*, 2017 WL 6000477, at *5 (denying summary judgment where products that competed with plaintiff's toy line shared some design elements but "none of them combine[d] *all* of the same elements" (emphasis added)).

- **Advertising.** Plaintiffs' advertising of Squishmallows does not emphasize the Trade Dress, but rather other aspects of Squishmallows, such as squishiness, collectability, and characters (JAF 201.) *See Blumenthal*, 2016 WL 6948339, at *12 (to show functionality, "advertising must tout the utilitarian advantages of the feature claimed as trade dress, not some other aspect" (quoting McCarthy on Trademarks and Unfair Competition § 7:74)).

- **Cost of Manufacture.** Some of the design choices of the Trade Dress are *more* costly than alternative design choices (JAF 202). *Blumenthal*, 963 F.3d at 868 (factor supports nonfunctionality where "some of the manufacturing techniques" were more costly).

This extensive evidence of non-functionality easily clears the Ninth Circuit's summary judgment threshold, which requires only *some* evidence of non-functionality to create a jury question. *See, e.g.*, *Clicks Billiards*, 251 F.3d at 1262 (where there are *some* "arbitrary elements [in] the trade dress and some evidence that "design decisions were

31

made for aesthetic reasons," there is "evidence sufficient to raise an issue of fact" on functionality); *Moldex-Metric*, 891 F.3d at 886-87 ("summary judgment on functionality was inappropriate" due to evidence of "alternative[s]"); *Sw. MFG. LLC v. Wilmar LLC*, 2024 WL 3718371, at *10 (C.D. Cal. July 16, 2024) ("*some* evidence" of "non-utilitarian design choices" is sufficient to defeat summary judgment).

Zuru misreads and misapplies *Leatherman* to argue that the Trade Dress is functional because each individual element is allegedly functional. The Ninth Circuit in *Leatherman* held that a *pocket tool* was functional because it was a combination of literally functional tools, including a knife and pliers, meaning that if protection was granted, no competitor could offer the same functionality in one product. 199 F.3d at 1009. The Ninth Circuit *specifically differentiated* cases, like this one, involving a non-functional *appearance*, noting no evidence of any "ornamental" feature. *Id.* at 1013; *Blumenthal*, 963 F.3d at 867 (*Leatherman* involved "no evidence" of "non-utilitarian design choices").

This case clearly differs from *Leatherman* because the simplified Kawaii face, for example, is in no way "functional" like the pliers in *Leatherman*. Zuru's argument that Plaintiffs are somehow seeking to obtain exclusivity over a category of "soft, roundish plush" toys is belied by the fact that Plaintiffs have conceded that numerous such plush toys (including Coco Squishies sold by Zuru) do *not* infringe the Trade Dress (JAF 24, 91.) And Zuru's effort to show that *individual* elements of the Trade Dress *could be* considered functional is insufficient to obtain summary judgment because it has the burden to show that the "overall visual impression that the combination and arrangement of those elements create" is functional. *Clicks Billiards*, 251 F.3d at 1259. Nor is Zuru's argument that each element is allegedly a "stock" design element relevant because "stock" elements—such as the tables, lighting, and signs in *Clicks Billiards*—can be protectable together if "the overall look and feel" is not functional. *Id.* at 1261-62. At bottom, these functionality arguments merely create disputes that necessarily must go to the jury. *Id.* ("issue of fact" for trial).

### 2.    There Are Disputes of Material Fact on Secondary Meaning

Secondary meaning "is a question of fact." *Id.* Given "the intensely factual nature"

32

4901-0657-9287.1

of the inquiry, "summary judgment is generally disfavored." *P&P*, 46 F.4th at 961.

Here, copying, confusion, and survey evidence all create fact disputes sufficient to defeat summary judgment. There is significant evidence of Zuru intentionally copying *both* the Trade Dress *and* Squishmallows marketing, *supra* II.B.2.b, which the Ninth Circuit treats as sufficient to create a fact issue on secondary meaning. *Clicks Billiards*, 251 F.3d at 1264 ("evidence of copying" should have precluded summary judgment, notwithstanding defendant's contested explanations); *P&P*, 46 F.4th at 963 (reversing summary judgment because "intentional copying of [] trade dress *and* marketing strongly suggests that secondary meaning exists"). Likewise, there is significant evidence of likelihood of confusion (*infra* III.A.3), which establishes "secondary meaning" because "they are related determinations" involving similar evidence. *P&P*, 46 F.4th at 962 (cleaned up). Finally, consumer surveys establish that consumers associate products bearing the Trade Dress with one source (JAF 105-08), which again creates a "trial issue of fact." *P&P*, 46 F.4th at 964.

Other factors identified by the Ninth Circuit show the depth of the factual disputes as to secondary meaning. *Id.* at 961 (listing factors). Squishmallows have achieved billions in sales, awards for "Toy of the Year," and a multi-year run as the top-selling toy (*supra* II.A.2). *adidas Am., Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018) ("top selling shoe" was indicia of secondary meaning); *Jason Scott Collection v. Trendily Furniture*, 68 F.4th 1203, 1216 (9th Cir. 2023) (same for "awards"). Squishmallows have an "established place in the market," *P&P*, 46 F.4th at 961, and in nationwide retailers, *Jason Scott*, 68 F.4th at 1216; *see supra* II.A.2. Plaintiffs have also spent ████ in advertising. (JAF 11.) *adidas*, 890 F.3d at 754 ("considerable capital and human resources to promote" supports secondary meaning); *Jason Scott*, 68 F.4th at 1216 (same).

Squishmallows are also very recognizable among consumers, with unsolicited coverage across both legacy and social media (*supra* II.A.2). *adidas*, 890 F.3d at 754 ("unsolicited media coverage" is "indicative of secondary meaning"). When Zuru released Snackles, consumers commented in droves on Zuru's copying of Squishmallows, including

4901-0657-9287.1

that Zuru is "100% trying to trick" purchasers and others who "thought [Snackles] were [Squishmallows] at a glance" (JAF 165). *adidas*, 890 F.3d at 754 ("consumer hype and recognition of the trade dress" supports secondary meaning). At their depositions, Zuru employees tried to excuse away references in Zuru documents about copying and targeting "Squishmallows" by claiming that they sometimes use the term "Squishmallows" to refer generically to plush products (JAF 231). If true, this would merely show "the tremendous success" of Squishmallows, which "only strengthens" the claimed Trade Dress. *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1208 (9th Cir. 2000).

In sum, Plaintiffs have marshalled considerable evidence on multiple of the Ninth Circuit's secondary meaning factors, which is more than enough to defeat summary judgment. *See, e.g.*, *P&P*, 46 F.4th at 964 (reversing summary judgment based *just* on evidence of "intentional copying and an admissible consumer survey"); *Clicks Billiards*, 251 F.3d at 1264 (reversing summary judgment based *only* on "a consumer survey and testimony from various witnesses"). Zuru resists this obvious conclusion only by mischaracterizing the record and the law. To start, the Trade Dress is *not* "round kawaii plush" but instead a combination of *five different factors* that together create an overall visual impression that is protectable (*supra* II.A.1)—Zuru's failure to engage with the actual Trade Dress is enough to reject this argument. *Lisa Frank*, 2017 WL 6000477, at *5 ("trade dress is *not* rendered 'generic' simply because it includes certain commonly used elements such as bright colors or animal characters"). Zuru also has not identified any *undisputed* facts showing a plush product released prior to Squishmallows that renders it generic. *Mercado Latino, Inc. v. Indio Prods., Inc.*, 2017 WL 1356315 (C.D. Cal. Apr. 11, 2017) ("Questions of genericness [] are questions of fact."). Finally, Zuru's argument is irrelevant, because a product that looks like others on the market can achieve protection *if it acquires secondary meaning*, as here. *P&P*, 46 F.4th at 963 (product could have trade dress protection even though it is "essentially [an] oversized knock-off[] of Connect 4" if it acquired secondary meaning); *Wal-Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 212 (2000) (even "colors" can obtain protection "upon a showing of secondary meaning").

34

4901-0657-9287.1

Zuru cannot rewrite the asserted elements through crafty linguistics. For example, "kawaii" may literally mean "cute" in Japanese, but experts from both sides agree that it carries a far more specific meaning in the toy industry, (JAF 178, 194), just as "samurai" literally means "one who serves," but obviously communicates much more than that. The Trade Dress's use of terms with concrete meanings—such as "embroidered" and "short-pile"—also distinguishes the cases on which Zuru relies, which concerned descriptions devoid of *any* objective identifiers. *See Int'l Leisure*, 747 F. App'x at 25 ("pleasing appearance" lacked "objective identifiers"); *Cardinal Motors*, 2021 WL 1758881, at *5 (did not identify "which [] features are distinctive or offer any explanation").

*Second*, Zuru's references to Ty are a distraction. For one, the Ty products, like Zuru's Coco Squishies, do *not* have simplified Kawaii eyes and do not practice the Trade Dress. (JAF 226-29.) *Lisa Frank*, 2017 WL 6000477, at *5 ("[E]ven though isolated similarities [with competitors] exist, none of them combines all of the same elements as Plaintiff's trade dress to create a comparable look and feel."). Indeed, ▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (JAF  226.) ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ McCarthy on Trademarks and Unfair Competition § 18:79 (5th ed.) ("A consent agreement does not require quality control). ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Morgan Creek Prods. v. Capital Cities/ABC, Inc.*, 1991 WL 352619, at *3 (C.D. Cal. Oct. 28, 1991) ("Courts have upheld licensing agreements where the licensor is familiar with and relies upon the licensee's own efforts to control quality." (citing cases)). Still less material is Zuru's reliance on settlements that resulted when Plaintiffs previously enforced their Trade Dress. ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (JAF 11-13, 226.)

33

4901-0657-9287.1

**3.      There Are Disputes of Material Fact on Likelihood of Confusion**

To demonstrate likelihood of confusion, Plaintiffs need only show that "a reasonably prudent consumer would be confused about the source of the goods bearing the marks." *adidas*, 890 F.3d at 755. Confusion "is so inherently factual" that it is "routinely submitted for jury determination as a question of fact." *Clicks Billiards*, 251 F.3d at 1265 (cleaned up). Here, evidence shows that *each* of the likelihood of confusion factors favors finding confusion, *Jason Scott*, 68 F.4th at 1218 (9th Cir. 2023) (listing *Sleekcraft* factors):

- **Strength of Mark.** Squishmallows have ▇▇▇▇▇▇▇ in sales, have won many awards, have a huge following, and many consumers recognize the Squishmallows' look in Snackles (*supra* §§ II.A). *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (substantial sales, advertising, and recognition bolster strength of mark);

- **Proximity of Goods.** Both parties' products are plush toys sold at the same retailers (JAF 157). *Jason Scott*, 68 F.4th at 1219 (furniture products are "similar goods");

- **Similarity of Marks.** Consumers and retailers commented that Snackles look like Squishmallows (*supra* II.C). *Jason Scott*, 68 F.4th at 1218-19 (retailers finding similarity makes it likely a consumer will too); *adidas*, 890 F.3d at 755 ("[m]inor differences," such as "use of [a] logo," do not "negate similarity"). "Appendages" or a "snack" are sufficient differences. (JAF 136-43.) *Pom Wonderful LLC v. Hubbard*, 775 F.3d at 1128 (9th Cir. 2014) ("similarities weigh more heavily than differences");

- **Actual Confusion.** Consumer comments and a confusion survey show actual confusion (*supra* II.C). *Clicks Billiards*, 251 F.3d at 1265 (reversing summary judgment based on consumer comments and survey). Zuru's criticisms of this evidence are factually disputed and legally insufficient. *See Cal. Scents*, 28 F. App'x at 663 (even "some but not overwhelming evidence of confusion" favors plaintiff "because evidence of actual confusion is often difficult to obtain"); *GoTo.com*, 202 F.3d at 1208 ("even if [plaintiff's survey] was pure fantasy . . . it would by no means refute a likelihood of confusion");

- **Marketing Channels.** Both parties use "[c]onvergent marketing channels," *Sleekcraft*, 599 F.2d at 353, such as social media, Google, and Amazon. (JAF 151-53.);

- **Degree of Care.** Zuru's internal survey revealed that Snackles are an impulse purchase, a fact echoed by others (JAF 93, 175). *Nova Wines v. Adler Fels Winery*, 467 F. Supp. 2d 965, 981 (N.D. Cal. 2006) ("inexpensive, impulse products" (cleaned up)).

- **Intent.** As discussed in *supra* §§ II.B.2, there is evidence of intentional copying, upon which "courts almost unanimously presume a likelihood of confusion." *Jason Scott*, 68 F.4th at 1219 (cleaned up); *adidas*, 890 F.3d at 756 (that Zuru purchased Squishmallows search terms "supports an inference that [Zuru] intended to confuse consumers");

36

4901-0657-9287.1

- **Expansion.** Zuru *criticizes* Plaintiffs for launching many variations of Squishmallows (JAF 28), so there can be no dispute that Plaintiffs could expand their line with new designs bearing the Trade Dress—"product line expansion" favors confusion. *MultiCraft Imports v. Mariposa USA*, 2018 WL 11352041 (C.D. Cal. Jan. 19, 2018).

Rather than address these required factors—including the virtually dispositive "intent" factor—Zuru first argues, without any citation, that summary judgment must be granted because there is no evidence that every Snackle is confusingly similar to every Squishmallow. That is not the law. Under Ninth Circuit precedent, Plaintiffs need only show that when "viewing" Snackles, customers "would probably assume" that it is "associated" with the "source" (Plaintiffs) using the Trade Dress, not *each* Squishmallow. *Clicks Billiards*, 251 F.3d at 1265 (cleaned up). Courts therefore must compare "entire lines of products," not individual products in that line. *Moroccanoil*, 57 F. Supp. 3d at 1224. None of Zuru's cited cases hold otherwise. *See Karoun*, 107 F. App'x at 788 (wordmarks that stated with "Karoun" and "Byblos" were "substantially different in sight and sound"); *Wasco*, 435 F.3d at 992 (civil conspiracy case); *Echlin*, 887 F.3d at 977 (FDCPA case). In fact, "similarities across several products in a product line," as here, "can 'compound' confusion," *Moroccanoil*, 57 F. Supp. 3d at 1225.

Zuru also argues that the Court should grant summary judgment on certain Snackles sold in capsules as outside the pleadings. But as Zuru admits, the same accused Snackles are inside the capsules, are displayed on the capsules, and are featured on displays for the capsules. (JAF 144-47 (sufficient disclosure).) And Squishmallows are *also* sold in capsules, JAF 72-74. *Lisa Frank*, 788 F. Supp. at 997 (rejecting a similar argument about differing packaging consumers could consider a "variation"). None of Zuru's cited cases hold otherwise. *Wasco*, 435 F.3d at 990-91 (plaintiff changed her *legal theory* that involved undiscovered facts); *Echlin*, 887 F.3d at 977 (same). In any event, the Ninth Circuit instructs that the proper course of action is amendment under Fed. R. Civ. P. 15(b), not summary judgment, because the capsules overlap in proof and were part of fact and expert discovery in this case (JAF 144-47). *Galindo v. Stoody Co.*, 793 F.2d 1502, 1513 (9th Cir. 1986) (amendment caused no prejudice where record had replete evidence on theory).

4901-0657-9287.1

#### 4.       Zuru's "Invalidity" Arguments Are Irrelevant and Incorrect

"Because there are disputed issues of material fact on each of the[] three questions" considered by the Ninth Circuit at summary judgment, Zuru's motion must be denied. *Clicks*, 251 F.3d at 1256. Nevertheless, Zuru devotes more than nine pages to rearguing that "Plaintiffs have [not] sufficiently alleged they have protectable trade dress," attempting to impose additional "tests" and "burdens" not required by the Ninth Circuit. For at least three reasons, Zuru's miscellaneous assertions do not—and cannot—change the result required by this Circuit's three-element standard. Zuru's "invalidity" arguments fail because they are: (1) not part of a plaintiff's burden at summary judgment; (2) inapplicable as applied to Plaintiffs' asserted trade dress; and (3) regardless, not grounds upon which Zuru's motion can be granted.

##### a.       Zuru Misstates the Summary Judgment Standard

Before addressing any of the three elements required by the Ninth Circuit, Zuru says it is entitled to summary judgment for at least half-a-dozen other reasons—all based on Plaintiffs' supposed failure to "sufficiently allege[]" a "protectable trade dress." Each of Zuru's arguments fail at the threshold for at least two reasons.

*First*, across nine pages of argument, Zuru did not cite *any* Ninth Circuit cases recognizing the various "protectability" requirements it seeks to impose. The Ninth Circuit determines if a trade dress is protected by assessing the "three components of a protectable mark" discussed above, not the assorted requirements proposed by Zuru. *Clicks*, 251 F.3d at 1264-65. The lone case correctly identified by Zuru as a summary judgment case may have considered "vagueness" arguments in the district court, but the Ninth Circuit declined to affirm on those grounds, instead relying on the established requirement to show distinctiveness or secondary meaning. *EZ Pedo*, 765 F. App'x 323, 324.

*Second*, whether a plaintiff has "sufficiently *alleged* that they have a protectable trade dress" (as Zuru writes) is a question for the pleading stage, not summary judgment. Zuru's cited cases are overwhelmingly decided under Rule 12(b)(6), where questions about

38

4901-0657-9287.1

the "specificity and clarity" of written allegations are appropriate.[6] Zuru's cases do not apply the substantive evidentiary inquiry required at summary judgment, but instead reflect the procedural pleading-stage concern that a plaintiff give "sufficient notice" of their allegations, which was considered by this Court at that juncture. *Crafty*, 389 F. Supp. 3d at 880; ECF 41. Nor does Zuru have special dispensation to challenge at summary judgment what was appropriately resolved during motions on the pleadings. The stipulation upon which it relies contains no agreement on this point, and Zuru's generic statement that it "reserve[ed]" whatever rights it has "to challenge the trade dress" (ECF 43 at 2) cannot create a new substantive requirement not found anywhere in Circuit precedent.

b.    Any "validity" requirements involve disputed questions of fact

Even if Zuru could impose additional summary judgment requirements beyond the three enforced by the Ninth Circuit, Plaintiffs easily satisfy any "written definition" requirement. Zuru's cases recognize that "[t]rade dress is a visual phenomena, and precise definitions may not be possible." *Interactive*, 2008 WL 11337393, at *2–3. Rather than demand unrealistic precision, courts require only that the "discre[te] elements that make up the alleged trade dress [] be separated out and identified in a list." *Treat*, 2006 WL 2812770, at *15; *EZ Pedo*, 284 F. Supp. 3d at 1072 (plaintiff must "articulate the specific elements" of its trade dress, not just point to the "overall look").

Plaintiffs have satisfied that standard by identifying five specific elements whose overall visual impression comprises the Trade Dress. (*Supra* II.A.1; JAF 203-10.) This the *same* five-element definition that Zuru argued at the pleadings "fail[ed] to adequately define [the] trade dress," but Judge Scarsi rejected that argument based on his review of "the overall impression created by the five elements" and "the descriptors of each element."

---

[6] *Crafty Prods., Inc. v. Michaels Companies, Inc.*, 389 F. Supp. 3d 876, 880 (S.D. Cal. 2019); *Treat, Inc. v. Dessert Beauty*, 2006 WL 2812770 (D. Or. May 5, 2006) (motion to dismiss where allegation of "unique and distinctive design elements" was insufficient to state a claim); *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 6892141, at *3 (C.D. Cal. Nov. 5, 2014) (dismissing definition "with leave to amend"); *Cardinal Motors, Inc. v. H&H Sports Prot. USA, Inc.*, 2021 WL 1758881, at *4 (S.D.N.Y. May 4, 2021) (dismissing "vague and conclusory" allegations with leave to amend).

39

4901-0657-9287.1

(ECF 41 at 6-7.) Zuru now claims that the Squishmallows images attached to Plaintiffs' amended complaint somehow change this result. But those photographs cannot alter the "list of elements that comprise [Plaintiffs'] trade dress," which is the only requirement in Zuru's cited cases. *Treat*, 2006 WL 2812770, at *14. Nor would it make sense for the addition of photographs to negate an adequately defined trade dress: While courts agree that pictures may *help* a plaintiff define its trade dress, a plaintiff is "not required to attach an image of the trade dress" to define it. *Millennium Lab'ys*, 2012 WL 4863781, at *3.

In any event, Zuru does not cite a single case imposing anything like the level of precision Zuru demands here. Zuru's cases involve plaintiffs who neglected to "identify *any* elements," attempting to define a trade dress with mere photographs or vague assertions about an "overall" design. *Treat*, 2006 WL 2812770, at *14; *Crafty Prods.*, 424 F. Supp. 3d at 881-83 (plaintiff "attach[ed] hundreds of pictures" but did not "describe, or even list, the elements" (citation omitted)); *EZ Pedo*, 284 F. Supp. 3d at 1073 ("EZ–Pedo merely brands each advertisement in its entirety as trade dress."); *Homeland*, 2014 WL 6892141 (trade dress defined as the basic design of products in attached photographs).

Similarly, Zuru's representation that a "consistent look" test has been "effectively adopted" in the Ninth Circuit is a serious overstatement.[7] And as Zuru's own cases recognize, courts have required a "consistent" look only when a plaintiff is *both* "seeking trade dress protection for an entire line of products" *and* can "only describe some aspects of the trade dress in broad terms." *Interactive Health*, 2008 WL 11337393, at *2. This limitation makes sense: if a plaintiff seeks protection for the "overall look" of an array of products but does *not* provide "an articulation of the specific elements which comprise its distinct dress," that could allow a plaintiff to broadly assert rights at "an improper level of generality." *Landscape*, 113 F.3d at 381. Any such "special burden when [a] claim is for the 'overall look of a number of different [products]'" is thus not relevant here. *Id.* at 380.

---

[7] *Coach, Inc. v. Jay*, 2015 WL 12681378, at *2 (C.D. Cal. June 25, 2015) (rejecting "consistent overall look" argument as "unpersuasive" because "the Ninth Circuit has not yet adopted the consistent overall look' test"); *Kelly Toys*, 2024 WL 3469028, at *5-6 (declining to require proof that each product has a "consistent overall look").

40

4901-0657-9287.1

Plaintiffs do *not* define their trade dress merely by referencing the overall look of all Squishmallows, but have identified five specific elements that are present in some (but not all) Squishmallows products. (ECF 45 ¶¶ 25-45.) The only two summary judgment cases cited in Zuru's "consistent look" argument *denied* summary judgment for this very reason. *See Interactive Health*, 2008 WL 11337393, at *3 (denying summary judgment for lack of "overall look … throughout the entire line" because plaintiff's written "description of the trade dress [was not] impermissibly vague"); *Paramount*, 2012 WL 5974169, at *3 ("[T]he 'consistent overall look' standard has no application here because Plaintiff is only seeking trade protection over the bins that bear the five indicia of the Claimed Trade Dress.").

Even if it was Ninth Circuit law *and* applicable here, the "consistent look" test could not be resolved on summary judgment. Whether products have a consistent overall look is a "highly fact-intensive" inquiry. *Kelly Toys*, 2024 WL 3469028, at *5–6. This inquiry might be resolvable as a matter of law in rare cases like the one cited by Zuru, where a plaintiff sought protection over products, including "a yoyo," a Christmas "ornament," "a wooden paddle with a ball attached," and "a fabric heart necklace." *Crafty*, 389 F. Supp. 3d at 881-82. But here, the Squishmallows at issue share many objective and undeniable similarities. (JAF ¶¶ 138, 213-16.) Whether those similarities are negated by the differences identified by Zuru is a nuanced question of fact that only the jury can decide. *See, e.g.*, *Moroccanoil*, 57 F. Supp. 3d at 1209, 1224 (denying summary judgment because plaintiff's products shared design elements, despite including "a variety of hair care products . . . includ[ing] shampoo, conditioner, mousse, hairspray, and oil treatment" in different bottles); *Roblox Corp. v. WowWee Grp. Ltd.*, 2024 WL 4051751, at *4–5 (N.D. Cal. Sept. 3, 2024) ("genuine dispute of material fact about whether [] avatars have an identifiable trade dress" despite claim that "trade dress [was] not consistently present across" products). And contrary to Zuru's rhetoric, nothing about the size of Squishmallows' product line suggests it lacks protection. When the elements of a protectable trade dress are present, courts recognize trade dress for product lines that include many variations, such as:

41

4901-0657-9287.1



*Lisa Frank*, 2017 WL 6000477, at *5; *see also Moroccanoil*, 57 F. Supp. 3d at 1209, 1224; *LEGO A/S v. ZURU Inc.*, 2019 WL 4643718, at *8 (D. Conn. July 8, 2019), *aff'd in part*, 799 F. App'x 823 (Fed. Cir. 2020) (protecting trade dress across line of Lego figurines).

Lastly, Zuru argues that "[a]s a matter of law," an unregistered trade dress is not protectable unless it could be registered with the PTO. Even Zuru's expert, who Zuru relies on in making this argument, does not agree with Zuru's claim. (ECF 92.) As explained in Plaintiffs' *Daubert* motion (*id.*), Zuru's argument that the PTO would not register the trade dress because it could not be depicted in a technical line drawing has nothing to do with the requirements in a case where, as here, plaintiffs proceed on claims specific to unregistered marks. *See e.g., Black & Decker Corp. v. Positec USA Inc.*, 2015 WL 4183775, at *5 (N.D. Ill. July 10, 2015) (action for unregistered trademark infringement did not allow "imposing the USPTO's detailed registration requirements in litigation."). By contrast, Zuru relies on cases that concern restrictions in Section 2 of the Lanham Act which (unlike the PTO's technical drawing requirement) include substantive limits on trademark protection, such as prohibitions on marks that are deceptive or use a person's name. *See, e.g.*, *Renna v. Cnty. of Union, N.J.*, 88 F. Supp. 3d 310, 320 (D.N.J. 2014) ("[A] mark is not denied registration under Section 2 because of some quirk of the registration process; it is deemed unregistrable because it is not a suitable, protectable mark.").[8]

> c.     <u>Zuru's arguments do not warrant summary judgment</u>

---

[8] Even less relevant is Zuru's claim that various witnesses described the Trade Dress differently. Factually, this claim is overblown at best. (JAF 41-45.) And Zuru cites no case for the dubious proposition that the law requires witnesses to specify the elements of the asserted trade dress—its sole case merely noted a witness's inconsistent description to "highlight" the fact that the *party* had "not pointed to any coherent set of features" that were "capable of distinguishing [plaintiff's] goods from the goods of others." *Indonesian Imports,* 1999 WL 183629, *4–6 & n.6. Because Plaintiffs have done so here, no witness could undo that simply by failing to recite the Trade Dress with the same precision.

4901-0657-9287.1

Even if credited, Zuru's arguments are not a basis for summary judgment. *First*, Zuru's critiques could easily be addressed through a narrowing amendment, such as revising the "descriptors" challenged by Zuru or removing the "products within the claimed product line" that Zuru asserts do not practice the trade dress definition. Any such deficiencies are eminently curable, as shown by the cases relied on by Zuru granting leave to amend. *See, e.g.*, *Crafty*, 525 F. Supp. 3d at 991; *Homeland*, 2014 WL 6892141, at *3; *Cardinal*, 2021 WL 1758881, at *4; *see also Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp. 2d 535, 554–55 (S.D.N.Y. 2003) (amendment after summary judgment in trade dress case where "framing the issues ha[d] proved difficult" since it was "conceivable that a properly framed complaint might raise triable issues").[9]

*Second*, even if Zuru is correct that *some* Squishmallows are too dissimilar to be protectable, it simply does not follow that *no* Squishmallows are protectable. *See Paramount Farms*, 2012 WL 5974169, at *3 (even if "fifteen different designs" for the same product existed, "this fact alone would not prevent plaintiff from obtaining trade dress protection for one of the fifteen" styles); *Kelly Toy*, 2024 WL 3469028, at *5–6 (refusing to apply "all-or-nothing" approach whereby any product "differences" "mean[s] that Kelly Toys can assert no trade dress protection *whatsoever* in its Squishmallows line or a subset thereof"). So long as some Squishmallows practice the Trade Dress—which Zuru appears to concede with its repeated Cam the Cat references—protectability must go the jury. *Id.*

## V.    COPYRIGHT CLAIMS

### A.    <u>Zuru Argument # 5: The Seven Accused Snackles Characters Do Not Infringe Kelly Toys' Copyrights</u>

Plaintiffs have failed to meet their burden to show a genuine dispute as to copyright infringement (*see* pp. 49-51 of the Third Amended Complaint), and so those claims must be dismissed. For copyrighted works with unprotectable elements (like the asserted works

---

[9] When the shoe was on the other foot, Zuru's same legal counsel argued for another client at summary judgment that any deficiencies in its client's trade dress definition should be remedied by amendment, rather than dismiss the case on "such narrow technical grounds." *See Herman Miller*, Case No. 5:14-CV-01926-JAK-SPX, ECF 154 at 11–12.

43

4901-0657-9287.1

at issue here), the test for copyright infringement has two steps: first, unprotectable expression (including general ideas) must be identified and filtered out from the comparison; and second, the remaining protectable elements of the asserted copyrighted work must be compared with the accused product. *Alpi Int'l, Ltd. v. Anga Supply, LLC*, 118 F. Supp. 3d 1172 (N.D. Cal. 2015) (explaining the test in toy infringement case). Where a toy animal, for example, is depicted in a manner similar to how it is "often portrayed," then "the copyright protection would be 'thin,' meaning that protection would be afforded against only virtually identical copying." *Pretty in Plastic, Inc. v. Bunn*, 793 F. App'x 593, 594 (9th Cir. 2020) (citing *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (same)). The Court may find no infringement as a matter of law where "allegedly similar elements are either (1) not protectable under copyright law because they are merely ideas or utilitarian features or (2) cannot give rise to an inference of copying because they are so common or inherent to the underlying ideas being expressed." *Grondin v. Fanatics, Inc.*, 2023 U.S. Dist. LEXIS 4538, at *7 (E.D. Pa. Jan. 10, 2023). Summary judgment is appropriate "if the court concludes that no reasonable jury could find substantial similarity []." *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 900 (9th Cir. 1987). As noted by *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985), "we have frequently affirmed summary judgments in favor of copyright defendants on the substantial similarity issue."

Here, for the first step (filtering), Kelly Toys asserted copyrights in several specific Squishmallows characters. These designs include the generally unprotectable ideas of a dragon, a cow, a dog, a bear, a yellow chick, a unicorn, a sloth, a bunny, and an elephant. Nor is the general style of a circular ball with round black eyes protectable. Zuru's toy design expert, Deborah Ryan, also has identified several elements of these designs that should be filtered out at the extrinsic stage of the copyright infringement test. These stand as undisputed facts because not only did Kelly Toys not supply any affirmative evidence on this issue, but Plaintiffs' rebuttal experts do not ultimately challenge Ms. Ryan's individualized assessments that these features are stock and/or utilitarian:

- *Basic concept of round Kawaii style plush:* longstanding stock design concept

44

4901-0657-9287.1

that predates Squishmallows (JAF 76).

- *Round/egg body:* functional to stand upright and serve as a pillow; stock design to convey a smaller head atop an organic animal body (JAF 77).

- *Choice of popular animal:* axolotls, bears, and the rest are all highly popular animal choices for plush toys, as reflected in Exhibit D to Ms. Ryan's report (JAF 78).

- *Natural/popular choice of colors:* black & white spots for a cow, yellow for a chick, etc., as reflected in Exhibit D to Ms. Ryan's report (JAF 79).

- *Embroidered features and low pile fabric:* functional to avoid using more expensive/hazardous plastic eyes and to allow the toy have a smoother surface more conducive to a pillow and to not obstruct the facial features (JAF 80).

- *Softness and squeezability:* purely functional and standard for stuffed animals for pleasant tactile experience (JAF 81).

For the second step of the test, round Kawaii plush are so ubiquitous, and the asserted designs are so rife with functional and stock features, that the asserted copyrights merit only thin protection at best, and hence Plaintiffs failed to meet their the burden to show that the designs are virtually identical. As a threshold matter, the overall impression of the Snackles is clearly differentiated in that Snackles have prominent protruding appendages and are holding large snacks, which is a fundamentally different style choice. Zuru's expert, Deborah Ryan, also provided a chart in her report (reproduced at **Zuru Appendix 8**) pointing out the many differences that preclude a finding of infringement, including:

*Dragon (VAU001395927) v. Zuru Hippo:* These are not the same animal, and look different. That they both have round black eyes is irrelevant because that is not a protectable feature. Filtering unprotectable aspects, the overall impression is clearly different.

*Dog (VA0002096023) and Bear (VA0002118285) and Bear with Witch Hat (VA0002183993) v. Zuru Bear:* That Plaintiffs try to assert three different registrations only shows why there are differences—they know no one registration by itself infringes. The mouth of the dog and bears is a classic generic mouth seen on teddy bears across the world,

45

4901-0657-9287.1

and is not protectable. The black eyes are likewise not protectable. The colors are different, and the Zuru Bear has arms and legs.

*Chick (VA0002118286) v. Zuru Chick:* Aside from the general unprotectable idea of being a baby yellow chick, which exists in nature, these designs look clearly different.

*Three Unicorns (VA0002093075, VA0002148804, VAU001395816) v. Zuru Unicorn:* Zuru's unicorn looks plainly different from the Plaintiffs' unicorns. The colors are different, Zuru's has a cliché rainbow hairstyle which Plaintiffs' designs lack, Zuru's unicorn has a three-dimensional snout and arms and legs. This does not infringe either.

*Sloth (VAU001399134) and Bunny (VA0002127224) v. Zuru Sloth:* The bunny looks dissimilar from the sloth, aside from perhaps both having the general unprotectable idea of being pink (though the shades of pink are different). The specific expressions of the sloth are likewise different, which aside from a generic squinting expression, have different ways of expressing the squinting idea. Additionally, the Zuru design has arms and legs, a fur spot on its head, and is holding a snack. This claim fails too.

*Elephant (VA0002137255) v. Zuru Elephant:* The elephants look different, especially in that the Snackle has three-dimensional appendages, color, legs, and a large snack. Any similar features, like a trunk and elephant ears, and black eyes, exist in nature, and are not protectable. These products are not virtually identical. This claim fails.[10]

**B.    Plaintiffs' Response: There Are Triable Issues of Fact On Copyright**

Zuru's arguments regarding copyright infringement misstate nearly every legal rule they invoke. To start, it is misleading at best to assert that Plaintiffs bear the burden here. It is the movant who must show its entitlement to relief. Fed. R. Civ. P. 56(a). And although a copyright defendant can move by claiming there is no evidence that its works are similar to the copyrighted works, that merely requires the plaintiffs to identify such evidence. Once that has been done, "[d]efendants bear a heavy burden to establish that there is no triable

---

[10] Plaintiffs' copyright claims would also fail under the "substantially similar test" for the same reasons discussed herein. *Aliotti v. R. Dakin & Co.*, 831 F.2d 898, 901 (9th Cir. 1987) ("no substantial similarity may be found under the intrinsic test where analytic dissection demonstrates that all similarities in expression arise from the use of common ideas").

4901-0657-9287.1

issue of fact as to substantial similarity." *Romex Textiles, Inc. v. HK Worldwide, LLC*, 2019 WL 3935099, at *7 (C.D. Cal. Aug. 20, 2019). Moreover, the Ninth Circuit has expressed "disfavor for summary judgment on questions of substantial similarity." *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991). Zuru's cited case also observes that "substantial similarity is usually an extremely close question of fact best reserved for a jury." *Grondin v. Fanatics, Inc.*, 2023 WL 144284, at *3 (E.D. Pa. Jan. 10, 2023).

Zuru next claims the Court must "filter out" the unprotected elements of the copyrighted Squishmallows. But the Ninth Circuit has been clear that where, as here, plaintiffs claim protection for the selection and arrangement of particular elements, "our analysis does not filter out the . . . elements that would be individually unprotectable." *Sound & Color, LLC v. Smith,* 2025 WL 1232639, at *1 (9th Cir. Apr. 29, 2025); *see also, e.g., Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025) ("[S]ubstantial similarity can be found in a combination of elements, even if those elements are individually unprotected." (internal quotation marks omitted)).[11]

Nor do Squishmallows receive only "thin" copyright protection. Zuru cites cases concerning toys that modeled realistic or "stock" appearances of animals, suggesting that similarities between works might result simply from following standard depictions. *Alpi Int'l, Ltd. v. Anga Supply, LLC*, 118 F. Supp. 3d 1172 (N.D. Cal. 2015); *see also Pretty in Plastic, Inc. v. Bunn*, 793 F. App'x 593, 594 (9th Cir. 2020) (copyrighted work lacked the "quantum of originality needed to merit copyright protection, because it depict[ed] a unicorn as the mythical creature is often portrayed" (cleaned up)). But Squishmallows' abstract forms show little allegiance to the actual animals they evoke, and are thus entitled to "broad" protection, because the copyrighted works result from nearly unlimited design choices, making unintentional mimicry unlikely. *See Mattel, Inc. v. MGA Ent., Inc.*, 616 F.3d 904, 916 (9th Cir. 2010) (explaining that broad or thin protection of dolls turned on

---

[11] Zuru's claim of "stock" or "utilitarian" features fails on its own terms. Zuru's expert admitted that there were many possible choices for elements she claims to have been stock or utilitarian, meaning that Squishmallows' choices were neither unoriginal nor driven by utility. JAF 232; *Aurora World*, 2011 WL 13176413 at *12–*20 (test for "stock" features).

4901-0657-9287.1

the "range of expression" available); *Aurora World, Inc. v. Ty Inc*, 2011 WL 13176413, at *18 (C.D. Cal. Mar. 14, 2011) (applying broad protection "given the wide range of varying artistic decisions" in plush toys). That Zuru's expert submitted an exhibit containing hundreds of plush variations of the animals at issue, *see* JAF 232, itself demonstrates that Squishmallows' choices within that multitude receive broad protection. *See Sound & Color*, 2025 WL 1232639, at *2 ("Defendants' exhibit illustrat[ing] . . . the wide range of possible expression and broad creative choices involved in crafting a hook and thereby shows that broad copyright protection is appropriate" (cleaned up)).

Because Zuru has entirely misunderstood the law, its supporting arguments trail off into irrelevance. Zuru's only contention regarding substantial similarity appears in a footnote, where Zuru invokes the "intrinsic test." But "the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury." *Funky Films, Inc. v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006). And Zuru's fact-specific arguments fight strawmen. Plaintiffs do not claim that the concepts of a stuffed unicorn or a plush yellow chick with rounded black eyes are protectable. As discussed above, Squishmallows have multiple other specific elements that, together, make them original. The copyrighted works shares those elements. (JAF 211-16.) So do each of the identified, infringing Snackles. (*Id.*)

Snackles' cow, for example, is not substantially similar to the Squishmallows' cow because both are stuffed spotted bovines, but rather because (to summarize just some relevant similarities) both are substantially egg-shaped plush toys depicting abstract fanciful renditions of cows, with simplified and embroidered Kawaii facial features, that use distinctive contrasting colors and a short-pile velvety textured exterior. JAF ¶ 214. Those similarities suffice at this stage. *See Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004) (reversing grant of summary judgment where plaintiff "presented indicia of a sufficient disagreement concerning the substantial similarity of the two works" (cleaned up)). It is only further evidence of substantial similarity that some of the infringing works also mirror otherwise arbitrary details of the copyrighted works. For example, cows can

48

have nearly any pattern of spots, stuffed bears can have many facial expressions, and elephants can curl their trunks into many shapes and directions, yet Zuru made identical choices to Plaintiffs in each of these matters. JAF 216; *Aurora World*, 2011 WL 13176413, at *18 (no summary judgment where parties' plushes had specific similar details).

Zuru cannot escape trial by listing specific differences between its products and the copyrighted works. As in trade dress, "a copyright defendant need not copy a plaintiff's work in its entirety to infringe that work. It is enough that the defendant appropriated a substantial portion of the plaintiff's work." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 852 (9th Cir. 2012) (citing, among other cases, *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) (Hand, J.) ("[I]t is enough that substantial parts were lifted; no plagiarist can excuse the wrong by showing how much of his work he did not pirate.")). Given the material similarities between the works here, "[i]t is entirely immaterial [if], in many respects, plaintiff's and defendant's works are dissimilar." *L.A. Printex*, 676 F.3d at 851 (reversing grant of summary judgment where similarities and differences between respective works indicated trial was appropriate).

In any event, many of the differences Zuru claims are unhelpful to it. For example, that Zuru managed to design a hippo that closely resembles Squishmallows' dragon—and a sloth the looks like Squishmallows' bunny—does not suggest relevant dissimilarities, because Plaintiffs have never claimed protection for their choice to model a dragon or a bunny. But it does further prove that rather than designing plush based on actual hippos and sloths, Zuru designed plush based on Squishmallows. (JAF 214-16.) In any event, Plaintiffs need not prevail on every point at this stage: Given "several objective similarities and differences, the Court cannot conclude as a matter of law that the works are not substantially similar." *Romex Textiles,* 2019 WL 3935099, at *7 (denying summary judgment in copyright infringement case).

## VI.   DISMISSAL OF KELLY AMUSEMENT AND JAZPLUS

### A.   Zuru Argument #6: Kelly Amusement & Jazplus Should Be Dismissed

There is no evidence that plaintiffs Kelly Amusement Holdings and Jazplus are

49

4901-0657-9287.1

relevant to this case. Those entities do not sell in any relevant channels (JAF 82-83), and Plaintiffs presented no calculations of lost sales as to these entities (JAF 85). Plaintiffs' Rule 26(a) disclosures, interrogatory responses, and witnesses also failed to provide any substantive information as to harm to those entities. (JAF 84-86.) Given that these entities were not fairly disclosed in discovery they should be dismissed.

### B.    Plaintiffs' Response: Summary Judgment Is Inappropriate

Without citing any caselaw, Zuru argues that two Plaintiffs (Kelly Amusement and Jazplus) should be dismissed because they do not "sell in any relevant channels" and have no "lost sales." The law is otherwise: companies do not need to sell in the *exact* same channel, nor have lost profits, for there to be confusion. *Maier Brewing Co. v. Fleischmann Distilling Corp.*, 390 F.2d 117, 122 (9th Cir. 1968) (disgorgement proper even where products "are not in competition"). In any event, Plaintiffs sufficiently identified the role of both entities during discovery; which both sell Squishmallows bearing the Trade Dress analyzed above. (JAF 222-23, 225.) And even without damages, they can obtain an injunction against Zuru relating to their sales channels. *Maier*, 390 F.2d at 123.

### VII.    CONCLUSION

#### A.    Zuru's Conclusion

For the foregoing reasons, Zuru respectfully requests that its Motion be granted.

#### B.    Plaintiffs' Conclusion

Zuru seeks summary judgment on virtually every element of Plaintiffs' claims. But the Ninth Circuit instructs that those elements involve "factual determination[s] reserved for trial, not for resolution on summary judgment." *Clicks Billiards*, 251 F.3d at 1266 (reversing summary judgment). "[I]t is not the role of the district court at this stage to decide which party has the more compelling argument; rather, it is simply to determine whether a triable issue of fact exists." *Id.* Because there are countless triable issues of fact, Plaintiffs respectfully request that summary judgment be denied.

SUMMARY JUDGMENT JOINT BRIEF
CASE NO. 2:23-cv-09255-SRM-AGR

4901-0657-9287.1

DATED:  July 24, 2025

**FOLEY & LARDNER LLP**

/s/ Jean-Paul Ciardullo

JEAN-PAUL CIARDULLO, CA Bar No. 284170
  jciardullo@foley.com
ASHLEY M. KOLEY, CA Bar No. 334723
  akoley@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE:  213.972.4500
FACSIMILE:   213.486.0065

JONATHAN MOSKIN (*Pro Hac Vice*)
NY Bar No. 1949031
  jmoskin@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016
TELEPHONE:  212.682.7474
FACSIMILE:   212.687.2329

RACHEL APMANN (PAULEY) (*Pro Hac Vice*)
IL Bar No. 6347771
  rachel.apmann@foley.com
**FOLEY & LARDNER LLP**
321 NORTH CLARK STREET, SUITE 3000
CHICAGO, IL 60654-4762
TELEPHONE:  312.832.4740
FACSIMILE:   312.832.4700

*ATTORNEYS FOR DEFENDANT*
*ZURU, LLC*

Dated:  July 24, 2025

**HUESTON HENNIGAN LLP**

By:  /s/ Moez M. Kaba
   Moez M. Kaba
   Sourabh Mishra
   Michael H. Todisco
   Hagan Scotten (admitted *pro hac*)
   Amber E. Munoz

   *Attorneys for Plaintiffs*

51

4901-0657-9287.1