JEAN-PAUL CIARDULLO, CA Bar No. 284170
  jciardullo@foley.com
ASHLEY M. KOLEY, CA Bar No. 334723
  akoley@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:   213.486.0065

REDACTED VERSION OF
DOCUMENT PROPOSED
TO BE FILED UNDER
SEAL

JONATHAN MOSKIN (*Pro Hac Vice*)
NY Bar No. 1949031
  jmoskin@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016
TELEPHONE: 212.682.7474
FACSIMILE:   212.687.2329

RACHEL APMANN (PAULEY) (*Pro Hac Vice*)
IL Bar No. 6347771
  rachel.apmann@foley.com
**FOLEY & LARDNER LLP**
321 NORTH CLARK STREET, SUITE 3000
CHICAGO, IL 60654-4762
TELEPHONE: 312.832.4740
FACSIMILE:   312.832.4700

*Attorneys for Defendant*
*ZURU, LLC*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KELLY TOYS HOLDINGS, LLC; JAZWARES, LLC; KELLY AMUSEMENT HOLDINGS, LLC; and JAZPLUS, LLC<br><br>                              *Plaintiffs*,<br>       v.<br><br>ZURU, LLC,<br><br>                              *Defendant*. | Case No. 2:23-cv-09255-SRM-AGR<br><br>**ZURU, LLC'S NOTICE OF MOTION AND *DAUBERT* MOTION TO LIMIT THE TESTIMONY OF JOHN G. PLUMPE**<br><br>Hon. Serena R. Murillo<br><br>Date:       September 10, 2025<br>Time:       1:30 PM<br>Court:      First Street Courthouse |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Wednesday, September 10, 2025, at 1:30 PM before the Honorable Serena R. Murillo at the Courthouse at 350 W 1st Street in Los Angeles, California, Defendant Zuru, LLC ("Zuru") will and hereby does move for an order limiting the testimony of Plaintiffs' damages expert John G. Plumpe pursuant to the *Daubert* standard, and alternatively or additionally pursuant to Fed. R. Civ. P. 37 and Fed. R. Evid. 403.

This Motion is based on the Memorandum of Law below, the accompanying Declaration and Exhibits, as well as such matters of which this Court may take judicial notice, and upon such further oral argument and documentary evidence as may be presented at the time of hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 6, 2025, as well as other discussions between counsel on the matters herein.

Dated: August 13, 2025

FOLEY & LARDNER LLP

*/s/ Jean-Paul Ciardullo*
Jean-Paul Ciardullo

*Attorneys for Defendant*
*ZURU, LLC*

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................1

II.   APPLICABLE LAW ..........................................................................................1

    A.    Actionable Trademark Confusion Is Limited To Instances Of
        Shoppers Buying The Defendant's Product Believing It Is The
        Plaintiff's Product.........................................................................................1

    B.    A Plaintiff Seeking Lost Profits Does Not Enjoy A Presumption That
        All Of The Defendant's Sales Were Caused By Trademark Confusion........4

III.  MR. PLUMPE's LOST PROFITS CALCULATIONS SHOULD BE
     PRECLUDED UNDER *DAUBERT* ...........................................................8

    A.    Mr. Plumpe Erroneously Opines That Evidence Of Non-Confused
        Customers Is Irrelevant ...............................................................................8

    B.    Mr. Plumpe's Assumptions Are Not Supported By The Evidence .............14

        1.    Mr. Plumpe Fails To Substantively Analyze Market Conditions
            At The Four Retailers..........................................................................14

        2.    Mr. Plumpe Relies On And Misconstrues The Inadmissible
            ████████████ ....................................................................18

        3.    Mr. Plumpe Improperly Includes Non-Trade Dress
            Squishmallows ...................................................................................19

        4.    Mr. Plumpe's Anecdotal Evidence Of Confusion Is Unreliable,
            *De Minimus*, And/Or Inadmissable ..................................................19

IV.   MR. PLUMPE'S LOST PROFITS CALCULATIONS SHOULD BE
     EXCLUDED UNDER F.R.E. 403 ..........................................................21

V.    CONCLUSION.................................................................................................22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*adidas Am., Inc. v. Skechers United States*,
    No. 3:15-cv-01741-HZ, 2017 U.S. Dist. LEXIS 122459 (D. Or. Aug. 3, 2017) ..........11

*AK Futures LLC v. Boyd St. Distro LLC*,
    No. 8:21-cv-01027-JVS-ADSx, 2021 U.S. Dist. LEXIS 189084
    (C.D. Cal. Aug. 4, 2021) .........................................................................................3

*BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*,
    No. CV-19-05216-PHX-MTL, 2025 U.S. Dist. LEXIS 17492
    (D. Ariz. Jan. 31, 2025).........................................................................................11

*Bosley Med. Inst., Inc. v. Kremer*,
    403 F.3d 672 (9th Cir. 2005) .............................................................................2, 5

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ............................................................................1, 2

*Brunswick Corp. v. Spinit Reel Co.*,
    832 F.2d 513 (10th Cir. 1987) ............................................................................6, 7

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*,
    No. 14-CV-585 (AJN), 2018 U.S. Dist. LEXIS 151961 (S.D.N.Y. Aug. 22, 2018) ......9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)............................................................................................1, 8

*Entrepreneur Media, Inc. v. Smith*,
    279 F.3d 1135 (9th Cir. 2002) .................................................................................3

*First Sav. Bank, FSB v. United States Bancorp*,
    117 F. Supp. 2d 1078 (D. Kan. 2000)...................................................................14

*Fla. Virtual Sch. v. K12, Inc.*,
    No. 6:20-cv-2354-GAP-EJK, 2023 U.S. Dist. LEXIS 176980
    (M.D. Fla. Aug. 25, 2023).........................................................................14, 17, 18

*Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*,
    No. 1:08-CV-2376-TWT, 2011 U.S. Dist. LEXIS 28034
    (N.D. Ga. Mar. 17, 2011).........................................................................7, 13, 14

*Globefill Inc. v. Elements Spirits*,
    No. 2:10-cv-02034-CBM (PLAx), 2017 U.S. Dist. LEXIS 214359
    (C.D. Cal. Sep. 8, 2017)........................................................................................11

*Gucci Am., Inc. v. Daffy's, Inc.*,
    354 F.3d 228 (3d Cir. 2003).....................................................................................7

*Hansen Bev. Co. v. Vital Pharm., Inc.*,
    No. 08-CV-1545-IEG (POR), 2010 U.S. Dist. LEXIS 79218
    (S.D. Cal. Aug. 3, 2010) .......................................................................................14

ii

*Hetronic Int'l, Inc. v. Hetronic Germany GmbH,*
   99 F.4th 1150 (10th Cir. 2024) ........................................................ 4

*In re Katz Interactive Call Processing Patent Litig.*,
   No. 07-ML-01816-B-RGK (FFMx), 2009 U.S. Dist. LEXIS 114681
   (C.D. Cal. Mar. 11, 2009) ................................................................ 8

*Jason Scott Collection, Inc. v. Trendily Furniture, LLC*,
   68 F.4th 1203 (9th Cir. 2023) .......................................................... 6

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt.*,
   No. 04-CV-2293 (SMG), 2009 U.S. Dist. LEXIS 119707 (E.D.N.Y. Dec. 23, 2009) ...7

*Levi Strauss & Co. v. Blue Bell, Inc.*,
   778 F.2d 1352 (9th Cir. 1985) .......................................................... 2

*Lindy Pen Co., Inc. v. Bic Pen Corp.*,
   982 F.2d 1400 (9th Cir. 1993) .......................................................... 5

*Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*,
   316 U.S. 203 (1942) .......................................................................... 5

*MLC Intellectual Property, LLC v. Micron Technology, Inc.*,
   10 F.4th 1358 (Fed. Cir. 2021) ........................................................ 20

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*,
   638 F.3d 1137 (9th Cir. 2011) .......................................................... 3

*Prestonettes, Inc. v. Coty*,
   264 U.S. 359 (1924) .......................................................................... 5

*Quick Techs. v. Sage Grp. PLC*,
   313 F.3d 338 (5th Cir. 2002) ............................................................ 5

*Roblox Corp. v. WowWee Grp. Ltd.*,
   No. 22-cv-04476-SI, 2024 U.S. Dist. LEXIS 158050 (N.D. Cal. Sep. 3, 2024)............ 3

*SiteLock LLC v. GoDaddy.com LLC*,
   No. CV-19-02746-PHX-DWL, 2021 WL 2895503 (D. Ariz. July 9, 2021)................ 20

*Skydive Ariz., Inc. v. Quattrocchi*,
   673 F.3d 1105 (9th Cir. 2012) .......................................................... 5, 6

*Swatch, S.A. v. Beehive Wholesale, L.L.C.*,
   888 F.Supp.2d 738 (E.D. Va. 2012) .................................................. 18

*Universal Frozen Foods Co. v. Lamb-Weston, Inc.*,
   697 F. Supp. 389 (D. Or. 1987) ........................................................ 2

*Villalpando v. Exel Direct Inc.*,
   161 F. Supp. 3d 873 (N.D. Cal. 2016) .............................................. 8

*Wal-Mart Stores v. Samara Bros.*,
   529 U.S. 205 (2000) .......................................................................... 2

*Warner Bros. Ent. v. Glob. Asylum, Inc.*,
   No. CV 12 - 9547 PSG (CWx), 2012 U.S. Dist. LEXIS 185695
   (C.D. Cal. Dec. 10, 2012) ................................................................ 3

*Wecosign, Inc. v. IFG Holdings, Inc.*,

845 F. Supp. 2d 1072 (C.D. Cal. 2012) ..................................................4

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
No. CV 07-8298 ABC (MANx), 2010 U.S. Dist. LEXIS 166335
(C.D. Cal. Jan. 25, 2010)....................................................................5

Statutes

15 U.S.C. § 1117 ....................................................................................4

Rules

Fed. R. Civ. P. 37 .................................................................................20
Fed. R. Evid. 403 ..............................................................................1, 21
Fed. R. Evid. Rule 702 .......................................................................8, 13

iv

## I.    **INTRODUCTION**

Zuru respectfully moves pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and additionally or alternatively pursuant to Federal Rule of Evidence 403, for an order precluding Plaintiffs' damages expert, John G. Plumpe, from offering opinions on Plaintiffs' purported lost profits, and precluding Plaintiffs from otherwise relying on certain objectionable evidence cited by Mr. Plumpe.

First, despite the fact that Plaintiffs bear the burden of proving their own claimed lost profits, Mr. Plumpe erroneously opines that he need not consider evidence that people buy Zuru Snackles for reasons other than mistakenly believing they are Squishmallows. Even if Plaintiffs were to nominally establish liability by showing a limited likelihood of confusion, the record evidence indicates that the *extent* of that confusion would be minimal, and that the vast majority of people buy Snackles for reasons that have nothing to do with trademark confusion. Mr. Plumpe not only failed to consider this evidence, but opines it is *irrelevant*, rendering his testimony excludable under *Daubert* and/or F.R.E. 403.

Second, Mr. Plumpe's opinions are also based on unreliable and inadmissible evidence. For example, Mr. Plumpe never did any substantive analysis of the four retailers that are the subject of his lost profits calculation, failing to meaningfully consider what toys were in those stores, or how and where they were placed and marketed. This in itself renders his lost profits opinions unreliable. Zuru also seeks an order precluding Plaintiffs from relying on certain inadmissible evidence cited by Mr. Plumpe.

Precluding Plaintiffs' lost profits theory would not leave them without a damages case: Plaintiffs are separately asking the Court for equitable disgorgement of Zuru's profits. Plaintiffs should not be allowed to confuse the jury with their improper lost profits theory.

## II.    **APPLICABLE LAW**

### A.    **Actionable Trademark Confusion Is Limited To Instances Of Shoppers Buying The Defendant's Product Believing It Is The Plaintiff's Product**

The primary justification of a trademark infringement action is to remedy consumer confusion. *See Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1053-54

1

(9th Cir. 1999). That purpose is not served where the defendant's sales "do[] not cause the consuming public to be confused as to who makes what." *Id*. Actionable confusion is limited to confusion affecting purchasing decisions, wherein a customer would buy the defendant's product while under a mistaken belief that it was the plaintiff's product. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676-77 (9th Cir. 2005). As applied to the present case, if a shopper purchased a Snackle not because they mistook it for a Squishmallow but simply because they wanted a particular kind of stuffed animal character, or liked the price, or because they collect Snackles, or for any other of a plethora of reasons unrelated to believing they were buying a Squishmallow, none of those purchases could be actionable under the trademark laws.

In the context of a trade dress action concerning a product design, the plaintiff must also make a threshold showing that the claimed trade dress has acquired secondary meaning, *i.e.*, that relevant consumers would recognize the design as emanating from a particular brand owned by a single company. *See Wal-Mart Stores v. Samara Bros*., 529 U.S. 205, 211, 216 (2000). Consumers who would not recognize the plaintiff's alleged trade dress necessarily cannot be confused by a defendant's product because they do not have in mind any other product to confuse it with. As explained by the court in *Universal Frozen Foods Co. v. Lamb-Weston, Inc*.:

> Professor McCarthy's testimony is persuasive that proof of secondary meaning is a condition precedent to any discussion of likely confusion. He testified that, to be confused, the customer must have some 'brand' in mind that he or she is looking for, and buys the junior user's product under the confused impression that it is a product of the senior user. It follows that a buyer cannot be 'confused' where, as here, he or she does not recognize the product shape as a symbol of origin.

697 F. Supp. 389, 394-95 (D. Or. 1987); *see also Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1359 (9th Cir. 1985) (same premise). As applied to the present case, if a shopper unfamiliar with the alleged Squishmallows trade dress purchased a Snackle, that shopper was necessarily not confused, and the sale is not actionable under the trademark laws.

Because proving that an appreciable number of consumers are actually confused is often difficult, and in order to make at least some degree of relief practically achievable in trademark cases, the law does not strictly require trademark plaintiffs to show that any confusion actually exists in order to secure a liability finding. *See Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1151 (9th Cir. 2011). Rather, liability may be found merely upon proof of a *likelihood* that "an appreciable number" of potential purchasers may be confused. *See Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1151 (9th Cir. 2002). Courts have held that "an appreciable number" can be as low as 15% of potential purchasers. *See Roblox Corp. v. WowWee Grp. Ltd*., 2024 U.S. Dist. LEXIS 158050, at *29-30 (N.D. Cal. Sep. 3, 2024). Similarly, with respect to secondary meaning, courts will allow trade dress plaintiffs to prevail on liability even when surveys reveal that less than half of potential purchasers recognize the trade dress. *See, e.g.*, *Warner Bros. Ent. v. Glob. Asylum, Inc.*, 2012 U.S. Dist. LEXIS 185695, at *10-12 (C.D. Cal. Dec. 10, 2012).

What this means this is that there is a wide spectrum of scenarios that could result in a finding of liability in a trademark case while presenting dramatically different ramifications for the extent of actual damages suffered by the plaintiff. At one end the spectrum are cases involving bad faith counterfeiters who make exact copies of the plaintiff's product and sell it under the plaintiff's brand name, intentionally passing their product off as the plaintiff's product. In such cases, it might be fair to assume that every sale by the defendant equates to a lost sale to the plaintiff. Indeed, courts have explained that in such cases actual consumer confusion can be presumed. *See, e.g., AK Futures LLC v. Boyd St. Distro LLC,* 2021 U.S. Dist. LEXIS 189084, at *8-9 (C.D. Cal. Aug. 4, 2021). At the other end of the spectrum is a case where the plaintiff barely squeaks by in proving likelihood of confusion, and the evidence demonstrates that the overwhelming majority of potential purchasers would not actually be confused. In the present case, if Plaintiffs were to prevail on liability they would fall into this second bucket. As demonstrated visually in the graphic below, a wide range of potential damages might be implicated by a finding of

liability in a trademark case. That is why it is important that damages not include profits that are not caused by trademark confusion.



BOTH SCENARIOS COULD RESULT IN LIABILITY. BUT THEY IMPLICATE DIFFERENT HARM TO PLAINTIFF.

15% Consumer Confusion
<50% Consumer Recognition
(Secondary Meaning)

Most Consumers
Not Confused

All Consumers Confused

## B. A Plaintiff Seeking Lost Profits Does Not Enjoy A Presumption That All Of The Defendant's Sales Were Caused By Trademark Confusion

Generally speaking, the Lanham Act (at 15 U.S.C. § 1117), allows for two types of damages theories in a case like this one: (1) equitable disgorgement of the defendant's profits that are attributable to infringement, and (2) any actual lost profits that the plaintiff can prove.[1] A plaintiff's burden of proof is different depending on which damages theory it pursues. In the case of equitable disgorgement, the plaintiff's burden of proof is to prove defendant's infringing revenue,[2] after which the burden shits to defendant to establish deductions from that revenue. As explained by the Supreme Court in discussing the

---

[1] Plaintiffs are not entitled to a double recovery in pursuing both theories. *See, e.g.*, *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1084 (C.D. Cal. 2012).

[2] Although Zuru does not move on the issue here, Zuru waives no arguments that Mr. Plumpe has failed to properly establish infringing revenue for purposes of disgorgement. *See Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 99 F.4th 1150, 1172 (10th Cir. 2024): "To satisfy its burden, the plaintiff must identify the 'total sales' that resulted 'from the [defendant's] infringing activity with reasonable certainty.'"

burdens of proof on a claim for disgorgement of the defendant's profits:

> If it can be shown that the infringement had no relation to profits made by the defendant, that some purchasers bought goods bearing the infringing mark because of the defendant's recommendation or his reputation or for any reason other than a response to the diffused appeal of the plaintiff's symbol, the burden of showing this is upon the poacher. The plaintiff of course is not entitled to profits demonstrably not attributable to the unlawful use of his mark.

*Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co.*, 316 U.S. 203, 206 (1942); *see also Bosley*, 403 F.3d at 676-77 ("A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against *the sale of another's product as his*.") (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)) (emphasis in original); *see also Quick Techs. v. Sage Grp. PLC*, 313 F.3d 338, 350 (5th Cir. 2002) (upholding denial of disgorgement remedy where evidence showed reasons other than trademark confusion for defendant's sales).

But where a plaintiff seeks to recover its own alleged lost profits, the burden of proof it faces is more stringent: the plaintiff must prove the amount of its lost profits with "reasonable certainty." *See, e.g.*, *Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 U.S. Dist. LEXIS 166335, at *7-8 (C.D. Cal. Jan. 25, 2010). It is generally recognized that proving lost profits in a trademark case is hard, which is precisely the reason that plaintiffs are allowed to pursue equitable disgorgement as an alternative remedy. *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1407 (9th Cir. 1993) ("Because proof of actual damage is often difficult, a court may award damages based on defendant's profits on the theory of unjust enrichment."). Proving lost profits with reasonable certainty does not require "absolute exactness," but does require a "reasonable basis for computation," to ensure an award is not "remote and speculative." *Id.* at 1407-08.

Plaintiffs rely on the Ninth Circuit's ruling in *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105 (9th Cir. 2012) to argue that Mr. Plumpe was entitled to assume that, aside from accounting for market share, anyone buying a Snackle must have been confused that it was

a Squishmallow. That is not a correct extrapolation from *Skydive.* In *Skydive*, the Ninth Circuit explained that "[i]n reviewing a jury's award of actual damages for intentional infringement, we accept 'crude' measures of damages based upon reasonable inferences." *Skydive*, 673 F.3d at 1112-13. In *Skydive*, the defendant had been found liable for intentionally falsely advertising that customers could buy certificates from it that could be redeemed with the plaintiff, making plaintiff's customers angry when plaintiff was forced to reject defendant's unauthorized certificates. The jury was presented with "significant and voluminous" evidence of the dollar value of plaintiffs' marketing expenses and corrective advertising to combat defendant's false advertisements. *Id.* The Ninth Circuit held that, in view of the finding of intentional misconduct, it was fair for the judge, under principles of equity, to have ratified the jury's award of damages based on a theory of actual injury to reputation where the amount of those damages was based on the evidence of advertising expenditures. *Id.* at 1113.

*Skydive* does not stand for the proposition that a plaintiff trying to prove its own lost profits is free to assume that every sale of the defendant's product was the result of trademark confusion. As a threshold matter, *Skydive*'s holding was premised on a finding of intentional misconduct. As explained in *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1222 (9th Cir. 2023), a court "may not impose a penalty" when awarding Lanham Act damages, but "when the defendant intentionally seeks to confuse or deceive…the court may accept less certain proof of loss in order to discourage similar behavior in the future." (citing Restatement (Third) Unfair Competition § 36, comment j (1995)). Thus, "crude" measures of damages would only be appropriate as a matter of equity in cases of bad faith willful infringement. But even in applying this more relaxed standard, *Skydive* still reaffirmed that the plaintiff must nonetheless prove lost profits with reasonable certainty, and there must "be substantial evidence to permit the jury to draw *reasonable inferences* and make a *fair and reasonable assessment*." 673 F.3d at 1112 (emphasis in original). *Skydive* is not a carte blanche for trademark plaintiffs.

Plaintiffs have also cited to *Brunswick Corp. v. Spinit Reel Co*., 832 F.2d 513 (10th

Cir. 1987) for the proposition that it is appropriate for a trademark plaintiff to assume one-to-one lost sales with the defendant's products. But that is not the holding of *Brunswick.* Rather, the appellate court had simply remanded to the district court (which had conducted a bench trial and awarded zero damages) with instructions to determine a fair method of calculating the amount of damages based upon the evidence. The Tenth Circuit noted that a one-to-one lost sales measure might mark the "upper range" of what could hypothetically be awarded if the evidence supported it, but did not instruct the district court to award that measure, and even expressly stated that it doubted it would be appropriate. *Id.* at 526. The Tenth Circuit suggested that the district court look at evidence of relative decline in sales of the plaintiff's product and the defendant's product, but ultimately left the analysis to the district court's discretion. *Id.*

Courts have rejected the idea that trademark plaintiffs are entitled to assume that all of the defendant's sales are caused by confusion. For example, in *Gucci Am., Inc. v. Daffy's, Inc.*, 354 F.3d 228, 242-43 (3d Cir. 2003), in denying Gucci's claim to recover its own lost profits, the Third Circuit rejected Gucci's argument that it was entitled to assume that the defendant's sales were the result of trademark confusion. The court cited evidence that made it "also quite possible that the purchasers were motivated by the opportunity of purchasing what appeared to be an attractive handbag of exceedingly high quality at [a] favorable price.…" *Id.* at 242. The court affirmed that a trademark plaintiff "has the burden of proving that lost profits are attributable to the unlawful use of the mark," *i.e.*, were the result of actionable trademark confusion. *Id.* at 242 n.15. Likewise, in *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt.*, 2009 U.S. Dist. LEXIS 119707, at *7-9 (E.D.N.Y. Dec. 23, 2009), the court rejected the plaintiff's argument that it was entitled to a presumption that sales of defendant's accused products could be deemed lost sales to plaintiff, collecting cases for the proposition that such a presumption would run contrary to the legal principles underlying damages in trademark cases. The same conclusion was reached in *Flowers Bakeries*, an on-point case discussed in more detail *infra*.

### III. MR. PLUMPE's LOST PROFITS CALCULATIONS SHOULD BE PRECLUDED UNDER *DAUBERT*

Under *Daubert* and Fed. R. Evid. Rule 702, the court serves as a gatekeeper for expert opinion testimony. In determining the admissibility of expert testimony, the court may consider the expert's theory or technique, among other factors, to assess whether the methodology is sufficiently reliable. *See Daubert*, 509 U.S. at 592-94. "Expert testimony that is based on an erroneous understanding or application of the law cannot meet the requirements of Rule 702 because it cannot logically assist the trier of fact." *In re Katz Interactive Call Processing Patent Litig.*, 2009 U.S. Dist. LEXIS 114681, at *5 (C.D. Cal. Mar. 11, 2009); *Villalpando v. Exel Direct Inc.*, 161 F. Supp. 3d 873, 895 (N.D. Cal. 2016) (same).

#### A. Mr. Plumpe Erroneously Opines That Evidence Of Non-Confused Customers Is Irrelevant



---

[3] Mr. Plumpe has declined to opine on any purported lost sales at retailers other than the Four Retailers. Plaintiffs may try to argue that this entitles them to a "fudge factor," as Plaintiffs will say the trier of fact should assume that Plaintiffs could have proven additional lost sales elsewhere. This would be incorrect. Plaintiffs deliberately chose to not have Mr. Plumpe analyze other retailers, and so cannot now bootstrap them in. In any event, the question presented is whether Mr. Plumpe's lost profits analysis of the Four Retailers is supportable.

[REDACTED]

It bears taking a moment to address what market share allocation is, and why it does not solve the problem of accounting for consumers who are not confused. Market share allocation is simply a way of correctly acknowledging that not everyone who bought a Snackle would have otherwise have bought a Squishmallow. *See Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, 2018 U.S. Dist. LEXIS 151961, at *13-15 (S.D.N.Y. Aug. 22, 2018) (explaining application of market share allocation to trademark case). [REDACTED]

[REDACTED] If someone who buys a Snackle was otherwise going to have bought a Care Bear, Plaintiffs could hardly deem that a lost sale. Mr. Plumpe does no special favors for Zuru in acknowledging this obvious reality. In fact, Zuru contends that Mr. Plumpe's market share allocation does not go far enough because it fails to account for customers who otherwise would have bought [REDACTED]

[REDACTED]

While apportioning market share might address the question of what percentage of shoppers would even have been potential purchasers of Squishmallows in the first place, it does nothing to address the critical question of how many of those shoppers bought a Snackle because they mistakenly believed that they were buying a Squishmallow. [REDACTED]

[REDACTED]

[redacted]

Not only does Mr. Plumpe's analysis do nothing to consider all the reasons that someone might have purchased a Snackle other than trademark confusion, but Mr. Plumpe opines that such other reasons are *irrelevant*. This is erroneous, particularly in the context of a case where so much record evidence points to the conclusion that, even if there were a nominal finding of liability, the *extent* of any confusion would be minimal.

Plaintiffs' own survey by their expert Mark Keegan – a study designed to supposedly scientifically quantify how many people are confused into thinking Snackles are Squishmallows – yielded confusion rates of only 19%-27%. (Mark Keegan 3-27-25 Expert Report, pp. 4, 32-33, filed with concurrent *Daubert* motion directed to Mr. Keegan.) Zuru's expert, Dr. Basil Englis, performed a survey showing 0% confusion. (Dkt. 102-2, pp. 1-2.) Regardless of what Plaintiffs may argue about the applicability of these surveys to the damages analysis, the conclusion is inescapable: the overwhelming majority of buyers are not likely to be confused.

This conclusion is reinforced by the results of both Parties' secondary meaning surveys. A consumer cannot suffer from trademark confusion if they are unfamiliar with the alleged Squishmallows trade dress. (Section II.A, *supra*.) Here, even if one credited the purported secondary meaning survey of Plaintiffs' expert Dr. Rene Befurt, the best results he could get showed only about 25%-35% recognition of the supposed trade dress among relevant consumers. (Dkt. 102-2, pp. 34.) Zuru's expert, Dr. Ronald Goodstein, showed a much lower recognition rate of only about 9%. (Dkt. 124-8, ¶ 70, 73, 74.) These results make it impossible to disregard evidence of non-confused customers in assessing

---

[4] As Zuru discusses in Section III(B)(2), the [redacted] is subject to exclusion. Zuru also disputes that 68% is the correct number to derive from it.

damages. This is not like the case of the willful counterfeiter making identical copies of the plaintiff's product and selling them under the same name. Instead, even if nominal liability were proven, Plaintiffs' own experts agree that confusion levels would be low.

Plaintiffs have tried to argue that consumer surveys are per se irrelevant in assessing damages, principally citing *adidas Am., Inc. v. Skechers United States*, No. 3:15-cv-01741-HZ, 2017 U.S. Dist. LEXIS 122459, at *85-86 (D. Or. Aug. 3, 2017). *See also Globefill Inc. v. Elements Spirits*, 2017 U.S. Dist. LEXIS 214359, at *6 (C.D. Cal. Sep. 8, 2017) (same). These cases involved damages claims for equitable disgorgement wherein the defendant bore the burden of proof and, upon considering all the record evidence, the courts concluded that the defendant's survey, standing on its own, was insufficient to meet the defendant's burden to offset the presumption of equitable disgorgement. However, it would take these cases too far to say that when the burden of proof if reversed, and the plaintiff must now prove its own actual lost profits with reasonable certainty, the plaintiff is free to ignore multiple surveys that, in combination with the rest of the record evidence, make it clear that the plaintiff is not entitled to assume every sale was caused by trademark confusion. Whether the surveys are "mathematically precise" (*adidas*, 2017 U.S. Dist. LEXIS 122459, at *85) is hardly the point: taken collectively with the record evidence they establish the basic fact that most people would not have been confused, which is certainly probative of the extent of purported actual injury.

Notably, the court in *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 2025 U.S. Dist. LEXIS 17492, at *14-16 (D. Ariz. Jan. 31, 2025) recently recognized that the result in *adidas* must be distinguished, and allowed expert testimony applying confusion survey results to offset trademark damages. Beyond which, Zuru does not say that Mr. Plumpe must necessarily apply the survey results as part of his calculation per se, but rather at least that Mr. Plumpe must have done *something* to try to account for the fact that it is clear most people would not have been confused, and he cannot be heard to say that evidence of non-confused customers is irrelevant. Plaintiffs bear the burden in seeking

11

their own actual lost profits.[5]

Zuru's toy industry expert, Lynn Rosenblum, goes into detail about all the reasons that someone might have bought a Snackle that have nothing to do with mistakenly believing it was a Squishmallow. (Dkt. 102-2, pp. 87-88.) Such reasons include:

- The customer knows what a Snackle is and wants to buy one.
- The customer wanted a particular animal character that Snackles had in the store.
- The customer wanted a particular color that the Snackle came in.
- The customer is a Snackles collector.
- The customer enjoys buying Zuru products because they are familiar with the popular Zuru brand.
- The customer simply selected the first toy they saw within their budget.

Mr. Plumpe erroneously takes the position that none of the foregoing is relevant to lost profits. As to consumer surveys, he says they are irrelevant to damages. (Plumpe Reply Report, ¶¶ 28-29.) This position is ironic given that Mr. Plumpe himself relies on a consumer survey ████████████████. Plaintiffs should be estopped from arguing that consumer surveys are irrelevant to damages in the same breath as they rely upon one. At his deposition, Mr. Plumpe even went so far as to suggest it would be impossible to measure what percentage of people were confused, ignoring the fact that his own client and Zuru collectively commissioned *four* separate consumer studies to address that very question. (Plumpe Tr. 53:19-54:21: "But I don't think there's evidence available that says every -- you know, everyone was confused or not confused…".)

As to reasons why people buy Snackles other than actionable trademark confusion, Mr. Plumpe ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

---

[5] Based on the Parties' meet and confer, Zuru understands that Plaintiffs will be filing a concurrent *Daubert* motion seeking to preclude Mr. Nelson from referencing the survey results in apportioning damages. Zuru disagrees that such a limitation is proper and will address the matter in opposing Plaintiffs' motion.



Mr. Plumpe's assumption that all the Snackles purchases he considered were caused by trademark confusion is improper, particularly in the face of so much record evidence that the overwhelming majority of purchasers are not confused. (Section III(A), *supra*.) This is not an issue that merely go to weight: it calls for exclusion of the lost profits analysis.

A proffered damages expert was excluded under analogous circumstances in *Flowers Bakeries Brands, Inc. v. Interstate Bakeries Corp.*, 2011 U.S. Dist. LEXIS 28034 (N.D. Ga. Mar. 17, 2011). In that case, as here, the plaintiff argued that it should not have to consider non-confused customers. The court squarely rejected this premise and excluded the expert's lost profits calculations under F.R.E. 702, explaining:

> while any calculation might have proven imprecise, Raulerson ensured his calculations would be particularly inaccurate by ignoring 'factors that could be significant to his analysis.' *First Savings*, 117 F. Supp. 2d at 1084. It is not necessary that the Plaintiff allocate damages between legal and actionable conduct with exact certainty. **To be admissible, however,**

13

> **Raulerson cannot assume that all lost profits were attributable to the
> Defendant's infringement**. *See Concord Boat*, 207 F.3d at 1057
> (excluding expert report because it 'failed to account for market events that
> both sides agreed were not related to any anticompetitive conduct.'). For
> these reasons, Raulerson's testimony in its current form regarding the
> Plaintiff's lost profits is inadmissible.

*Id.* at *8-9 (emphasis added).

Similar exclusion of trademark damages experts occurred in *First Sav. Bank, FSB v. United States Bancorp*, 117 F. Supp. 2d 1078, 1084-85 (D. Kan. 2000), where the expert failed to address obviously important factors affecting the lost profits analysis; and also in *Fla. Virtual Sch. v. K12, Inc*., 2023 U.S. Dist. LEXIS 176980, at *5-7 (M.D. Fla. Aug. 25, 2023), wherein the court excluded a trademark damages expert who improperly assumed that all of defendant's sales were the result of consumer confusion. *See also Hansen Bev. Co. v. Vital Pharm., Inc*., 2010 U.S. Dist. LEXIS 79218, at *25-26 (S.D. Cal. Aug. 3, 2010) (plaintiff could not assume lost profits where expert had failed to consider sufficient factors).

## B.    Mr. Plumpe's Assumptions Are Not Supported By The Evidence

Mr. Plumpe's core premise that Plaintiffs were losing significant sales to Snackles at the Four Retailers is based on little more than assumptions and anecdotes, most of which come from unreliable or inadmissible sources.

### 1.    Mr. Plumpe Fails To Substantively Analyze Market Conditions At The Four Retailers

Mr. Plumpe does not actually perform any substantive analysis of the market conditions at the Four Retailers. Instead, his market share analysis was based on ███ data for the entire US market – not the Four Retailers. (Plumpe Report, ¶ 17, 31, 61, 107-109.) This means that Mr. Plumpe failed to consider critical evidence, such as:

| Facts Not Addressed | Why Significant |
| --- | --- |
| The plush toy assortments at the Four | Squishmallows may have comprised a smaller percentage of sales among plush toys at the Four Retailers than reflected |

| Retailers. | in the US-wide ██████ data. Also, for example, ██████ ████████████████████████████████████ ██████████████████████████████████ ) that are priced lower than Squishmallows and placed right next to them in stores. (Nelson Report, p. 41, 56-57, 70.) |
|---|---|
| The non-plush toy assortments sold near Squishmallows in the Four Retailers. | Squishmallows could easily have been losing sales to popular non-plush toys, especially if those toys were sold adjacent to Squishmallows in the Four Retailers. Mr. Pumpe does nothing to consider this. |
| Location of toys in the store. | Mr. Plumpe relies on limited evidence to say Snackles were sold adjacent to Squishmallows, while ignoring other evidence that they were often on different shelves or even different sections of the stores. (*e.g.*, Nelson Report, p. 41.) |
| The Four Retailers carrying different sizes of Snackles vs. Squishmallows. | Snackles and Squishmallows come in various sizes, and a customer who wants a 5in version may not want a 30in version. Mr. Plumpe failed to compare size assortments at the Four Retailers. (Nelson Report, p. 49.) |

Mr. Plumpe also fails to compare sales patterns of Snackles and Squishmallows at the Four Retailers. In contrast, the data analyzed by Mr. Nelson, which was equally available to Mr. Plumpe, showed no correlation between any supposed increase in Snackles sales at the Four Retailers and any supposed decrease in Squishmallows sales. (Nelson Report, Section IV.A.) Below is an example of the graph Mr. Nelson created to compare Snackles and Squishmallows sales at Target.



Mr. Nelson's analysis of the Four Retailers demonstrated:



(Nelson Report, Section IV.A.) Indeed, Mr. Nelson showed



Mr. Nelson goes on to explain that Plaintiffs' claim of having lost sales due to supposed Snackles infringement makes no economic sense because ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████

In sum, Mr. Plumpe fails to substantively tie his analysis to actual market conditions at the Four Retailers, and instead simply ████████████████████ ████████████████████████████████████████ In this regard, Mr. Plumpe's analysis is similar to the "simple math" calculation that was excluded in *Fla. Virtual Sch. v. K12, Inc.*:

> Mr. Gallogly's lost profits opinion does not rely on any economic, technical, or other specialized knowledge. To reach the same result that he reached regarding Plaintiff's lost profits, one need only rely on simple math: first, assume that all of Defendants' student registrations during the relevant two-year period were 'stolen' from Plaintiff …then, multiply that number by the average amount of tuition Plaintiff charges per student; and finally, multiply the prior outcome by a twenty-two percent profit margin. Voilà—the resulting number equals Plaintiff's lost profit damages as 'calculated' by Mr. Gallogly…. The Court recognizes that proving lost profit damages in a trademark infringement case is often difficult. [] But that does not permit Mr. Gallogly (or any other damages expert) to simply ignore the critical element of causation.

2023 U.S. Dist. LEXIS 176980 at *5-7. So too here, Mr. Plumpe's simple math fails to substantively address actual market conditions at the Four Retailers, rendering it speculative and subject to exclusion.

### 2. Mr. Plumpe Relies On And Misconstrues The Inadmissible ███████ Survey

The ███████ Survey that Mr. Plumpe relies on is inadmissible hearsay and constitutes unsupported expert subject matter without an expert to proffer it. This was an informal study that someone at Zuru commissioned from a non-party, but that non-party is not testifying in the case, and Zuru does not know the details of how the study was conducted or whether it was reliable. *See, e.g., Swatch, S.A. v. Beehive Wholesale, L.L.C.,* 888 F.Supp.2d 738, 743-744 (E.D. Va. 2012) (excluding non-party survey sought to be admitted through non-author). Mr. Plumpe – who is not a survey expert – wants the study to mean ███████ Snackles buyers do not consider the snack a key feature of the product design (Plumpe Report, ¶ 110-111), but Zuru disputes that conclusion: even if it were the case that ████ focused more on the character than the snack, that does not mean that the snack was not still an important part of what motivated their purchase. A central argument that Zuru has made in this case is that one of the many reasons consumers do not confuse Snackles with Squishmallows is that Snackles are heavily and uniquely focused on the snack element, with each character holding an impossible-to-miss oversized snack item, while always being sold labeled as "Snackles" with "snack" right there in the name. Mr. Plumpe's interpretation of the Luminate Survey to mean that most consumers do not notice or care about the snack should be excluded.6

---

6 Mr. Nelson made brief mention of the ███████ Survey in his report, but will not be relying upon it at trial.

### 3.    Mr. Plumpe Improperly Includes Non-Trade Dress Squishmallows

Plaintiffs are their own worst competitors with respect to their alleged trade dress products because they sell a large number of Squishmallows that are alleged to not embody the trade dress, cannibalizing their own supposed important "distinctive appearance." (Nelson Report, pp. 35, 51-52, 78-79.) As shown in the chart here



(Dkt 45, ¶ 25, absence from Appendix A.)

### 4.    Mr. Plumpe's Anecdotal Evidence Of Confusion Is Unreliable, *De Minimus*, And/Or Inadmissable

Many of Mr. Plumpe's anecdotes about supposed problems caused by Snackles come from interviews Mr. Plumpe had with the following Jazwares employees: Guy Thomas, Kurt McDermott, Kris Kardok, Mark Pfefer, and David Schwartz. Early in discovery, these persons had been included in an unadorned list alongside many others in response to Zuru's Interrogatory No. 4 seeking an identification of persons with knowledge of design and marketing. (Ciardullo Dec., Ex. F.) However, they were never included in Plaintiffs' Rule 26(a) Disclosures (*id.*, Ex. E), and when the Parties later conferred at length about who Plaintiffs planned to put forward as witnesses, Plaintiffs

advanced other people. (*Id.*, ¶ 8.) Later when Plaintiffs supplemented their Rule 26(a) Disclosures before the commencement of depositions to align with the proposed deposition witnesses, Plaintiffs did not list the additional employees, signaling an affirmative intent to not rely on them as witnesses. (*Id.*, Ex. E.) This induced Zuru to not seek their depositions, particularly given that the Parties had already jointly identified 8 key plaintiff witnesses. (*Id.*, ¶ 8.) Mr. Pumpe is now relying on information not supplied by Plaintiffs' 30(b)(6) witnesses in their depositions, which in any event is hearsay.

Furthermore, Mr. Plumpe now relies on these additional employees for information that Plaintiffs withheld from their response to Zuru's Interrogatories 2 and 5 seeking detailed disclosures of factual bases based for damages and instances of actual confusion. (Ciardullo Ex. F, Original and Supplemental Responses to Rogs. 2 and 5.) Timely disclosure in response to those interrogatories would have given Zuru notice to depose the additional employees. Under these circumstances, Rule 37 should preclude Mr. Plumpe from basing his opinions on his interviews with these additional employees. *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 10 F.4th 1358, 1371 (Fed. Cir. 2021) (applying Ninth Circuit law) (affirming the district court's order striking portions of the expert's opinion on damages facts not disclosed in fact discovery); *SiteLock LLC v. GoDaddy.com LLC*, 2021 WL 2895503, at *11 (D. Ariz. July 9, 2021) (excluding lost profits arguments where "[defendant] should have been given the opportunity to test that data via the discovery process").

Mr. Plumpe also relies on 

no

meaningful conclusion could be drawn from such *de minimus* confusion in the context of millions of product sales.

Mr. Plumpe also mis-construes Zuru documents to mean the opposite of what Zuru witnesses said under oath that they mean, as also addressed in the Summary Judgment Motion. (*See, e.g.*, Dkt. 101-5, at JAF 123, 125.) More generally, Mr. Plumpe cites a number of documents for the proposition that Snackles compete with Squishmallows in the market. However, that nominal fact means little in view of Snackles also simultaneously competing with thousands of other toys, and in view of the fact that ordinary market competition without proof of confused purchases is of no legal import.

## IV.   MR. PLUMPE'S LOST PROFITS CALCULATIONS SHOULD BE EXCLUDED UNDER F.R.E. 403

One might wonder why Plaintiffs are attempting to pursue inherently hard-to-prove lost profits at just four retailers when Plaintiffs are already separately seeking – under a different burden of proof – disgorgement of all of Zuru's profits at all retailers. Plaintiffs are not entitled to recover on both theories due to the prohibition on double recoveries. The answer is that Plaintiffs know that disgorgement of Zuru's profits is an equitable matter that will need to be decided by the Court, most likely at a post-trial bench proceeding. Plaintiffs presumably believe that by also putting forward a lost profits theory of actual damages, they can try to convince the Jury to grant them an unwarranted windfall. However, as has been demonstrated *supra*, Mr. Plumpe's lost profits calculations are misleading and unreliable. If the Jury is presented with a calculation that ignores evidence of non-confusion, and that fails to address actual market conditions at the Four Retailers, the risk of prejudice to Zuru is high. Thus, alternatively or additionally to exclusion under *Daubert*, Zuru requests exclusion of the lost profits theory under F.R.E. 403.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Zuru respectfully requests an order precluding Mr. Plumpe from testifying as to lost profits, and otherwise excluding certain inadmissible evidence that he relies upon.

DATED:  August 13, 2025

**FOLEY & LARDNER LLP**

/s/ Jean-Paul Ciardullo

JEAN-PAUL CIARDULLO, CA Bar No. 284170
    jciardullo@foley.com
ASHLEY M. KOLEY, CA Bar No. 334723
    akoley@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:   213.486.0065

JONATHAN MOSKIN (*Pro Hac Vice*)
NY Bar No. 1949031
    jmoskin@foley.com
**FOLEY & LARDNER LLP**
90 PARK AVENUE
NEW YORK, NY 10016
TELEPHONE: 212.682.7474
FACSIMILE:   212.687.2329

RACHEL APMANN (PAULEY) (*Pro Hac Vice*)
IL Bar No. 6347771
    rachel.apmann@foley.com
**FOLEY & LARDNER LLP**
321 NORTH CLARK STREET, SUITE 3000
CHICAGO, IL 60654-4762
TELEPHONE: 312.832.4740
FACSIMILE:   312.832.4700

*ATTORNEYS FOR DEFENDANT*
*ZURU, LLC*

## CERTIFICATION UNDER L.R. 11-6

The undersigned, counsel of record for Zuru, LLC certifies that this brief contains 6,968 words, which complies with the word limit of L.R. 11-6.1.


DATED: August 13, 2025            */s/ Jean-Paul Ciardullo*

                                 Jean-Paul Ciardullo